MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Roshni C. Kapoor, Bar No. 310612
roshni.kapoor@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Jonathan D. Lotsoff (*pro hac vice* forthcoming)
jonathan.lotsoff@morganlewis.com
110 North Wacker Drive
Chicago, IL 60606-1511
Tel:     +1.312.324.1000
Fax:    +1.312.324.1001

Attorneys for Defendants
TWITTER, INC., and X CORP.

MORGAN, LEWIS & BOCKIUS LLP
Joseph A. Govea, Bar No. 319683
joseph.govea@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Phone: +1.213.612.2500
Fax: +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Carolyn M. Corcoran, (*pro hac vice*)
carolyn.corcoran@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Tel:     +1.212.309.6000
Fax:    +1.212.309.6001

Attorneys for Defendants
TWITTER, INC. and X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ZEMAN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

TWITTER, INC., and X CORP.,

Defendants.

Case No. 3:23-cv-01786-SI

**DEFENDANTS TWITTER, INC., AND X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:      June 30, 2023
Time:     10:00 a.m.
Judge:    Hon. Susan Illston

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 30, 2023 at 10:00 a.m. or as soon thereafter as may be heard in Courtroom 1 on the 17th floor of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Twitter, Inc. and X Corp. will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint for failure to state a claim upon which relief can be granted.

1.      Plaintiff's first and second causes of action for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and the New York State Human Rights Law, N.Y. Exec § 296, fail to state a claim because Plaintiff does not allege facts sufficient to support a plausible disparate treatment claim.

2.      Plaintiff's first and second causes of action for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and the New York State Human Rights Law, N.Y. Exec § 296, fail to state a claim because Plaintiff does not allege facts sufficient to support a plausible disparate impact claim.

3.      Plaintiff's first and second causes of action for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and the New York State Human Rights Law, N.Y. Exec § 296, fail to state a claim because Plaintiff does not allege facts plausibly suggesting that he has standing to state claims on behalf of employees terminated after the reduction in force or terminated for reasons other than the reduction in force (*e.g.*, termination for cause or voluntary separation).

Dated: May 12, 2023                              MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Brian D. Berry*
                                                                 Eric Meckley
                                                                 Brian D. Berry
                                                                 Jonathan D. Lotsoff
                                                                 Roshni C. Kapoor
                                                                 Joseph A. Govea
                                                                 Carolyn M. Corcoran

                                                                 Attorneys for Defendants
                                                                 TWITTER, INC. and X CORP.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    THE COMPLAINT'S MATERIAL ALLEGATIONS.......................................... 2

    A.    The Allegations About Plaintiff. ............................................................. 2

    B.    Plaintiff's Statistics. ............................................................................... 2

    C.    Musk's Comment. ................................................................................... 3

    D.    The Collective and Class Claims. ........................................................... 4

III.   LEGAL STANDARD .......................................................................................... 4

IV.   ARGUMENT ....................................................................................................... 6

    A.    Plaintiff Fails to State a Claim for Intentional Age Discrimination....................... 6

        1.    The Complaint Contains No Facts to Support an Inference That Twitter Would Not Have Terminated Him "But For" His Age. ................. 6

        2.    Plaintiff Fails to Allege that Twitter Engaged In a Pattern or Practice of Discrimination................................................................... 7

            a.    Plaintiff Does Not Allege that Discrimination Was "a Routine and Regular Part" of Twitter's Workplace....................... 7

            b.    Plaintiff's Statistics Do Not Support an Inference of Intentional Discrimination. ................................................... 8

            c.    Plaintiff's Sole Anecdotal Allegation Does Nothing to Bolster His Benign Statistics........................................... 9

    B.    Plaintiff Fails to State A Disparate Impact Claim.................................. 11

        1.    The ADEA and NYSHRL Do Not Recognize Plaintiff's 'Subgroup' Claim Based on Employees Age 50 or Older. ......................................... 12

        2.    Plaintiff Cannot State a Disparate Impact Claim By Simply Re-Labelling His (Failed) Disparate Treatment Claim................................ 13

        3.    Plaintiff Fails to Allege a Statistically Significant Disparity. .................. 14

        4.    The Complaint Fails to Isolate and Identify a Specific Employment Practice Responsible for the Alleged Disparities...................................... 15

    C.    Because Plaintiff Was Laid Off in the RIF, He Lacks Standing to State a Claim Related to Employees Terminated Subsequently or for Other Reasons. ............................................................................................... 16

V.    CONCLUSION................................................................................................. 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*,
770 F.2d 1401 (9th Cir. 1985) ............................................................................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 5

*Barrett v. Forest Labs. Inc*.,
39 F. Supp. 3d 407 (S.D.N.Y. 2014) ................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 4, 5, 10

*Bohlke v. General Elec. Co*.,
742 N.Y.S.2d 131 (3d Dep't. 2002) ..................................................................................... 13

*Cozzi v. County of Marin*,
787 F.Supp.2d 1047 (N.D. Cal. Apr. 18, 2011) .................................................................. 10

*Criley v. Delta Air Lines, Inc*.,
119 F.3d 102 (2d Cir. 1997) ................................................................................................. 12

*Davis v. D.C.*,
925 F.3d 1240 (D.C. Cir. 20019) ......................................................................................... 15

*Di Mascio v. General Elec. Co*.,
739 N.Y.S.2d 854 (3d Dep't 2002) ...................................................................................... 13

*Durante v. Qualcomm, Inc.*,
144 F. App'x. 603 (9th Cir. 2005) ....................................................................................... 11

*E.E.O.C. v. McDonnell Douglas Corp*.,
191 F.3d 948 (8th Cir. 1999) ............................................................................................... 12

