SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff John Zeman, on behalf of himself
and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN ZEMAN, on behalf of himself and all others similarly situated, <br><br>      Plaintiff, <br><br>    v. <br><br> TWITTER, INC. and X CORP., <br><br>      Defendants | Case No. 3:23-cv-01786-SI <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S MOTION TO DISMISS THE COMPLAINT** <br><br> Date:  July 28, 2023 <br> Time:  10:00 AM, PST <br> Judge:  Hon. Susan Illston |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND........................................... 3

III.  ARGUMENT ...................................................................................................... 5

      A.    Legal Standard for Motion to Dismiss Under Rule 12(b)(6). .................. 5

      B.    Zeman Has Stated a Claim for Intentional Age Discrimination. ........................... 6

      C.    Zeman Has Stated a Claim for Disparate Impact Claim. ...................................... 10

            1.    The ADEA and NYSHRL protect employees from age
                  discrimination, even if other some employees over the age of forty
                  (40) are not impacted by Twitter's discriminatory practice. .................... 11

            2.    Zeman may proceed with a disparate impact and disparate
                  treatment claims. .......................................................................... 12

            3.    Zeman has plausibly alleged a claim for disparate impact age
                  discrimination. ............................................................................. 13

                  i.    Zeman has identified a particular business practice. .................... 14

                  ii.   Zeman's statistical data shows that it is plausible that
                        Twitter's layoff had a disparate impact on older employees. ........ 16

      D.    Twitter's Argument Regarding Standing Should Be Rejected. ............................ 17

IV.   CONCLUSION.................................................................................................. 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Cases**

Abdu-Brisson v. Delta Air Lines, Inc.,
  239 F.3d 456 (2d Cir. 2001)............................................................................ 6

Alfaro-Flecha v. Orc International, Inc.,
  2016 WL 67722 (S.D.N.Y Jan. 5, 2016) ................................................. 9, 10

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)....................................................................................... 5

Barrett v. Forest Lab'ys, Inc.,
  39 F. Supp. 3d 407 (S.D.N.Y. 2014)........................................................ 3, 13

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)....................................................................................... 5

Buchanan v. Tata Consultancy Services, Ltd.,
  2017 WL 6611653 (N.D. Cal. Dec. 27, 2017) ............................................. 8

Campbell v. Hawaii Dep't of Educ.,
  892 F.3d 1005 (9th Cir. 2018) ...................................................................... 1

Cerjanic v. FCS USA, LLC,
  2018 WL 3729063 (E.D. Mich. Aug. 6, 2018) ........................................ 2, 12

Chaidez v. Ford Motor Company,
  937 F.3d 998 (7th Cir. 2019) ...................................................................... 16

Davis v. D.C.,
  925 F.3d 1240 (D.C. Cir. 2019).................................................................. 14

Enoh v. Hewlett Packard Enterprise Co.,
  2018 WL 3377547 (N.D. Cal. July 11, 2018)............................................. 15

Finch v. Hercules, Inc.,
  865 F. 1104 (D. Del. 1994).................................................................... 2, 12

Fox v. Bonneville Admin.,
  243 F.3d 547 (9th Cir. 2000) .................................................................. 2, 12

Frappied v.Affinity Gaming Black Hawk, LLC,
  966 F.3d 1038 (10th Cir. 2020) .................................................................. 13

Freeman v. Cty. of Sacramento Dep't of Human Assistance,
  2020 WL 2539268 (E.D. Cal. May 19, 2020) ............................................. 11

Freyd v. University or Oregon,
    990 F.3d 1211 (9th Cir. 2021) ......................................................... 15, 16

Gay v. Waters' and Dairy Lunchmen's Union, Local No. 30,
    694 F.2d 531 (9th Cir. 1982) ......................................................... 2, 3, 9

Gilbreath v. Brookshire Grocery Co.,
    400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ................................. 14

Graffam v. Scott Paper Co.,
    848 F. Supp. 1 (D. Maine 1994) ...................................................... 2, 12

Hemmings v. Tidyman's Inc.,
    285 F.3d 1174 (9th Cir. 2002) ........................................................... 10

Horn v. Cusman & Wakefield Western,
    72 Cal. App. 4th 798 (1999) ............................................................... 10

International Broth. of Teamsters v. United States,
    431 U.S. 324 (1977) ............................................................................. 8

Karlo v. Pittsburgh Glass Works, LLC,
    849 F.3d 61 (3d Cir. 2017) ....................................................... 2, 11, 12

Karpe v. Chao,
    416 F. Supp. 3d 1021 (S.D. Cal. 2019) .............................................. 16

Lee v. Hertz Corp.,
    330 F.R.D. 557 (N.D. Cal. 2019) ....................................................... 17

Lopez v. Pacific Maritime Association,
    2009 WL 10680881 (C.D. Cal. April 3, 2009) ................................... 10

Lyons v England,
    307 F.3d 1092 (9th Cir. 2002) ............................................................. 6

Mahler v. Judicial Counsel of Cal.,
    67 Cal. App. 5th 82 (2021) ........................................................... 2, 12

Mandala v.NTT Data, Inc.,
    975 F.3d 202 (2d Cir. 2020) ............................................................... 14

Maresco v. Evans Chematics, Div. of W.R. Grace & Co.,
    964 F.2d 106 (2d Cir. 1992) ............................................................... 13

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ........................................................................ 6, 8

McGinest v. GTE Service Corp.,
    360 F.3d 1103 (9th Cir. 2004) ........................................................................ 6

Merrick v. Farmers Ins. Group,
    892 F.2d 1434 (9th Cir. 1990) ...................................................................... 10

Meyer v. Bear Rd. Assocs.,
    124 F. App'x. 686 (2d Cir. 2005) ................................................................... 17