*Enoh v. Hewlett Packard Enter. Co.*,
2018 WL 3377547 (N.D. Cal. July 11, 2018) ..................................................................... 16

*Freyd v. Univ. of Oregon*,
990 F.3d 1211 (9th Cir. 2021) ............................................................................................. 16

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*,
694 F.2d 531 (9th Cir. 1982) ............................................................................................... 8, 9

*Gilbreath v. Brookshire Grocery Co.*,
400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

*Gross v. FBL Fin. Servs., Inc.*,
 557 U.S. 167 (2009) ............................................................................................ 6

*Hazelwood Sch. Dist. V. United States*,
 433 U.S. 299 (1977) ............................................................................................ 9

*Int'l Bhd. Of Teamsters v. U.S.*,
 431 U.S. 324 (1977) ...................................................................................... 7, 11

*Kinnally v. Rogers Corp.*,
 2009 WL 597211 (D. Ariz. Mar. 9, 2009) ........................................................ 13

*Mahler v. Jud. Council of California*,
 67 Cal. App. 5th 82 (2021) ............................................................................... 15

*Marcus v. Leviton Mfg. Co., Inc.*,
 661 F. App'x 29 (2d Cir. 2016) .......................................................................... 6

*Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*,
 964 F.2d 106 (2d Cir. 1992) ............................................................................. 13

*Maybin v. Hilton Grand Vacations Co., LLC*,
 343 F.Supp.3d 988 (D. Haw. Sept. 28, 2018) ................................................... 10

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
 521 F.3d 1097 (9th Cir. 2008) ............................................................................ 5

*Mish v. TForce Freight, Inc.*,
 2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ...................................................... 5

*Moss v. U.S. Secret Serv.*,
 572 F.3d 962 (9th Cir. 2009) .............................................................................. 5

*Nidds v. Schindler Elevator Corp.*,
 113 F.3d 912 (9th Cir. 1996) ............................................................................ 10

*Obrey v. Johnson*,
 400 F.3d 691 (9th Cir. 2005) .............................................................................. 7

*Oinonen v. TRX, Inc.*,
 2010 WL 396112 (N.D. Tex. Feb. 3, 2010) ....................................................... 8

*Paige v. California*,
 233 F. App'x 646 (9th Cir. 2007) .................................................................. 9, 14

*Pottenger v. Potlatch*,
 329 F.3d 740 (9th Cir. 2003) ...................................................................... 11, 16

*Rudebusch v. Hughes*,
 313 F.3d 506 (9th Cir. 2002) .............................................................................. 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

*Rudwall v. Blackrock, Inc.*,
　　2011 WL 767965 (N.D. Cal. Feb. 28, 2011) ............................................................. 13

*Schechner v. CBS Broad., Inc.*,
　　2010 WL 2794374 (N.D. Cal. July 15, 2010) .......................................................... 8, 9

*Schechner v. KPIX-TV*,
　　2011 WL 109144 (N.D. Cal. Jan. 13, 2011) ............................................................. 13

*Smith v. City of Jackson*,
　　544 U.S. 228 (2005) ................................................................................................. 11

*Smith v. Tennessee Valley Auth.*,
　　924 F.2d 1059 (6th Cir. 1991) .................................................................................. 12

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016) ................................................................................................. 16

*In re Stac Elecs. Sec. Litig.*,
　　89 F.3d 1399 (9th Cir. 1996) ...................................................................................... 5

*Starr v. Baca*,
　　652 F.3d 1202 (9th Cir. 2011) ..................................................................................... 5

*Stockwell v. City & Cnty. of San Francisco*,
　　749 F.3d 1107 (9th Cir. 2014) .................................................................................. 11

*Stout v. Potter*,
　　276 F.3d 1118 (9th Cir. 2002) .............................................................................. 12, 15

*Strifling v. Twitter, Inc.*,
　　(N.D. Cal. Case No. 22-cv-07739-JST) .......................................................... *passim*

*Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
　　576 U.S. 519 (2015) ................................................................................................. 15

*W. Mining Council v. Watt*,
　　643 F.2d 618 (9th Cir. 1981) ...................................................................................... 5

*Warth v. Seldin*,
　　422 U.S. 490 (1975) ................................................................................................. 16

*Watson v. Fort Worth Bank & Tr.*,
　　487 U.S. 977 (1988) ................................................................................................... 6

*Wood v. City of San Diego*,
　　678 F.3d 1075 (9th Cir. 2012) .................................................................................... 6

*Zamora v. Penske Truck Leasing Co., L.P.*,
　　2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ................................................................. 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

**Statutes**

The Age Discrimination in Employment Act .......................................................................... *passim*

The New York State Human Rights Law ............................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 4, 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

## I.      INTRODUCTION

Plaintiff John Zeman is a former Twitter employee who alleges Defendants Twitter, Inc. and X Corp. (collectively "Twitter") discriminated against him and other employees aged 50 or older when it implemented a reduction in force ("RIF") on November 4, 2022, that affected the majority of Twitter's U.S. workforce.  On that basis, Plaintiff asserts putative collective and class action claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL").  Notably, Plaintiff modeled his Complaint on the failed sex-discrimination complaint in *Strifling v. Twitter, Inc.* (N.D. Cal. Case No. 22-cv-07739-JST), another RIF-related putative class action brought by Plaintiff's counsel of record that Judge Tigar recently dismissed.  *See* Request for Judicial Notice ("RJN"), Ex. 1 (ECF No. 38, Order Granting Motion to Dismiss, filed May 8, 2023).