Morales v. Laborers' Union 304,
    2012 U.S. Dist. LEXIS 2234 (N.D. Cal. Jan. 9, 2012) ...................................... 5

Moussouris v. Microsoft Corp.,
    2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) ............................................. 11

Moussouris v. Microsoft Corp.,
    2018 WL 63584701 (W.D. Wash. July 11, 2018) ........................................... 12

Nat'l Fair Hous. All. v. Travelers Indem. Co.,
    261 F. Supp. 3d 20 (D.D.C. 2017) ................................................................. 17

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001) .......................................................................... 5

O'Brien v. Caterpillar, Inc.,
    900 F.3d 923 (7th Cir. 2018) .................................................................... 2, 12

O'Connor v. Consolidated Coin Caterers Corp.,
    517 U.S. 308 (1996) ...................................................................................... 11

O'Donnell v. U.S. Bancorp Equip. Fin., Inc.,
    2010 WL 2198203 (N.D. Cal. May 28, 2010) ......................................... 5, 7, 11

Paine v. IKEA Holding US, Inc.,
    2020 WL 374581 (E.D. Pa. Jan. 23, 2020) ..................................................... 12

Pedreiera v. Ky. Baptist Homes for Children, Inc.,
    579 F.3d 722 (6th Cir. 2009) .......................................................................... 8

Pottenger v. Potlach Corp.,
    329 F.3d 740 (9th Cir. 2003) .................................................................... 2, 14

Reese v. Source 4 Teachers,
    2018 WL 3572987 (E.D. Pa. Aug. 8, 2018) ................................................... 15

Rose v. Wells Fargo & Co.,
    902 F.2d 1417 (9th Cir. 1990) ................................................................... 3, 15

Rudebusch v. Hughes,
    313 F.3d 506 (9th Cir. 2002) ........................................................................... 9

Sablan v. A.B. Won Pat Int'l Airport Auth., Guam,
    2010 WL 5148202 (D. Guam Dec. 9, 2010) ....................................................... 5

Schechner v. CBS Broad., Inc.,
    2010 WL 2794374 (N.D. Cal. Jul. 15, 2010) ..................................................... 9

Serrano v. Cintas Corp.,
    699 F.3d 884 (6th Cir. 2012) ........................................................................... 8

Sheppard v. David Evans Assoc.,
    694 F.3d 1045 (9th Cir. 2012) ..................................................................... 6, 7

Smith v. City of Jackson,
    544 U.S. 228 (2005) ..................................................................................... 10

Sperling v. Hoffman-La Roche, Inc.,
    924 F. Supp. 1346 (D.N.J. April 30, 1996) ...................................................... 8

Stout v. Potter,
    276 F.3d 1118 (2d Cir. 2002) ......................................................................... 16

Strifling v. Twitter, Inc.,
    Case No. 22-cv-07739-JST, slip op. (N.D. Cal. May 8, 2023) ............................ 8

Swierkiewicz v. Sorema N.A,
    534 U.S. 506 (2002) ....................................................................... 6, 8, 11, 13

Travers v. Flight Servs. & Sys., Inc.,
    737 F.3d 144 (1st Cir. 2013) ........................................................................ 7, 10

Tsur v. Intel Corp.,
    --- F. Supp. 3d ---, 2022 WL 17985573 (D. Or. Dec. 29, 2022) ........................ 14

Usher v. O'Reilly Automotive, Inc.,
    2014 WL 12597587 (C.D. Cal. May 27, 2014) ................................................ 10

Ward Cove Packing Co., Inc. v. Atonio,
    490 U.S. 642 (1989) ..................................................................................... 12

Watson v. Fort Worth Bank & Trust,
    487 U.S. 977 (1988) .................................................................................. 9, 10

Winters v. Fellowes, Inc.,
    2005 WL 8177351 (N.D. Ill. Oct. 11, 2005) ..................................................... 9

Wood v. City of San Diego,
        678 F.3d 1075 (9th Cir. 2012) ........................................................... 1

Wu v. Special Couns.,
        2015 WL 10761295 (D.C. Cir. Dec. 22, 2015)................................... 14

Zawacki v. Realogy Corp.,
        628 F. Supp. 2d 274 (D. Conn. 2009)............................................... 13

**Statutes**

Age Discrimination in Employment Act of 1967 ("ADEA"),
        29 U.S.C. § 621................................................................... 1, 3, 6, 11

New York State Human Rights Law ("NYSHRL"),
        NY Exec § 296................................................................... 1, 3, 6, 11

Older Workers Benefit Protection Act ("OWBPA"),
        29 U.S.C § 626......................................................................... 4, 7, 17

**Other Authorities**

Liu v. Uber Techs, Inc.,
        EEOC Amicus Brief, Case No. 22-16507, Dkt. 14 (9th Cir. Apr. 3, 2023) ........... 3, 11, 16

**Rules**

Fed R. Civ. P. 8(a)(2) ....................................................................... 5

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

## I.    INTRODUCTION

This case was brought by Plaintiff John Zeman on behalf of Twitter[1] employees age fifty (50) or older who have been laid off (or constructively discharged) in the wake of the purchase of the company by multi-billionaire Elon Musk. See Collective and Class Action Complaint (Dkt. 1). Zeman allege that Defendants engaged in unlawful discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, and (for employees who worked out of New York) New York State Human Rights Law ("NYSHRL"), NY Exec § 296.

In its Motion to Dismiss, Twitter argues that Zeman's age discrimination claims should be dismissed because he has failed to state a claim under either a disparate treatment or disparate impact theory. In doing so, Twitter misconstrues the pleading standard and relies primarily on cases decided either on summary judgment or at trial. As discussed at length below, Zeman has met his burden of adequately pleading that Twitter's conduct discriminated against employees age fifty (50) or older under either a disparate impact or disparate treatment theory.