Plaintiff predicates his disparate impact claim on his allegation that the RIF generated a disparity between employees aged 50 or older and employees aged 49 and younger that measures 1.936 standard deviations from a normal distribution.  This claim fails as a matter of law because a disparate impact claim lies under the ADEA and the NYSHRL only for the entire class of protected employees (*i.e.*, employees aged 40 or older as a group (ADEA) or employees aged 18 or older (NYSHRL)).  The statutes do not recognize a disparate impact claim for a "subgroup" of employees aged 50 or older (or other subgroups of older workers).  Plaintiff's statistics are also insufficient to state a disparate impact claim because a measure of 1.936 standard deviations is below the threshold for statistical significance under Ninth Circuit law.  What is more, Plaintiff's disparate impact claim fails because he targets only purportedly intentional conduct and because he fails to isolate and identify a specific employment practice to challenge with his claim.

Plaintiff's disparate treatment claim fares no better.  The Complaint is devoid of basic information about the circumstances of his termination such as his job at Twitter, his qualifications, his job performance, the qualifications and performance of younger comparators who were not subject to the RIF, and the identity and age of the managers who selected him for the RIF.  In addition, because his statistics are too weak to even support an inference of disparate impact, they are nowhere near sufficient to support an inference of intent, especially when the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

RIF was a single event that cannot constitute a pattern or practice of age discrimination.  Nor can Plaintiff plausibly allege systemic disparate treatment of older workers based on a stray comment from 51-year-old Musk about human longevity that has no nexus whatsoever to the RIF.

The Court should also reject Plaintiff's bid to state claims arising from terminations that post-date the RIF because Plaintiff lacks standing to pursue those claims.

At bottom, Plaintiff's Complaint falls well short of pleading any plausible claim for relief.  The Court should grant Twitter's motion.

## II.     THE COMPLAINT'S MATERIAL ALLEGATIONS

### A.     <u>The Allegations About Plaintiff.</u>

Plaintiff John Zeman is a resident of New York, New York, where he worked for Twitter from April 2011 until November 2022.  Compl. ¶ 6.  The Complaint alleges nothing else about Plaintiff except that he was part of Twitter's November 4, 2022 "mass layoff," at which time he was 63 years old.  *Id.* ¶ 34.  For example, the Complaint does not state Plaintiff's job position, responsibilities, qualifications, or whether Plaintiff was satisfactorily performing his job before the layoff.  The Complaint does not state the job responsibilities or qualifications of any younger comparator, or the identity or age of any manager who selected him for the RIF.

### B.     <u>Plaintiff's Statistics.</u>

In April 2022, Musk planned to purchase Twitter.  *Id.* ¶ 17.  Shortly after Musk completed the acquisition in October 2022, Twitter conducted a "mass layoff" on or around November 4, 2022, with "some [] laid off earlier and many [] laid off after that date."  *Id.* ¶¶ 3, 18, 20.  The Complaint alleges that the "[d]ecisions regarding which employees would be laid off" were made "quickly" and "under extremely hurried circumstances, with little if any regard to employees' job performance, qualifications, experience, and abilities."  *Id.* ¶¶ 19, 21.  It further alleges that a "small group of managers, under close supervision by Musk," including managers from Musk's other companies who "did not have much, if any, knowledge about Twitter's operations," made the "majority" of the layoff decisions.  *Id.* ¶ 21.

The Complaint does not identify any layoff-related policy, process, or selection criteria that applied to Plaintiff or any other employee.  It also offers no allegation about impacted

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

employees' (including Plaintiff's) job positions, responsibilities, qualifications, or job performance.  Nor does it identify any manager who selected Plaintiff or others for layoff, the location of any layoff decision, or any information about the decision-making process, including what Musk's alleged "supervision" of the selection process entailed.

The Complaint's allegation of discrimination rests almost exclusively on data and statistics allegedly derived from Twitter's disclosures to employees under the Older Workers Benefit Protection Act ("OWBPA") that show "which Twitter employees in the United States were retained and which were laid off on November 4, 2022."  Compl. ¶ 25.  According to Plaintiff, Twitter laid off approximately 2,686 out of 4,964 employees as part of its November 4 RIF.  *Id.*  Although Plaintiff possesses the age demographics of Twitter's workforce before and after the RIF, the Complaint is silent about the age-related statistics for workers aged 40 and over.  *See generally* Compl.  Instead, the Complaint focuses on employees aged 50 and older.  According to the Complaint, Twitter laid off 149 of 248 employees (or 60% of employees) age 50 or older, and it laid off 2,537 of 4,716 employees (or 54% of employees) under age 50 in the United States.  *Id.* ¶¶ 26, 27.  A labor economist, Dr. Mark Killingsworth, allegedly performed a chi-squared test that shows this demographic distribution is 1.936 standard deviations from the normal expected distribution.  *Id.* ¶ 28.[1]

**C.  Musk's Comment.**

Plaintiff claims that the layoffs of workers aged 50 and older "resulted from discrimination" as allegedly demonstrated by "publicly discriminatory remarks about older people" by Musk.  Compl. ¶ 4.  Plaintiff does not allege any age-based animus directed towards him or any other Twitter employee, nor does Plaintiff allege any ageist comments by Musk or any decision-maker in connection with the RIF.  Plaintiff also does not allege that any of the unidentified decisionmakers harbored any age-based animus towards him or other workers over 50 years old (or over 60 years old).  Rather, the Complaint asserts only that Musk, who was 51

---

[1] Although Plaintiff does not bring a claim on behalf of employees aged 60 or older, *see* Compl. pp. 7-8 (Counts I and II), his Complaint asserts that Twitter laid off 24 out of 33 (or 73% of) employees aged 60 and older, and 2,662 out of 4,931 employees (or 54% of) employees under age 60.  *Id.* ¶¶ 30, 31.  He alleges that a chi-squared statistical test shows that this demographic distribution is 2.154 standard deviations from normal.  *Id.* ¶ 32.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

years old when he acquired Twitter, "has a history of bias and making ageist comments." *Id.* ¶ 22; RJN, Ex. 2 (NYT article at p. 1). The Complaint provides a single example of this purported "history" of discriminatory bias. In a media interview from March 2022—more than seven months before the RIF—Musk reportedly said that he "doesn't believe humans should live for longer":

> I don't think we should try to have people live for a really long time. That it would cause asphyxiation of society because the truth is, most people don't change their mind, … they just die. So, if they don't die, we will be stuck with old ideas and society wouldn't advance … [a]nd it is just impossible to stay in touch with the people if you are many generations older than them.