For one, Zeman has provided sufficient detail describing age discrimination in Twitter's recent (and ongoing) mass layoffs, that amply satisfy the pleading requirements of a disparate treatment claim, including allegations of statistical analyses of Twitter's layoffs undertaken by an expert economist and statistician. Zeman has alleged that Twitter's layoffs affected older employees in a manner that was statistically significant. Further, Zeman has bolstered his allegations by citing public statements by Musk, which evidence his discriminatory animus toward older individuals, which color the actions taken by Twitter when it laid off a significantly higher proportion of older workers. These allegations easily suffice to state a claim of disparate treatment. See Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1012 (9th Cir. 2018); Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012); Gay v. Waters' and Dairy

---

[1]     In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

Lunchmen's Union, Local No. 30, 694 F.2d 531, 550 (9th Cir. 1982).

Likewise, Zeman plausibly alleges a disparate impact theory of liability because Twitter's layoff, even if it is considered to be facially neutral, had a significantly disproportionate impact on employees age fifty (50) and over. Courts around the country have found that employees may pursue disparate impact claims for a "subgroup" of older workers. See e.g., Fox v. Bonneville Admin., 243 F.3d 547 (9th Cir. 2000) (unreported case) (stating that allegations in plaintiffs' class complaint that company's policy had a disparate impact on workers over 50 years old were sufficient to state a disparate impact claim); O'Brien v. Caterpillar, Inc., 900 F.3d 923, 929-30 (7th Cir. 2018) (recognizing potential disparate impact claims for a group of employees age 55 and older); Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 70-81 (3d Cir. 2017) (holding that age discrimination disparate impact claims are not limited to 40-and-older comparisons, and can be based on subgroups); Cerjanic v. FCS USA, LLC, 2018 WL 3729063, at *5-6 (E.D. Mich. Aug. 6, 2018) (denying motion to dismiss disparate impact age discrimination claim for a group of employees age 55 and older); Mahler v. Judicial Counsel of Cal., 67 Cal. App. 5th 82, 126 (2021) (relying on reasoning of Karlo to find that disparate impact age discrimination claims under California state law are not limited to forty-and-other comparisons). See also Graffam v. Scott Paper Co., 848 F. Supp. 1, 3-5 (D. Maine 1994) (holding that a subgroup of employees age 50 and older was a proper statistical analysis to support a disparate impact age discrimination claim); Finch v. Hercules, Inc., 865 F. 1104, 1129-30 (D. Del. 1994) (employee could seek to prove disparate impact age claims for subgroup of employees age 50 and older or age 55 and older).

Twitter also argues that Zeman has not alleged a particular employment practice that resulted in the disparate impact. Contrary to Twitter's insistence, the allegations regarding Twitter's mass layoff alone are sufficient to establish a challenge to a particular employment practice as is necessary in a disparate impact claim. See Pottenger v. Potlach Corp., 329 F.3d 740, 749 (9th Cir. 2003). Further, Zeman's allegations that Musk's decision to commit layoff selections to a small group of employees, directing them to make the decisions at a break-neck

pace constitutes a particular employment practice that supports a disparate impact challenge. See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990).

Likewise, contrary to Twitter's position, Zeman is not required to plead statistical evidence that meets some magical threshold at the motion to dismiss stage. See Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 551 (9th Cir. 1982) ("It would be improper to posit a quantitative threshold above which statistical evidence of disparate racial impact is sufficient as a matter of law to infer discriminatory intent, and below which it is insufficient as a matter of law.") As the EEOC recently set forth in an amicus brief submitted to the Ninth Circuit, detailed statistical evidence is not required as part of a complaint. Rather, a plaintiff merely needs to allege an allegedly discriminatory practice and an actual disparity in how an employer treated a protected class of workers. Liu v. Uber Techs, Inc., EEOC Amicus Brief, Case No. 22-16507, Dkt. 14, at 12 (9th Cir. Apr. 3, 2023). Zeman's initial statistical analysis, as alleged in the Complaint, meets this standard.

Finally, the Court should reject the argument that Zeman cannot allege a disparate impact claim while also alleging disparate treatment, as even the cases Twitter cites reject that assertion. See, e.g., Barrett v. Forest Lab'ys, Inc., 39 F. Supp. 3d 407, 438 (S.D.N.Y. 2014).

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Zeman filed this collective and class action lawsuit on April 13, 2023, asserting collective claims for age discrimination in violation of the ADEA and class claims under the NYSHRL for employees who worked in New York. (Compl., Counts I-II, Dkt. 1.)

As Zeman alleged, Elon Musk recently purchased Twitter in late October 2022 and immediately began laying off well more than half of its workforce, including Zeman. (Compl. ¶¶ 3-4, 7-8, 17-18, Dkt. 1.) The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. (Compl. ¶ 19, Dkt. 1.) In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. (Compl. ¶ 19, Dkt. 1.) Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022.

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

(Compl. ¶ 20, Dkt. 1.) Zeman has alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. (Compl. ¶ 21, Dkt. 1.) Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations. (Compl. ¶ 21, Dkt. 1.) Zeman was sixty-three (63) years old at the time he was laid off. (Compl. ¶ 34, Dkt. 1.)