*Id.* ¶¶ 17, 23; RJN, Ex. 3 (Fox Business article at pp. 1-2). Musk made this statement in a discussion about "declining birthrate" and human "longevity" as possible "threat[s] to the future of civilization," the "proper[]" functioning of "democracy," and how he himself is "not afraid of dying." RJN, Ex. 2 at p. 2. The interview contains no comments about Musk's views about workers age 50 and over or about employment practices at Twitter, a company that he did not acquire until months later. Plaintiff provides no nexus between Musk's human-longevity comments and the RIF selections that Plaintiff challenges here.

### D.   The Collective and Class Claims.

Plaintiff asserts collective claims under the ADEA, 29 U.S.C. § 621 and class claims under NYSHRL, N.Y. Exec § 296, based on Twitter "conducting mass layoffs in a manner that resulted in a disproportionate impact on employees" age 50 and over. Compl. at pp. 7-8. He purports to represent "all Twitter employees across the United States age fifty (50) or older who have lost their jobs since Elon Musk acquired the company" in a collective action under the ADEA and a class action under NYSHRL. Compl. ¶¶ 7, 8.

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's allegations. A court must dismiss a claim unless the complaint articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The "plausibility standard is not akin to a 'probability

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57).  A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'" of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681). Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

The Court considers whether the pleading's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory.  *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

In a putative class action, the plausibility standard under Twombly applies not only to the named plaintiff's individual claims, but also to the class claims.  *See, e.g.*, *Mish v. TForce Freight, Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (dismissing class claims under *Twombly* standard); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) (dismissing class claims because "Plaintiffs do not assert any factual support for their class allegations . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter [of class discovery]").

/ / /

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

IV.    **ARGUMENT**

    A.    **Plaintiff Fails to State a Claim for Intentional Age Discrimination.**

Under the ADEA and NYSHRL, it is unlawful for an employer to intentionally discriminate against an employee because of his or her age.  29 U.S.C. § 621; N.Y. Exec § 296(1)(a).  To state a disparate treatment claim, a plaintiff must allege that "the defendant had a discriminatory intent of motive" in taking some employment-related action against them.  *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988); RJN, Ex. 1 (*Strifling* Order at 6).  It is not enough to allege that "the employer was merely aware of the adverse consequences the policy would have on a protected group."  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)).  Both the ADEA and NYSHRL require the plaintiff to plead that his age was the "but-for" cause of an adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (ADEA requires "but-for" causation); *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (applying but-for causation to NYSHRL age claim because "age discrimination claims under the NYSHRL have long been considered to be identical to those under the ADEA").

        1.    **The Complaint Contains No Facts to Support an Inference That Twitter Would Not Have Terminated Him "But-For" His Age.**

Plaintiff alleges he was 63 years old when Twitter selected him for layoff as part of the RIF.  Compl. ¶¶ 6, 34.  The Complaint says nothing about Plaintiff's role, qualifications, job performance, or abilities.  *See generally* Compl.  Nor does the Complaint allege any facts about circumstances plausibly suggesting that ***but-for*** his age, Plaintiff would not have been laid off.  *Id.*  For example, the Complaint does not allege anything about the comparative qualifications, job performance, or abilities of younger employees who worked in substantially similar positions and were not laid off.  *Id.*  Nor does it identify the managers who made the RIF decisions, state the age of those managers, or allege that any of those unidentified decision-makers harbored any age animus towards Plaintiff or any other employee, or even that the managers knew the employees' ages when making RIF selections.  *Id.*  Thus, Plaintiff's disparate treatment claim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

fails here because his complaint is "devoid of basic information" that suggests a "plausible link between [his] layoff during the RIF and the fact [of his age]." *See* RJN, Ex. 1 (*Strifling* Order at 7) (dismissing sex-based disparate treatment claim against Twitter related to the RIF for several reasons, including that plaintiffs "do not describe their positions prior to the RIF or allege that they were performing satisfactorily in those positions. Thus, they are unable to allege that similarly situated men were not laid off during the RIF. . . Nor do they identify the 'small group of managers' who 'acted under close supervision of Musk' in making the layoff decisions.").

### 2. Plaintiff Fails to Allege that Twitter Engaged in a Pattern or Practice of Discrimination.

A plaintiff can state a claim for intentional discrimination under a "pattern or practice" theory when the allegations suggest that discrimination "was the company's ***standard operating procedure***." *Int'l Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977) (emphasis added). A plaintiff must plead "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* Rather, the allegations must suggest that discrimination is "the regular rather than the unusual practice" and is "repeated, routine, or of a generalized nature." *Id.* at 336; *see also Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (citing *Teamsters*). The Ninth Circuit has made clear that "a pattern or practice is 'discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace.'" RJN, Ex. 1 (*Strifling* Order at 8) (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003)). Typically, a plaintiff supports a pattern or practice claim with allegations of significant statistical disparities coupled with anecdotal evidence that bring "the cold numbers convincingly to life." *Id.* at 339; *Teamsters*, 431 U.S. at 336.