Zeman alleges that Twitter's mass layoff impacted employees age fifty (50) and older more than employees younger than fifty (50). (Compl. ¶ 24, Dkt. 1.) According to data that Twitter provided employees pursuant to the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C § 626, Twitter laid off approximately 60% of its employees age fifty (50) and older, while only 54% of its employees younger than fifty (50). (Compl. ¶¶ 25-27, Dkt. 1.) Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between employees age fifty (50) and older and younger employees being laid off was due only to chance is .0529. (Compl. ¶ 28, Dkt. 1.) Zeman alleges that the disparity for employees age sixty (60) or over is even greater. (Compl. ¶ 29, Dkt. 1.) Specifically, Twitter laid off approximately 73% of its employees age sixty (60) and older, while only 54% of its employees younger than sixty (60). (Compl. ¶ 30-31, Dkt. 1.) According to Dr. Killingsworth, the odds that this disparity was due only to chance is .0313.

Zeman further alleged that Twitter's discriminatory conduct in the layoffs is unsurprising in light of Elon Musk's public comments and discriminatory animus against older people. (Compl. ¶ 22-23, Dkt. 1.). For example, Musk has stated "if [older people] don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them." (Compl. ¶ 23, Dkt. 1.) It is thus not surprising that the managers who were making layoff decisions under Musk's close supervision would be affected in their decision making by what they expected their boss wanted.

III.    **ARGUMENT**

A.    **Legal Standard for Motion to Dismiss Under Rule 12(b)(6).**

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Zeman need only "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss." Twombly, 550 U.S. at 555. "A claim that is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants liable for the misconduct alleged." Morales v. Laborers' Union 304, 2012 U.S. Dist. LEXIS 2234, *3 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for determining whether a motion to dismiss should be granted." Sablan v. A.B. Won Pat Int'l Airport Auth., Guam, 2010 WL 5148202, at *2 (D. Guam Dec. 9, 2010). At the first step, the court parses out legal conclusions from factual statements. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)). "[T]he second step is to take any remaining well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. at 664)). At the motion to dismiss stage, the court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "[I]t would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim in the absence of direct evidence of discrimination." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting Twombly, 550 U.S. at 569-70). Rather, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

1

## B.      Zeman Has Stated a Claim for Intentional Age Discrimination.

2

3       The Ninth Circuit has held that to plead an age discrimination claim under a disparate

4   treatment theory, a plaintiff need only allege sufficient facts demonstrating a plausible claim of

5   age discrimination based on circumstantial evidence. <u>Sheppard v. David Evans Assoc.</u>, 694 F.3d

6   1045, 1049-50 (9th Cir. 2012). Moreover, while a plaintiff does not need to plead a prima facie

7   case of age discrimination in order to survive a motion to dismiss, if he does, then the complaint

8   will be sufficient. <u>Id.</u> at 1050 n.2 (citing <u>Swierkiewicz v. Sorema N.A</u>, 534 U.S. 506, 508-11

9   (2002)).

10      To establish a prima facie disparate treatment case of age discrimination, a plaintiff must

11  plead facts showing that: (1) he was at least forty (40) years old; (2) he was performing his job

12  satisfactorily; (3) he was discharged; and (4) similarly situated individuals outside his protected

13  class were treated more favorably. <u>Sheppard</u>, 694 F.3d at 1050. This standard is the same under

14  the NYSHRL. <u>See</u> <u>Abdu-Brisson v. Delta Air Lines, Inc</u>., 239 F.3d 456, 466 (2d Cir. 2001)

15  ("Although there are differences between the State [Human Rights Law 'HRL'], the City HRL

16  and the ... [ADEA], age discrimination suits brought under the State HRL and City HRL are

17  subject to the same analysis as claims brought under the ADEA."). A plaintiff may establish

18  disparate treatment either through direct evidence that a workplace policy, practice, or decision

19  relies expressly on a protected characteristic, <u>see</u> <u>McGinest v. GTE Service Corp.</u>, 360 F.3d 1103,

20  1121-22 (9th Cir. 2004), or "through circumstantial evidence, following the burden-shifting

21  framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)." <u>Lyons v</u>

22  <u>England</u>, 307 F.3d 1092, 1112 (9th Cir. 2002).

23      For example, in <u>Sheppard</u>, 694 F.3d at 1050, the plaintiff filed a two and half page

24  complaint simply alleging that: (1) she was over the age of 40; (2) her performance was

25  satisfactory and that she consistently receive positive reviews; (3) she was discharged, and (4)

26  that her younger comparators kept their jobs; and (5) that age was a factor in the decision to

27  terminate her. The Ninth Circuit found that while her complaint was brief, the plaintiff's

28

allegations were sufficient to allege a prima facie case of age discrimination, and therefore "raise an entirely plausible scenario of employment discrimination." Id.

Here, even though Zeman is not required to plead every element of disparate treatment in order to state a plausible age discrimination claim, he nonetheless likewise has pled facts that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 8, 2010); Sheppard, 694 F.3d at 1049-50. To that end, Zeman alleges that he, and other former Twitter employees age fifty (50) and older, were discriminated against by Twitter on the basis of their age. (Compl. ¶ 4, Dkt. 1.) Thus, he clearly has pled that he and his former co-workers were members of a protected class. (Compl. ¶ 4, Dkt. 1.) Likewise, Zeman alleged that he and approximately 148 other employees age fifty (50) or older were laid off.[2] (Compl. ¶¶ 20, 26-27.) Further, Zeman sets forth a statistical analysis based on initial data provided pursuant to the OWBPA; that analysis showed the layoffs disproportionately impacted employees age fifty (50) and older, and that the disproportionate impact was even more pronounced for those employees age sixty (60) and older. (Compl. ¶¶ 25-27, 30-31, Dkt. 1.) Zeman also alleged overtly ageist statements made by Musk, which support his claim that the decisionmakers who were working closely with Musk understood their boss' desire for a younger workplace. (Compl. ¶¶ 21-23, Dkt. 1.) See Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 147 (1st Cir. 2013) (reversing summary judgment on retaliation claim because "a rational juror could conclude that such strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling.") Thus, he has alleged facts that raise an entirely plausible claim for age discrimination.