Plaintiff fails to state a pattern or practice claim because neither his statistics alone, nor his statistics coupled with his anecdotal allegations, plausibly allege a pattern or practice of intentional age discrimination.

### a. Plaintiff Does Not Allege that Discrimination Was "a Routine and Regular Part" of Twitter's Workplace.

Plaintiff alleges the layoff decisions "were made quickly" in "just days" after Musk's acquisition, under "extremely hurried circumstances," by a "small group of managers" who "did

not have much, if any, knowledge about Twitter's operations." Compl. ¶¶ 18-21.  These

allegations undermine any inference that the layoffs were part of Twitter's standard operating

procedure because "Plaintiff[] do[es] not allege that discrimination was widespread throughout

Twitter."  RJN, Ex. 1 (*Strifling* Order at 9).  Instead, the RIF was an isolated event that was not a

"'routine and regular part' of Twitter's workplace."  *Id.* (citing *Sperling v. Hoffmann-La Roche,*

*Inc.*, 924 F. Supp. 1346, 1364 (D.N.J. 1996) ("Another reason that plaintiffs' claim does not fall

within the framework of a pattern-or-practice case is that the employment practice which

plaintiffs assert was [the defendant's] standard operating procedure was used only once, i.e., the

Guidelines were used only during [the RIF].")); *Oinonen v. TRX, Inc.*, 2010 WL 396112, at *4

(N.D. Tex. Feb. 3, 2010) (granting defendant's motion to dismiss plaintiffs' ADEA claim arising

from a single layoff because such a "one-shot event cannot constitute a pattern or practice of

discrimination.").  Accordingly, Plaintiff fails to state a pattern or practice claim even before

considering his statistics and anecdotes.  RJN, Ex. 1 (*Strifling* Order at 9).

### b.   Plaintiff's Statistics Do Not Support an Inference of Intentional Discrimination.

Statistics alone will not support a claim for intentional discrimination except in "rare"

cases where there is a "stark pattern" of discrimination over and above the threshold of statistical

significance for a disparate impact claim.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc.*

*No. 30*, 694 F.2d 531, 553 (9th Cir. 1982) (quoting *Vill. of Arlington Heights v. Metro. Hous.*

*Dev. Corp.*, 429 U.S. 252, 266 (1977)).  That is so because taking a "purely statistical" approach

to intentional discrimination "would almost completely blur the distinction between 'impact' and

'intent,' and thus eliminate the legal difference between disparate impact and disparate treatment

lawsuits."  *Id.* at 552; *see also Schechner v. CBS Broad., Inc.*, 2010 WL 2794374, at *7 (N.D.

Cal. July 15, 2010) (collecting cases).  Applying this rationale, the Ninth Circuit has rejected an

inference of discriminatory intent from statistics that showed standard deviations as high as 2.46,

noting that "statistics must be considerably more stark" than 2.46 standard deviations to draw an

inference of intentional discrimination.  *Gay*, 694 F.2d at 553; *Rudebusch v. Hughes,* 313 F.3d

506, 515 (9th Cir. 2002) (affirming *Gay* and explaining that it "rejected the proposition that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

standard deviations of 1.3 and 2.46 were sufficiently representative, at least on their own, to make an inference of discrimination.")

Here, Plaintiff alleges that his expert analyzed Twitter's RIF data and found a disparity among workers age 50 and over that is 1.936 standard deviations from the normal demographic distribution.  Compl. ¶ 28.  On that basis, he purports to assert a claim for intentional discrimination.  *Id.* at pp. 7-8.  But a disparity at 1.936 standard deviations is not even statistically significant,[2] and, of course, it is far short of the 2.46 standard deviations that the Ninth Circuit rejected in *Gay* and even farther from the "stark" statistical results that might support a plausible inference of intentional discrimination.  *Gay*, 694 F.2d 531 at 552; *Schechner*, 2010 WL 2794374, at *7.  Thus, Plaintiff's statistics alone cannot support an inference of intentional discrimination as a matter of law.

### c.   Plaintiff's Sole Anecdotal Allegation Does Nothing to Bolster His Benign Statistics.

The Supreme Court has "admonished" that statistics "come in infinite variety" and their "usefulness depends on all of the surrounding facts and circumstances."  *Hazelwood Sch. Dist. V. United States*, 433 U.S. 299, 312 (1977) (quoting *Teamsters*, 431 U.S. at 340)).  As a result, a plaintiff will try to bring "the cold numbers" of statistics "convincingly to life" through personal anecdotes and other circumstantial evidence.  *Gay*, 694 F.2d at 553 (quoting *Teamsters*, 431 U.S. at 339).

Here, the Complaint lacks any meaningful anecdotal allegations to support a plausible inference that age was the "but for" cause of the RIF selections.  Indeed, there are no allegations of age animus towards Plaintiff or any other Twitter employee.  Plaintiff's only attempt to identify age animus is one stray quote from an interview with Musk, who was 51 years old at the time and many months away from acquiring Twitter.  RJN, Ex. 2 at p. 1.  In the interview, Musk allegedly stated that society should "not try to have people live for a really long time" because then "society wouldn't advance."  Compl. ¶ 23; RJN, Ex. 3 at p. 1.  Musk's comment offers no insight into Musk's disposition toward workers over the age of 50 or 60 at Twitter.  Compl. ¶¶ 18,

---

[2] *See Paige v. California*, 233 F. App'x 646, 648 (9th Cir. 2007) (recognizing statistical significance threshold of 1.96 standard deviations).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

23; RJN Ex. 3 at pp. 1-4.   Even if the comment did suggest that Musk harbors discriminatory animus toward older workers, it still would not support an inference of discrimination because the comment was "not tied directly to the RIF, as Musk made them prior to his acquisition of Twitter." *Compare* RJN, Ex. 1 (*Strifling* Order at 10), *with* Compl. ¶ 21.  The comment is further divorced from the RIF because a "small group of managers" other than Musk made the RIF selections, *id.* ¶ 21, and the Complaint contains no factual allegations that suggest Musk's purported age animus influenced those unidentified managers—or that the managers were even aware of his purported animus—when making the RIF selections.  To be sure, the Complaint tries to hint at some connection by alleging that the managers worked "under close supervision by Musk." *Id.*  But that is a pure conclusion that courts ignore under *Twombly*.