For its part, Twitter argues that dismissal is appropriate because Zeman failed to allege his job title, qualifications as compared to younger employees, the names and ages of the

---

[2]       Given that Zeman and the other older employees were laid off, rather than terminated for cause, it implies that their job performance was satisfactory.

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

managers working closely under Musk's direction, and/or that he was performing his job satisfactorily. Yet, in light of the allegations recited above, Twitter is incorrect that such detail is necessary, particularly in a class and collective action complaint.[3]

Twitter also argues that Plaintiff's allegations cannot demonstrate that Twitter engaged in a "pattern or practice" of discrimination. "Class action plaintiffs may bring a claim for disparate treatment by alleging that the employer's conduct was part of a 'pattern or practice' of discriminatory treatment toward members of a protected class." Buchanan v. Tata Consultancy Services, Ltd., 2017 WL 6611653, at *11 (N.D. Cal. Dec. 27, 2017) (quoting International Broth. of Teamsters v. United States, 431 U.S. 324, 325 (1977)). However, "not all class actions alleging employment discrimination are pattern-or-practice cases," as the pattern-or-practice theory of the case alleges that "*unlawful discrimination* has been a *regular* procedure or policy followed by an employer . . . proven by demonstrating a consistent history of discriminatory decision making or by demonstrating that discrimination was the declared policy of the employer." Sperling v. Hoffman-La Roche, Inc., 924 F. Supp. 1346, 1361 (D.N.J. April 30, 1996) (emphasis in original).[4] Here, Zeman has adequately alleged that older employees were laid off at a higher rate than younger employees due to discrimination by Twitter since Musk

---

[3]    Defendants rely heavily on Strifling v. Twitter, Inc., Case No. 22-cv-07739-JST, slip op. (N.D. Cal. May 8, 2023), for the proposition that Zeman has not adequately pled sufficient facts. Given U.S. Supreme Court and Ninth Circuit precedent, Zeman respectfully disagrees with the Strifling decision. Nonetheless, should the Court agree that such minutiae is required at the pleading stage, the Court should allow Zeman leave to file an amended complaint.

[4]    Plaintiffs are not required to plead their intent to pursue a disparate treatment claim under the Teamsters pattern or practice framework or the McDonnell Douglas framework in their Complaint. See Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012) ("*Swierkiewicz* compels the conclusion that a plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework.") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508-12 (2002)). Moreover, disagreement over the evidentiary framework under which to proceed is "premature" at the pleadings stage. Pedreiera v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009). Indeed, plaintiffs are "not required to commit to one methodology of evidentiary proof to substantiate [an inference of discrimination] in their complaint," and requiring otherwise would impose too rigid a pleading requirement. Serrano, 699 F.3d at 898 (citing Swierkiewicz, 534 U.S. at 511-12).

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

took over the company - through the November 4, 2022 reduction-in-force and other layoffs that occurred shortly after that date. (Compl. ¶ 20, 24-32). See Winters v. Fellowes, Inc., 2005 WL 8177351, at *2 (N.D. Ill. Oct. 11, 2005) (plaintiff adequately alleged pattern and practice of age discrimination based on a series of layoffs that constituted a single termination plan by defendant).

Twitter also argues at great length that Zeman's statistical allegations are insufficient to support an inference of intentional discrimination. However, in doing so, it ignores the clear directive from the Supreme Court that that there simply is no strict minimum threshold level of statistical significance which mandates a finding either for or against a prima facie case of discrimination. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 998 n.3 (1988).

Moreover, in arguing that Zeman's statistical allegations are insufficient, Twitter fails to cite to a single case decided on a motion to dismiss. Rather, each of the cases cited by Twitter were decided either at trial or on summary judgment, in other words after the plaintiffs had an opportunity to conduct discovery. See Gay, 694 F.2d 531 (9th Cir. 1982) (decided after trial); Schechner v. CBS Broad., Inc., 2010 WL 2794374 (N.D. Cal. Jul. 15, 2010) (decided on summary judgment); Rudebusch v. Hughes, 313 F.3d 506 (9th Cir. 2002) (decided on summary judgment). Twitter's reliance on summary judgment and trial cases is not surprising since its argument has not been accepted at the motion dismiss stage. For example, in Alfaro-Flecha v. Orc International, Inc., 2016 WL 67722, at *4-5 (S.D.N.Y Jan. 5, 2016), the court explicitly recognized the difference between the standards on a motion to dismiss and summary judgment and on this basis alone soundly rejected the same argument now being raised by Twitter.[5] Specifically, the plaintiff there alleged that a statistical analysis found employees under the age of 40 were terminated as part of a reduction-in-force at a rate less than 60% of the rate at which employees over 40 were terminated, which resulted in a standard deviation of just 1.054. The

---

[5]     Incidentally, Morgan, Lewis & Bockius LLP, the firm that represents Defendants in this matter, also represented the defendant in Alfaro-Flecha.

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

court correctly held that, at the motion to dismiss stage, "the data lend credence to [plaintiff's] allegation that older employees were terminated at a higher rate than younger employees." Id. at *5. Zeman's statistical allegations likewise make his allegation that older employees were more likely to be terminated as part of Twitter's layoff plausible.

Finally, Twitter also seeks to diminish the potential relevancy of Zeman's allegations about Musk's public comments against older individuals by categorizing the allegations as stray remarks. However, at this stage, Zeman need not prove his entire case. See Usher v. O'Reilly Automotive, Inc., 2014 WL 12597587, at *5 (C.D. Cal. May 27, 2014) (denying a motion to dismiss where employer argued that certain comments were "stray remarks," explaining that "while the factual allegations may not show that the comments made to Plaintiff were '[directly tied' to Plaintiff's termination, '[comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.") (quoting Horn v. Cusman & Wakefield Western, 72 Cal. App. 4th 798, 809-10 (1999); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990)). As the new owner and CEO of Twitter, Musk set the tone and directive for his subordinates, who were making the hurried decisions on which employees to layoff. See Travers, 737 F.3d at 147. Musk's ageist comments cannot simply be dismissed as "stray remarks" at this stage, but rather his discriminatory animus and the extent to which it influenced the layoff decisions, are fact issues to be developed during discover and considered at summary judgment and trial. Id.