In short, Musk's comment does not support any inference of age animus—let alone an inference of "but-for" causation—because the Complaint contains nothing to link the comment to the actual RIF decisions (or to any other policy or practice at Twitter).  *See, e.g.*, RJN, Ex. 1 (*Strifling* Order at 10) ("Isolated remarks, unrelated to the discriminatory employment decision, are generally insufficient to establish discriminatory intent"); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996) (supervisor's comment that he wanted to get rid of "old timers" who did not "kiss the ass" of the supervisor did not support an inference of age discrimination because the comment was not tied directly to plaintiff's layoff and was "ambiguous"); *Maybin v. Hilton Grand Vacations Co., LLC*, 343 F.Supp.3d 988, 998 (D. Haw. Sept. 28, 2018) (finding comments that "the older agents, including [plaintiff], were too slow, can't learn, have a different way of doing things, are hard to teach new ways of sales, are too old to change, and don't have the energy necessary for sales," did not "explicitly reference age; rather, their intent and meaning must be circumstantially inferred . . . [nor did they] evince an extraordinarily strong showing of bias based upon [plaintiff's] age, especially because these comments are not linked directly to his termination"); *Cozzi v. County of Marin*, 787 F.Supp.2d 1047, 1058-59 (N.D. Cal. Apr. 18, 2011) (supervisor's comments regarding wanting "fresh faces" did not constitute evidence of age discrimination "because such remarks do not lead to the inescapable conclusion that [supervisor] wanted 'younger' faces or that she favored younger

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

1    employees.").

2          In short, Plaintiff's weak statistics combined with this single interview with Musk that

3    was not even about employee retention, let alone at Twitter, are a far cry from what Plaintiff

4    would need to allege a plausible inference that the RIF decisions were the product of a standard

5    operating procedure of age discrimination at Twitter.

6          **B.      Plaintiff Fails to State a Disparate Impact Claim.**

7          The ADEA recognizes a disparate impact theory of liability.  *Smith v. City of Jackson*, 544

8    U.S. 228, 232 (2005).  Disparate impact claims "involve employment practices that are facially

9    neutral in their treatment of different groups but that in fact fall more harshly on one group than

10   another."  *Teamsters*, 431 U.S. at 335.  "A disparate impact claim challenges 'employment

11   practices that are facially neutral in their treatment of different groups but that in fact fall more

12   harshly on one group than another and cannot be justified by business necessity.'"  *Pottenger v.

13   Potlatch,* 329 F.3d 740, 748 (9th Cir. 2003) (quoting *Teamsters*, 431 U.S. at 335 n.15).  As the

14   Supreme Court has explained, "it is not enough to simply allege that there is a disparate impact on

15   workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is

16   'responsible for isolating and identifying the specific employment practices that are allegedly

17   responsible for any observed statistical disparities.'"  *Smith*, 544 U.S. at 241 (quoting *Wards Cove

18   Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)).  The Ninth Circuit has stressed that

19   "'[i]dentifying a specific practice is not a trivial burden' in [] discrimination cases alleging

20   disparate impact."  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir.

21   2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).

22         As a result, "[p]laintiffs generally cannot attack an overall decisionmaking process in the

23   disparate impact context, but must instead identify the particular element or practice within the

24   process that causes an adverse impact."  *Durante v. Qualcomm, Inc.*, 144 F. App'x. 603, 606 (9th

25   Cir. 2005) (quoting *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002)); *Am. Fed'n of State,

26   Cty., & Mun. Emps., AFL-CIO (AFSCME)*, 770 F.2d at 1405 ("Disparate impact analysis is

27   confined to cases that challenge a specific, clearly delineated employment practice applied at a

28   single point in the job selection process.").  A "decisionmaking process may be analyzed as a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

single employment practice if 'the complaining party can demonstrate to the court that the

elements of a respondent's decisionmaking process are not capable of separation for analysis.'"

*Stout*, 276 F.3d at 1124 (quoting 42 U.S.C. § 2000e–2(k)(1)(B)(i)).

Here, Plaintiff fails to allege a plausible disparate impact claim for several reasons.