### C.    Zeman Has Stated a Claim for Disparate Impact Claim.

There is no dispute that a plaintiff may pursue a disparate impact claim for age discrimination. Smith v. City of Jackson, 544 U.S. 228, 232 (2005). To establish discrimination through disparate impact, a plaintiff must: "(1) identify a specific practice of the Defendant, (2) show a disparate impact on a protected class, and (3) establish a causal relationship between the practice(s)." Lopez v. Pacific Maritime Association, 2009 WL 10680881, at *5 (C.D. Cal. April 3, 2009) (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002)). However, a plausible pleading of

disparate impact is "not onerous." <u>Moussouris v. Microsoft Corp.</u>, 2016 WL 6037978, at *3, 6 (W.D. Wash. Oct. 14, 2016). "The plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." <u>Id.</u> Importantly, to state a plausible claim, "a plaintiff need not plead each element of a prima facie discrimination case." <u>Freeman v. Cty. of Sacramento Dep't of Human Assistance</u>, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) (citing <u>Swierkiewicz</u>, 534 U.S. at 514-15); <u>see also</u> <u>O'Donnell</u>, 2010 WL 2198203 at *3 ("[A] plaintiff is not required to establish a prima facie case in the complaint. The Supreme Court has explicitly held that the prima facie case in the discrimination context is an evidentiary standard, not a pleading requirement."). As the EEOC recently explained in an amicus brief to the Ninth Circuit, a plaintiff is not required to plead facts showing that a disparate impact actually manifested itself. <u>Liu</u>, Case No. 22-16507, Dkt. 14, at 27. So long as a plaintiff identifies a business practice and shows that it could plausibly cause a disparate impact, that is enough to survive a motion to dismiss. <u>Id.</u> at 28.

> 1.   **The ADEA and NYSHRL protect employees from age discrimination, even if other some employees over the age of forty (40) are not impacted by Twitter's discriminatory practice.**

Twitter also argues Zeman's disparate impact claim fails because the ADEA and NYSHRL do not recognize a disparate impact claim for a "subgroup" of employees age 50 or older. However, this premise is wrong. As the Supreme Court recognized in <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312 (1996), the ADEA does not ban discrimination against employees because they are aged forty (40) or older; it bans discrimination against employees because of age. As such, it is irrelevant that one employee loses out to another within the protected class, so long as he lost out due to his age. <u>Id.</u>

While <u>O'Connor</u> was a disparate treatment case, its teachings remain the same, and are just as applicable to disparate impact claims. To that end, following the Supreme Court's directive from <u>O'Conner</u>, the Third Circuit found in <u>Karlo</u>, 849 F.3d at 70-81:

> subgroup claims are cognizable. Simply put, evidence that a policy disfavors employees older than fifty is probative of the relevant statutory question: whether

the policy creates a disparate impact because of such individuals' age. Requiring the comparison group to include employees in their forties has no "logical connection" to that prohibition.

Other courts have likewise found that subgroups of employees older than age 40 could have cognizable claims of age discrimination. See O'Brien, 900 F.3d at 929-30 (7th Cir. 2018) (recognizing potential disparate impact claims for a group of employees age 55 and older); Cerjanic, 2018 WL 3729063, at *5-6 (denying motion to dismiss disparate impact age discrimination claim for a group of employees age 55 and older); Mahler, 67 Cal.App.5th at 126 (relying on reasoning of Karlo to find that disparate impact age discrimination claims under California state law are not limited to forty-and-other comparisons). Graffam, 848 F. Supp. at 3-5 (holding that a subgroup of employees age 50 and older was a proper statistical analysis to support a disparate impact age discrimination claim); Finch, 865 F.2d at 1129-30 (employee could seek to prove disparate impact age claims for subgroup of employees age 50 and older or age 55 and older). In fact, while not explicitly holding as much, the Ninth Circuit also appears to recognize subgroup disparate impact claims. Fox v. Bonneville Admin., 243 F.3d 547 (9th Cir. 2000) (unreported case) (Plaintiffs' contentions that defendant's policy had a disparate impact on workers over the age of 50 "are sufficient to state a disparate impact claim").

### 2. Zeman may proceed with a disparate impact and disparate treatment claims.

Contrary to Twitter's assertion, Zeman is not limited to alleging either a disparate treatment claim or a disparate impact claim. Rather, complaints alleging discrimination can, and routinely do, proceed under both disparate treatment and disparate impact theories of liability. See, e.g., Ward Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 648 (1989) ("All of respondents' claims were advanced under both the disparate-treatment and disparate-impact theories of Title VII liability"); Moussouris v. Microsoft Corp., 2018 WL 63584701, at *12-18 (W.D. Wash. July 11, 2018) (permitting both claims of disparate treatment and disparate impact to proceed); Paine v. IKEA Holding US, Inc., 2020 WL 374581, at *4 (E.D. Pa. Jan. 23, 2020) (denying motion to dismiss on disparate treatment and disparate impact claims, explaining "in

this case, Paine argues that facially neutral policies were either pretext for intentional discrimination or mechanisms of unintentional discrimination", and "[b]ecause the policies Paine identifies are facially neutral, he has properly alleged in the alternative that the policies are mechanisms of either disparate treatment or disparate impact."). At this early stage, there is no reason that both theories cannot proceed.