### 1.     The ADEA and NYSHRL Do Not Recognize Plaintiff's 'Subgroup' Claim Based on Employees Aged 50 or Older.

The ADEA prohibits discrimination against employees who are "at least 40 years of age"

on the basis of their age.  29 U.S.C. §§ 623(a), 631(a).  The NYSHRL prohibits discrimination

against employees who are "eighteen years of age or older."  N.Y. Exec. Law § 296.  Although

Plaintiff has access to Twitter's OWBPA disclosure that states the ages of the employees it

retained and the ages of those it laid off as part of the RIF, *see* Compl. ¶ 25, the statistics for the

category of older workers protected by the ADEA and NYSHRL are conspicuously absent from

the Complaint.  Ignoring those protected classes, Plaintiff alleges the RIF had a "disproportionate

impact on employees age fifty (50) and older."  Compl. at pp. 7-8 (Counts I and II).  But the

ADEA does not recognize a disparate impact claim predicated on disparities for a "subgroup" of

older workers who are age 50 or older.  *E.E.O.C. v. McDonnell Douglas Corp*., 191 F.3d 948, 951

(8th Cir. 1999) ("If disparate-impact claims on behalf of subgroups were cognizable under the

ADEA, the consequence would be to require an employer engaging in a RIF to attempt what

might well be impossible: to achieve statistical parity among the virtually infinite number of age

subgroups in its work force.  Adoption of such a theory, moreover, might well have the

anomalous result of forcing employers to take age into account in making layoff decisions, which

is the very sort of age-based decision-making that the statute proscribes."); *Smith v. Tennessee*

*Valley Auth*., 924 F.2d 1059 (6th Cir. 1991) ("A plaintiff cannot succeed under a disparate impact

theory by showing that younger members of the protected class were preferred over older

members of the protected class.") (citing *Lowe*, 886 F.2d at 1373); *Criley v. Delta Air Lines, Inc*.,

119 F.3d 102, 105 (2d Cir. 1997) (disparate impact claim under the ADEA must "allege a

disparate impact on the entire protected group, i.e., workers aged 40 and over.") (citing *Lowe v.*

*Commack Union Free Sch. Dist*., 886 F.2d 1364, 1372–73 (2d Cir.1989)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

Although the Ninth Circuit has not decided the issue, district courts in this Circuit have repeatedly rejected "subgroup" disparate impact claims under the ADEA. *See, e.g., Kinnally v. Rogers Corp.*, 2009 WL 597211, at *10 (D. Ariz. Mar. 9, 2009) ("The Court agrees with the circuits that have rejected disparate impact claims based on age sub-groups. The Court believes that the Ninth Circuit Court of Appeals would also agree with those circuits"); *Schechner v. KPIX-TV*, 2011 WL 109144, at *5 (N.D. Cal. Jan. 13, 2011) ("[C]ourts have consistently held that the relevant group for purposes of a disparate impact age discrimination cases consists of individuals aged 40 or older."); *Rudwall v. Blackrock, Inc.*, 2011 WL 767965, (N.D. Cal. Feb. 28, 2011) ("[Plaintiff's] Rudwall's relevant statistical data fail to compare the impact of BlackRock's 2008 terminations on employees aged 40 and older to the impact on those aged 39 and younger, and thus they fail to support a prima facie case of disparate impact age discrimination.").

Like the ADEA, the NYSHRL does not recognize a "subgroup" claim. *Bohlke v. General Elec. Co.*, 742 N.Y.S.2d 131 (3d Dep't. 2002) ("Applying the Second Circuit's rationale that a plaintiff must show a disparate impact on the entire protected class in order to recover, it is impossible for plaintiffs herein to assert an age discrimination claim based upon disparate impact under the [NYSHRL] when all of defendant's employees are over the age of 18 and fall within the protected class."); *Di Mascio v. Gen. Elec. Co.*, 739 N.Y.S.2d 854 (3d Dep't 2002) (same).

As a result, Plaintiff's disparate impact "subgroup" claim fails as a matter of law.

### 2.    Plaintiff Cannot State a Disparate Impact Claim by Simply Re-Labelling His (Failed) Disparate Treatment Claim.

A plaintiff cannot recast a claim for intentional discrimination as a disparate impact claim when the "premise for disparate impact liability coalesces with the discharge which [the plaintiff] claims to have constituted disparate treatment." *Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992). If this were not so, disparate impact law would simply "provide a means to circumvent the subjective intent requirement in any disparate treatment case." *Id.*

In *Zawacki v. Realogy Corp.*, for instance, the court rejected the disparate impact "label" on the plaintiff's age-based discrimination claims because the complaint alleged "the Defendant's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

procedures in conducting the RIFs were nothing more than a cover for behind-the-scenes, intentional discrimination against its older employees." 628 F. Supp. 2d 274, 281 (D. Conn. 2009). Similarly, in *Barrett v. Forest Labs., Inc*., 39 F. Supp. 3d 407, 438 (S.D.N.Y. 2014), the court explained that although the complaint characterized the defendants' policy of giving weight to performance evaluations as the source of discrimination, "the real source of the disparity [wa]s the managers' allegedly discriminatory reviews" where managers gave women unjustifiably low performance evaluations. As such, the allegations in *Barrett* were "not a situation where Defendants followed a facially-neutral practice that created a disparity," but rather "a situation in which managers intentionally treated male and female employees differently. That is a disparate treatment claim." *Id.*

Plaintiff alleges that Twitter intentionally targeted Twitter employees over age 50 for termination. Compl. ¶ 22 ("Musk has a history of bias and making ageist comments"); *id.* ¶ 4 ("Musk has made publicly discriminatory remarks about older people, further confirming that the mass termination's greater impact on older employees resulted from discrimination."); *id.* ¶ 21 (alleging managers made the RIF decisions "under close supervision by Musk.") In light of those allegations, there is no way to construe Plaintiff's theory as anything but a claim for intentional discrimination, and he cannot circumvent the proof requirements of a disparate treatment claim in connection with the RIF through the expedient of placing the "disparate impact" label on his discrimination allegations.

### 3.    Plaintiff Fails to Allege a Statistically Significant Disparity.

As noted above, *see supra* § IV.A.2.b, the Ninth Circuit had recognized that a disparity is not statistically "significant" for purposes of a disparate impact analysis unless it reflects at least 1.96 standard deviations or the circumstances warrant departure from that generally accepted standard. *See Paige v. California*, 233 F. App'x 646, 648 (9th Cir. 2007) (explaining that "the 1.96 threshold conforms with accepted conventions in the social science field and with the federal government's internal standards," and concluding that the district court "committed clear error by not using the 1.96 mark") (citing *Segar v. Smith,* 738 F.2d 1249, 1282 (D.C. Cir. 1984)).