Moreover, the cases that Twitter relies on do little to advance its argument. For example, in Barrett v. Forest Lab's, Inc., 39 F. Supp. 3d 407, 438 (S.D.N.Y. 2014), the court **denied** the defendant's motion to dismiss the disparate impact claim and explained that "[n]or is it problematic that the [complaint] identifies one practice in support of both a pattern-or-practice disparate treatment claim and a disparate impact claim." While the theory would need to be refined at trial, it was appropriate for the plaintiffs to plead both theories at the pleading stage. See id. Twitter also relies on Zawacki v. Realogy Corp., 628 F. Supp. 2d 274, 281 (D. Conn. 2009), but in that case, the court held that the EEOC was not sufficiently on notice of a disparate impact claim to satisfy administrative exhaustion and noted in dicta that there was no allegation that a facially neutral policy fell more harshly on the protected group. That is not the case here, as will be explained below. Lastly, Twitter cites Maresco v. Evans Chematics, Div. of W.R. Grace & Co., 964 F.2d 106, 115 (2d Cir. 1992), but that case concerned the summary judgment stage, after discovery on the theories of liability had been completed.

### 3.    Zeman has plausibly alleged a claim for disparate impact age discrimination.

Again, the question at the pleading stage is whether Zeman has plausibly alleged a claim for disparate impact age discrimination. He is not required to prove his case, nor must he even allege sufficient facts showing a prima facie case of disparate impact discrimination. See Swierkiewicz, 534 U.S. at 511. He only needs to identify facts supporting a reasonable inference that the practice he challenges caused a disparate impact. See Frappied v.Affinity Gaming Black Hawk, LLC, 966 F.3d 1038, 1054 (10th Cir. 2020) (acknowledging "plaintiffs do not need to establish a prima facie case [of disparate impact discrimination] in the complaint"); Mandala

v.NTT Data, Inc., 975 F.3d 202, 208-09 (2d Cir. 2020) (same); Wu v. Special Couns., 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015) ("[T]o sustain a disparate impact claim . . . neither prima facie proof nor detailed factual allegations are necessary to withstand a Rule 12(b)(6) motion[.]"). He has met this burden.

To that end, Zeman has identified Twitter's mass layoff and the helter-skelter manner in which the Company decided who would be included in the layoff. (Compl. ¶¶ 18-19, 21.) Moreover, he has alleged statistical data showing that employees age fifty (50) and over were disproportionately impacted by Twitter's layoff practice. (Compl. ¶¶ 24-28.) These allegations alone sufficiently raise a plausible inference of disparate impact discrimination, and the Court's inquiry should end there.

Notwithstanding, Twitter takes issue with both Zeman's allegations of a neutral business practice, and the statistical data he alleges to support its disparate impact on older employees. The Company's arguments lack merit.

### i. Zeman has identified a particular business practice.

With respect to the mass layoffs that Twitter conducted, Twitter faults Plaintiff for not identifying a "particular employment practice" that resulted in the disparity. However, "[t]he Ninth Circuit has concluded that a reduction in force can be a specific employment practice that supports a disparate impact claim." Tsur v. Intel Corp., --- F. Supp. 3d ---, 2022 WL 17985573, at *13 (D. Or. Dec. 29, 2022) (citing Pottenger v. Potlach Corp., 329 F.3d 740, 749 (9th Cir. 2003)).[6] Moreover, it is especially clear that the type of particularity that Twitter demands is

---

[6]       Relying on out-of-circuit cases including Davis v. D.C., 925 F.3d 1240, 1250 (D.C. Cir. 2019), and Gilbreath v. Brookshire Grocery Co., 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019), Twitter asserts that the complaint must go beyond the general concept of a reduction-in-force to identify an actionable employment practice. These cases are at odds with the Ninth Circuit in Pottenger, which stated unequivocally that a "disparate impact claim must challenge a specific business practice," and an "RIF would constitute such a practice." Pottenger, 329 F.3d at 740. Moreover, the cases that Twitter relied on were decided at the summary judgment stage rather than the motion to dismiss stage. In Davis, the D.C. Circuit remanded the case to the district court to determine whether the way in which the employer implemented a layoff led to a disparate impact. See Davis, 925 F.3d at 1244. Likewise, in Gilbreath, it was only after discovery,

unnecessary at the pleadings stage. See Reese v. Source 4 Teachers, 2018 WL 3572987, at *3 (E.D. Pa. Aug. 8, 2018) ("At the pleading stage, however, a plaintiff need only plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII to which the plaintiff belongs.").

Furthermore, Twitter is simply incorrect that Zeman did not plead allegations that go beyond the mere existence of the mass layoff. For example, Zeman alleges that "[t]he decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and ability," and that "the layoff decisions were made quickly by a small group of managers, under close supervision of Musk." (Compl. ¶¶ 19, 21, Dkt. 1.) Twitter argues that these allegations do not suffice, because they address only what factors Twitter did not consider. However, the Ninth Circuit has held that "an employer's facially neutral practice of committing employment decisions to the subjective discretion of supervisory employees [is] a specific employment practice properly subject to a disparate impact analysis." Rose, 902 F.2d at 1424.

Twitter also contends that Zeman's allegations regarding these policies are not sufficiently specific. Twitter, for example, compares this case to Enoh v. Hewlett Packard Enterprise Co., 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018), where the court dismissed a disparate impact claim where the complaint alleged that "HP allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions." The allegations in Zeman's complaint here are more exacting than in Enoh. Again, Plaintiff alleges that Twitter's new owner, Elon Musk, brought in a small group of managers to make layoff selections at a breakneck pace, ignoring coherent layoff criteria such as job performance, qualifications, experience, and abilities. (Compl. ¶¶ 18-21, Dkt. 1.) Twitter also relies on Freyd v. University or Oregon, 990 F.3d 1211, 1224 (9th Cir. 2021), but that case actually supports

---

on summary judgment, that the court had determined that plaintiffs had not identified an employment practice beyond the reduction in force to cut costs.