Here, Plaintiff's statistical allegations fail to meet the threshold for statistical significance

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

because she alleges 1.936 standard deviations from the normal distribution, *see* Compl. ¶ 28, and the Complaint contains no facts to suggest that departing from the generally accepted standard of statistical significance is appropriate.

### 4. The Complaint Fails to Isolate and Identify a Specific Employment Practice Responsible for the Alleged Disparities.

To state a viable disparate impact claim in a RIF case, the complaint must "go beyond the general concept of a 'RIF' to identify actionable practices" that informed the RIF. *See Davis v. D.C.*, 925 F.3d 1240, 1250 (D.C. Cir. 2019); *see also Gilbreath v. Brookshire Grocery Co.*, 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019) (collecting cases and explaining that "plaintiffs terminated in a RIF or layoff must identify a specific test, requirement, or practice in the layoff selection process that is allegedly responsible for the purported statistical disparities."). In addition, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' . . . ." *Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) (citing *Wards Cove*, 490 U.S. at 653); *Mahler v. Jud. Council of California*, 67 Cal. App. 5th 82, 113-14 (2021) (same).

The Complaint does not come close to identifying a specific RIF-related employment practice to challenge with a disparate impact claim, and instead, asserts an unidentified "small group of managers" made RIF decisions "under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and abilities." *Id.* at ¶¶ 19, 21. But those allegations address only what factors Twitter allegedly **did not** consider; they do not address what factors Twitter **did** consider that are responsible for the purported disparities. Thus, the Complaint lacks allegations sufficient to support a disparate impact claim based on the RIF. *See Stout*, 276 F.3d at 1121-22 (in a pay and promotion case, observing that the proper unit of analysis for the disparate impact claim was not the entire promotion process or the overall promotion rate after the final stage of the process, but rather the selection rate at an "intermediate stage" where a screening panel selected which candidates would proceed to an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

interview stage); *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (allegation that the defendant "'allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions,' is too vague to support Plaintiffs' disparate impact claims."); *see also Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021) (recognizing disparate impact claim where the plaintiff challenged a specific practice pay practice but "d[id] not challenge the general practice of awarding retention bonuses").

As noted above, the Complaint offers only bottom-line statistics on the RIF, Compl. ¶¶ 26-32, but it does not allege any specific practice, test, or standard that was responsible for some or all of the alleged disparities.  Accordingly, Plaintiff's disparate impact claim must fail for this additional reason.

C.     **Because Plaintiff Was Laid Off in the RIF, He Lacks Standing to State a Claim Related to Employees Terminated Subsequently or for Other Reasons.**

Article III requires Plaintiffs to "clearly . . . allege facts demonstrating each element" of standing at the pleading stage.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A plaintiff has standing only if she suffered an injury in fact, which is an invasion of a legally protected interest that is "concrete and particularized."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  An injury is "particularized" only if it affects a plaintiff "in a personal and individual way."  *Id.* at 339.  Consequently, a plaintiff may assert a claim that arises only from her own injuries—a plaintiff cannot state a claim arising from purported injuries "suffered by other, unidentified members" of a purported class.  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (dismissing putative class action for lack of standing by the named plaintiffs).  In disparate impact cases, a plaintiff must show he was "subject to the particular employment practice" that caused the demographic disparity.  *Pottenger*, 329 F.3d at 750 (affirming summary judgment on disparate impact claim because the plaintiff was not subject to the RIF he challenged); RJN, Ex. 1 (*Strifling* Order at 12, n.9 (citing *Pottenger* and rejecting plaintiffs' argument that they could target post-RIF policies for a disparate impact claim when they were not subject to those policies.); *see also id.* at 7, n.5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

1    Here, Plaintiff purports to assert claims for all employees over age fifty "who have lost

2    their jobs with the company" after Musk's acquisition.   Compl. ¶¶ 7, 8.  But Plaintiff alleges

3    Twitter terminated him during the RIF on November 4 and further acknowledges that not all

4    employees "lost their jobs" on November 4.  *Id*. ¶¶ 20, 34.  Because Plaintiff could not have

5    suffered the same injuries as employees who subsequently separated from Twitter or separated

6    from Twitter for reasons other than the RIF (*e.g.*, termination for cause or voluntary separation),

7    Plaintiff lacks standing to state a claim on behalf of "all employees" over age 50.  *See* RJN, Ex.1

8    (*Strifling* Order at 7, n.5); *id.* at 12, n.9.

9    **V.      CONCLUSION**

10    For the reasons stated above, the Complaint fails to state a disparate treatment claim or a

11    disparate impact claim.  Twitter therefore respectfully requests an order dismissing the Complaint

12    in its entirety.

13    Dated: May 12, 2023                              MORGAN, LEWIS & BOCKIUS LLP

14

15                                                          By    */s/ Brian D. Berry*
                                                                  Eric Meckley
16                                                                Brian D. Berry
                                                                  Jonathan D. Lotsoff
17                                                                Roshni C. Kapoor
                                                                  Joseph A. Govea
18                                                                Carolyn M. Corcoran

19                                                                Attorneys for Defendants
                                                                  TWITTER, INC. and X CORP.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                                                  MEMORANDUM OF POINTS AND
                                                    AUTHORITIES ISO MOTION TO DISMISS
                                                    CASE NO. 3:23-cv-01786-SI