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT

Zeman's argument. In <u>Freyd</u>, the Ninth Circuit acknowledged that the plaintiff in fact **had** challenged a specific employment practice, where she challenged the university's practice of providing retention raises without analyzing relevant factors like merit and seniority, to determine whether other comparable faculty also deserved raises. <u>Id.</u> Zeman has likewise alleged that Twitter declined to consider relevant factors in making layoff selections like experience and abilities. (Compl. ¶¶ 19-21, Dkt. 1.) Similarly, Twitter's reliance on <u>Stout v. Potter</u>, 276 F.3d 1118, 1121-22 (2d Cir. 2002), is unavailing. <u>Stout</u> has nothing to say about the specificity of pleadings – it was decided at the summary judgment stage. <u>See id.</u> Moreover, the <u>Stout</u> court considered the validity of the statistical analysis and its focus, which as outline below, would be inappropriate at the motion to dismiss stage. In short, contrary to Twitter's assertions, Zeman has adequately pled facts of a specific employment practice.

> ## ii. Zeman's statistical data shows that it is plausible that Twitter's layoff had a disparate impact on older employees.

Once again, Twitter's argument regarding Zeman's statistical allegations misses the mark. To that end, it is unnecessary, and inappropriate for the court to consider the validity of a statistical analysis at the pleading stage of a disparate impact case. <u>See, e.g.</u>, <u>Chaidez v. Ford Motor Company</u>, 937 F.3d 998, 1007 (7th Cir. 2019) (The plaintiff "for [his] part, will need to utilize the discovery process to support [his] allegations with statistical and comparative evidence."); <u>Karpe v. Chao</u>, 416 F. Supp. 3d 1021, 1029 (S.D. Cal. 2019) ("Indeed, Plaintiff 'is not required at the pleading stage to produce statistical evidence proving a disparate impact [because] . . . all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level.'"). Yet, Twitter still seeks to impose a threshold evidentiary standard of 1.96 standard deviations to Zeman's complaint. While this might be or might not be appropriate at summary judgment, after the Parties have engaged in discovery, Zeman cannot be held to this standard now. Rather, he only needs to show that it is plausible that the layoff had a disparate impact on employees age fifty (50) and older. <u>See</u> <u>Liu</u>, Case No. 22-16507, Dkt. 14, at 24-25 (citing <u>Meyer v. Bear Rd. Assocs.</u>, 124 F. App'x. 686, 688

(2d Cir. 2005) (holding plaintiffs plausibly alleged that challenged policy "actually or predictably leads to" disparate impact); <u>Lee v. Hertz Corp.</u>, 330 F.R.D. 557, 561 (N.D. Cal. 2019) (complaint adequately alleged that employer policy would have a disparate impact on Latinos where it did not allege any facts regarding actual Latino applicants denied jobs, but instead alleged that Latinos were convicted of crimes more frequently than White people and that employer disqualified applicants with criminal histories); <u>Nat'l Fair Hous. All. v. Travelers Indem. Co.</u>, 261 F. Supp. 3d 20, 34 (D.D.C. 2017)). Zeman alleged that "60% of employees age fifty (50) or over were laid off on November 4, 2022, while 54% of employees under the age of fifty (50) were laid off." (Compl. ¶27, Dkt. 1.) He also alleged that based on the data currently available to him at through the OWBPA notice, "the odds that this disparity between employees age fifty (50) or over and under age fifty (50) being laid off due only to chance is .0529." (Compl. ¶ 28, Dkt. 1.) These allegations clearly show that older employees were terminated at a higher rate than younger employees. Whether that rate is significant enough to ultimately support a disparate impact claim is a question for another day, after the Parties have a chance to conduct full discovery. For now, what is important is that based on Zeman's allegations, a disparate impact age discrimination claim is plausible.

### D.     Twitter's Argument Regarding Standing Should Be Rejected.

Twitter urges the Court to take a myopic view of this matter, carving up Zeman's allegations into distinct adverse actions (i.e., employees laid off in November 4, 2022, layoff versus the continuing nature of Twitter's layoffs), rather than looking at the big picture. However, Zeman has alleged that all of the Company's actions in laying off employees since Musk acquired Twitter were part and parcel of the same mass layoff. (Compl. ¶¶ 20, 35, Dkt. 1.) Thus, the fact that Zeman was laid off on November 4, 2022, does not prohibit him from alleging that the mass layoff **as a whole** (which continued for a period of time after Musk purchased the company) was discriminatory.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss the Complaint. Zeman has sufficiently pled a claim of age discrimination against older employees following Elon Musk's purchase of Twitter.

Dated:         June 2, 2023                    Respectfully submitted,


                                               JOHN ZEMAN, on behalf of himself
                                               and all others similarly situated,

                                               By their attorneys,


                                                /s/ Shannon Liss-Riordan
                                               Shannon Liss-Riordan, SBN 310719
                                               Bradley Manewith (*pro hac vice* forthcoming)
                                               LICHTEN & LISS-RIORDAN, P.C.
                                               729 Boylston Street, Suite 2000
                                               Boston, MA 02116
                                               (617) 994-5800
                                               Email: sliss@llrlaw.com; bmanewith@llrlaw.com


### CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on June 2, 2023.


                                               /s/ Shannon Liss-Riordan
                                               Shannon Liss-Riordan

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER, INC. AND X CORP.'S
MOTION TO DISMISS THE COMPLAINT