MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Roshni C. Kapoor, Bar No. 310612
roshni.kapoor@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Jonathan D. Lotsoff (pro hac vice forthcoming)
jonathan.lotsoff@morganlewis.com
110 North Wacker Drive
Chicago, IL 60606-1511
Tel:    +1.312.324.1000
Fax:    +1.312.324.1001

Attorneys for Defendants
TWITTER, INC. AND X CORP.

MORGAN, LEWIS & BOCKIUS LLP
Joseph A. Govea, Bar No. 319683
joseph.govea@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Phone: +1.213.612.2500
Fax: +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Carolyn M. Corcoran (pro hac vice forthcoming)
carolyn.corcoran@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Tel:    +1.212.309.6000
Fax:    +1.212.309.6001

Attorneys for Defendants
TWITTER, INC. and X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ZEMAN, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

TWITTER, INC. and X CORP.,

Defendants.

Case No. 3:23-cv-01786-SI

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Date:      July 28, 2023
Time:      10:00 AM
Judge:     Hon. Susan Illston

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

DB2/ 45959296.5

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

  A.   Plaintiff Fails to State a Claim for Intentional Age Discrimination....................... 1

     1.   Plaintiff's Statistics Fall Far Short of Supporting an Inference of
          Intentional Discrimination. ........................................................................... 5

     2.   Plaintiff's Single Anecdote About Musk's Comment on Human
          Longevity Does Not Bolster the Weak Statistics. ......................................... 6

  B.   Plaintiff Fails to State a Disparate Impact Claim. .................................................. 7

     1.   The ADEA and NYSHRL Do Not Recognize Age Subgroup
          Claims. ............................................................................................................ 7

     2.   The Alleged Disparity Is Not Statistically Significant. ................................. 9

     3.   Plaintiff Fails to Identify a Specific, Neutral Employment Practice
          and Instead Simply Re-Labels His Intentional Discrimination
          Claim. ............................................................................................................ 11

  C.   Plaintiff Lacks Standing to Assert Claims Based on "Other" Layoffs or
       Separations. ........................................................................................................... 14

III. CONCLUSION ............................................................................................................ 15

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
    114 F. Supp. 3d 781 (N.D. Cal. 2015) ....................................................................... 8

*Alaska v. Fed. Subsistence Bd.*,
    544 F.3d 1089 (9th Cir. 2008) ................................................................................... 16

*Alfaro-Flecha v. Orc Int'l, Inc.*,
    2016 WL 67722 (S.D.N.Y. Jan. 5, 2016) .................................................................. 11

*Ali v. PayPal, Inc.*,
    2019 WL 11691431 (N.D. Cal. July 26, 2019) ........................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. (2009) ......................................................................................................... 11

*Austin v. Univ. of Oregon*,
    925 F.3d 1133 (2019) ........................................................................................... 11, 12

*Barrett v. Forest Lab'ys, Inc.*,
    39 F. Supp. 3d 407 (S.D.N.Y. 2014) ......................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 8, 10, 15

*City of Sacramento v. Wells Fargo & Co.*,
    2020 WL 6787134 (E.D. Cal. Oct. 9, 2020) .............................................................. 15

*E.D.C. Techs., Inc. v. Seidel*,
    225 F. Supp. 3d 1058 (N.D. Cal. 2016) ..................................................................... 15

*E.E.O.C. v. McDonnell Douglas Corp.*,
    191 F.3d 948 (8th Cir. 1999) ............................................................................... 13, 14

*Edwards v. Oportun, Inc.*,
    193 F. Supp. 3d 1096 (N.D. Cal. 2016) ....................................................................... 7

*Fox v. Bonneville Admin.*,
    243 F.3d 547 (9th Cir. 2000) ..................................................................................... 14

*Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance*,
    2020 WL 2539268 (E.D. Cal. May 19, 2020) ............................................................. 8

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

*Freyd v. Univ. of Or.*,
  990 F.3d 1211 (9th Cir. 2021) .................................................................................. 19

*Gay. Paige v. California*,
  233 F. App'x 646 (9th Cir. 2007) ...................................................................... 10, 14

*Gay v. Waters' & Dairy Lunchmen's Union*,
  694 F.2d 531 (9th Cir. 1982) .................................................................................. 10

*Harrison v. Int'l Ass'n of Machinists & Aerospace Workers*,
  1994 WL 123689 (D. Or. Mar. 30, 1994) ............................................................... 17

*Hines v. Cal. Pub. Utils. Comm'n*,
  2009 WL 250371 (N.D. Cal. Feb. 3, 2009) ............................................................. 16

*Int'l Bhd. of Teamsters v. United States*,
  431 U.S. 324 (1977) .................................................................................................. 9

*Karlo v. Pittsburgh Glass Works, LLC*,
  849 F.3d 61 (3d Cir. 2017) ...................................................................................... 13

*Lee v. Hertz Corp.*,
  330 F.R.D. 557 (N.D. Cal. 2019) .............................................................................. 8

*Liu v. Uber Techs. Inc.*,
  2022 WL 4494149 (N.D. Cal. Sept. 28, 2022) ........................................................ 15

*Logan v. Meta Platforms, Inc.*,
  2023 WL 3668520 (N.D. Cal. May 24, 2023) .......................................................... 16

*Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*,
  964 F.2d 106 (2d Cir. 1992) .................................................................................... 17

*Merrick v. Farmers Ins. Grp.*,
  892 F.2d 1434 (9th Cir. 1990) ................................................................................. 12

*Moussouris v. Microsoft Corp.*,
  2018 WL 3584701 (W.D. Wash. July 11, 2018) ...................................................... 17

*O'Connor v. Consol. Coin Caterers Corp.*,
  517 U.S. 308 (1996) ........................................................................................... 13, 14

*Paine v. IKEA Holding US, Inc.*,
  2020 WL 374581 (E.D. Pa. Jan. 23, 2020) ............................................................. 18

*Pottenger v. Potlach Corp.*,
  329 F.3d 740 (9th Cir. 2003) ................................................................................... 19

iii

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

*Rose v. Wells Fargo & Co.*,
  902 F.2d 1417 (9th Cir. 1990) .......................................................................................... 19

*Rudebusch v. Hughes*,
  313 F.3d 506 (9th Cir. 2012) ............................................................................................ 11

*Rudwall v. Blackrock, Inc.*,
  2011 WL 767965 (N.D. Cal. Feb. 28, 2011) .................................................................... 14

*Sablan v. A.B. Won Pat Int'l Airport Auth. Guam*,
  2010 WL 5148202 (D. Guam Dec. 9, 2010) ....................................................................... 8

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................................ 7

*Schechner v. KPIX-TV*,
  2011 WL 109144 (N.D. Cal. Jan. 13, 2011) ............................................................... 13, 14

*Sheppard v. David Evans & Assocs.*,
  694 F.3d 1045 (9th Cir. 2012) ............................................................................................ 9

*Smith v. Xerox Corp.*,
  196 F.3d 358 (2d Cir. 1999) ............................................................................................. 15

*Stender v. Lucky Stores, Inc.*,
  1991 WL 127073 (N.D. Cal. Apr. 4, 1991) ...................................................................... 15

*Stout v. Potter*,
  276 F.3d 1118 (9th Cir. 2002) .......................................................................................... 16

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) .......................................................................................................... 18

*Travers v. Flight Servs. & Sys., Inc.*,
  737 F.3d 144 (1st Cir. 2013) ............................................................................................ 12

*Trazo v. Nestle USA, Inc.*,
  2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ..................................................................... 8

*Tsur v. Intel Corp.*,
  2022 WL 17985573 (D. Or. Dec. 29, 2022) ..................................................................... 19

*United States v. Trident Seafoods Corp.*,
  60 F.3d 556 (9th Cir. 1995) .............................................................................................. 16

*Usher v. O'Reilly Auto., Inc.*,
  2014 WL 12597587 (C.D. Cal. May 27, 2014) ................................................................ 12

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989) .................................................................................................. 18

*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988) .................................................................................................. 10

*Weisbuch v. County of Los Angeles*,
    119 F.3d 778 (9th Cir. 1997) ..................................................................................... 15

*Winters v. Fellowes, Inc.*,
    2005 WL 8177351 (N.D. Ill. Oct. 11, 2005) .......................................................... 9, 10

*Zawacki v. Realogy Corp.*,
    628 F. Supp. 2d 274 (D. Conn. 2009) ....................................................................... 17

**Statutes**

Age Discrimination in Employment Act (ADEA) ...................................................... 6, 12, 13, 14

New York State Human Rights Law (NYSHRL) ................................................................. 1, 7, 8

**Other Authorities**

Ninth Circuit Rule 36-3 ............................................................................................................. 14

Federal Rule of Civil Procedure 8 ............................................................................................. 11

Federal Rule of Procedure 12 .................................................................................................... 15

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

1  **I.     INTRODUCTION**

2        Plaintiff's Opposition does not explain away the defects in his age-discrimination

3  Complaint.  He fails to state a disparate treatment claim because his Complaint is devoid of the

4  basic facts needed to plausibly suggest that Twitter selected him and other employees age 50 or

5  older for the RIF because of their age.  His statistics are insufficient to draw an inference of

6  intentional discrimination under Ninth Circuit law, and the single comment from Musk about

7  human longevity does nothing to bolster Plaintiff's weak statistics, including because the comment

8  has no nexus to Twitter or the RIF.

9        Plaintiff's disparate impact claim fails as well.  As a threshold matter, the claim fails as a

10  matter of law because age subgroup claims are not cognizable under the ADEA or the NYSHRL.

11  Even if age subgroup claims were legally viable, however, Plaintiff has pled himself out of court

12  by alleging a disparity that is not statistically significant.  His disparate impact claim also fails

13  because it targets only intentional age discrimination (i.e., the purportedly age-driven RIF

14  selections allegedly made at Musk's behest) rather than any neutral employment practice.  In

15  addition, Plaintiff does not identify a specific RIF practice to challenge with a disparate impact

16  claim because he purports to challenge a series of unidentified layoffs (on November 4 and beyond)

17  that are not defined by any selection process, criteria, or plan.  And to the extent he predicates his

18  claim on conduct beyond the November 4 RIF in which Twitter selected him for layoff, he lacks

19  standing to assert the claim.

20        Tellingly, although Plaintiff models his age-discrimination Complaint on the failed *Strifling*

21  sex-discrimination complaint, he has no response to Judge Tigar's recent order dismissing that

22  complaint.  The Court should dismiss Plaintiff's ADEA and NYSHRL claims.

23  **II.    ARGUMENT**

24        **A.     Plaintiff Fails to State a Claim for Intentional Age Discrimination.**

25        Like the failed sex-discrimination complaint in *Strifling*, the Complaint here is "devoid of

26  basic information" about the nature and conditions of his employment and termination that might

27

28

Morgan, Lewis &
Bockius UK LLP
Attorneys at Law
San Francisco

DB2/ 45959296.5

1

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
Case No. 3:23-cv-01786-SI

support a plausible age-discrimination claim. *Strifling* Order[1] at 7; *see also* Mot. at 6. Plaintiff suggests the Court can draw an inference of intent based on a putative pattern or practice of age discrimination at Twitter. But this inference is completely unsupported because the Complaint "do[es] not allege that discrimination was widespread throughout Twitter," but rather alleges the RIF was a "discrete act[]," which is "insufficient" to plausibly plead that it was part of Twitter's "routine and regular" practice. *Strifling* Order at 9:4-13; *see also* Mot. at 8 (collecting authorities). And the purported age animus underlying Musk's comment about human longevity is nothing but an "[i]solated remark[], unrelated to the discriminatory employment decision," which is "insufficient to establish discriminatory intent." *Strifling* Order at 10:14-15. Tellingly, Plaintiff has no response to *Strifling*, and he has no meaningful response to Twitter's other points and authorities establishing that he fails to state a disparate treatment claim.

In his Complaint, Plaintiff says nothing about his role, qualifications, job performance, or abilities. He also does not "describe [his] position[] prior to the RIF," "allege that [he] w[as] satisfactorily performing in th[e] position[]," or "identify the 'small group of managers'" who selected him for the RIF. *Strifling* Order at 7-8. Nor does he allege that Twitter employed younger employees who performed similar jobs as Plaintiff, that Twitter did not select those younger employees for the RIF, or that any decisionmaker knew the ages of employees when making RIF selections. *See generally* Compl. ¶¶ 18-28.

Faced with those shortcomings, Plaintiff repeatedly attempts to dodge his pleading burden by noting that he is not required to "plead every element of disparate treatment" at the pleading stage. Opp. at 6:5-6, 7:3-4, 8:24-25, 10:7, 11:3-4, 11:8, 13:23-28.[2] While it is true that a complaint

---

[1] "*Strifling* Order" throughout refers to Exhibit 1 to Twitter's Request for Judicial Notice in Support of Its Motion to Dismiss ("RJN") at ECF No. 20.

[2] Plaintiff also argues, without any authority, that additional factual details are "[un]necessary, particularly in a class and collective action complaint." Opp. at 8:2-3. That is nonsense. No authority suggests that alleging a class or collective action somehow reduces a plaintiff's pleading burden. Alleging a putative class or collective claim carries additional responsibilities, not fewer. Indeed, a complaint's allegations concerning the class must themselves meet the plausibility standard. *See, e.g.*, *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016) (holding class allegations "must be at least plausible" or else may be stricken); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

DB2/ 45959296.5

1  need not prove the plaintiff's prima facie case, the elements of a prima facie case are undoubtedly

2  the lens through which a court analyzes the sufficiency of a claim under *Twombly*'s "plausibility"

3  standard.[3]  Plaintiff's own authorities prove the point.  *See Freeman v. Cnty. of Sacramento Dep't*

4  *of Hum. Assistance,* 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) ("[C]ourts look to the prima

5  facie elements [of a claim] to analyze a motion to dismiss" under the plausibility standard); *Lee v.*

6  *Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019) (although plaintiffs "need not prove the prima

7  facie elements to survive a motion to dismiss," they "must plead the general elements to make a

8  claim facially plausible"); *Sablan v. A.B. Won Pat Int'l Airport Auth. Guam*, 2010 WL 5148202, at

9  *4 (D. Guam Dec. 9, 2010) (concluding "district courts in the Ninth Circuit" take the position that

10 the "elements of a prima facie case . . . are . . . relevant to the court's analysis of the sufficiency of

11 the complaint").[4]

12         According to Plaintiff, he need not allege that he performed his job satisfactorily before the

13 RIF because this fact is purportedly "implie[d]" by the fact that Twitter did not terminate him for

14 cause.  Opp. at 7:12, n.2.  Judge Tigar rejected this exact argument in *Strifling* because a plaintiff

15 bears the burden of "establish[ing] a plausible link" between the employment action and the

16 plaintiff's age, and "the Ninth Circuit . . . considers if the plaintiff has sufficiently alleged their job

17 performance was satisfactory" even in a RIF case.  *Strifling* Order at 7 n.6 (citing *Diaz v. Eagle*

18 *Produce Ltd. P'ship*, 521 F.3d 1201, 1207-08 (9th Cir. 2008) (holding a triable issue existed as to

19

20 _____

action cannot be maintained on the facts alleged, a defendant may move to strike class allegations
21 prior to discovery"); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *11 (N.D. Cal. Aug. 9,
2013) (holding that for "class action allegations to survive [a motion to strike], the complaint
22 must make a prima facie showing Rule 23 can be satisfied").

23 [3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

24 [4] *See also, e.g.*, *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 793, 796–97 (N.D. Cal. 2015)
(stating complaint must "contain either direct or inferential allegations respecting all the material
25 elements necessary to sustain recovery" and that courts "look to those [prima facie] elements to
analyze a motion to dismiss" to decide plausibility); *Ali v. PayPal, Inc.*, 2019 WL 11691431, at
26 *6 (N.D. Cal. July 26, 2019), *aff'd*, 804 F. App'x 686 (9th Cir. 2020) ("[T]he elements of a prima
facie case are helpful in determining whether a plaintiff has alleged sufficient facts to state a
27 plausible claim for relief.").

28

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

DB2/ 45959296.5

1    whether the plaintiff who was involved in RIF had been "performing his job satisfactorily")).

2    Plaintiff has no response to *Strifling*.

3         Plaintiff tries to liken his allegations to the complaint in *Sheppard*.  Opp. at 6:23-7:23 (citing

4    *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 (9th Cir. 2012)).  But the plaintiff in

5    *Sheppard* alleged facts suggesting that he received "consistently good performance reviews" and

6    that five younger comparators kept their jobs.  *Sheppard*, 694 F.3d at 1050.  The Complaint here

7    alleges no such facts.

8         Plaintiff also fails in his attempt to support an inference of intent from a purported "pattern

9    or practice" of age discrimination.  According to Plaintiff, Twitter's layoffs "were made quickly"

10   "just days" after Musk's acquisition, under "extremely hurried circumstances," by a "small group

11   of managers" who "did not have much, if any, knowledge about Twitter's operations."  Mot. at 7-

12   8 (citing Compl. ¶¶ 18-21).  As Twitter explained in its opening brief, those allegations demonstrate

13   that the RIF was anything but the "standing operating practice" at Twitter.  *See Int'l Bhd. of*

14   *Teamsters v. United States*, 431 U.S. 324, 336 (1977); *Strifling* Order at 9:4-13; *see also* Mot. at 7.

15        For his part, Plaintiff cites the *Winters* ruling from the Northern District of Illinois in which

16   the plaintiff pleaded a pattern or practice based on a "series of layoffs" that constituted a single

17   termination plan.  Opp. at 9:2 (citing *Winters v. Fellowes, Inc.*, 2005 WL 8177351, at *2 (N.D. Ill.

18   Oct. 11, 2005)).  Plaintiff's reliance on *Winters* is misplaced.  As an initial matter, the *Winters*

19   plaintiff stated a pattern-or-practice claim by alleging details about a series of 50-person layoffs in

20   certain jobs over several weeks by which older employees were replaced by younger ones.  *Winters*,

21   2005 WL 8177351, at *1; Request for Judicial Notice in Support of Defendants' Reply, Ex. A

22   (*Winters* Compl. ¶¶ 21-23).  Here, although Plaintiff characterizes the RIF as a series of layoffs

23   where "older employees were laid off at a higher rate . . . through the November 4, 2022 reduction-

24   in-force ***and other layoffs*** that occurred shortly after that date," Opp. at 8:16-9:2 (emphasis added),

25   his Complaint alleges nothing meaningful about any "other" layoffs.  Indeed, his Complaint says

26   nothing about their nature, scope, purpose, structure, locations, decisionmakers, or affected

27   employees.  It does not even allege that the "other" layoffs affected older employees at higher rates

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

4

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

28

1  than younger employees.  *See* Compl. ¶¶ 25-27, 30-31 (alleging data about older employees "laid

2  off on November 4, 2022" and "the initial layoffs that day"); *see also infra* § II.C.  Plaintiff's vague

3  reference to "other layoffs" therefore does nothing to support an inference that those unidentified

4  "other" layoffs and the November 4 RIF somehow constitute a single plan.  To make matters worse

5  for Plaintiff, if the other layoffs were part of the same plan as the November 4 RIF, it renders his

6  statistics irrelevant because they relate only to the November 4 RIF.

7          What is more, the Northern District of Illinois decided *Winters* in 2005 under *Conley*'s "no

8  set of facts" pleading standard that the Supreme Court expressly retired two years later in *Twombly*.

9  *See Twombly*, 550 U.S. at 563 (holding *Conley*'s "famous observation" that a complaint should not

10  be dismissed unless there is "no set of facts" plaintiff could prove to entitle him to relief has "earned

11  its retirement"); *Winters*, 2005 WL 8177351, at *2 (citing *Conley*'s "no set of facts" test).

### 1.    Plaintiff's Statistics Fall Far Short of Supporting an Inference of Intentional Discrimination.

14          Plaintiff's statistics, which report an alleged disparity of 1.936 standard deviations from the

15  normal demographic distribution among workers aged 50 and over, undermine rather than support

16  his claim because even a disparity that measures 2.46 standard deviations falls well short of an

17  inference of intentional discrimination.  *Gay v. Waters' & Dairy Lunchmen's Union*, 694 F.2d 531,

18  551-52 (9th Cir. 1982) (statistics alone must be "considerably more stark" than 2.46 standard

19  deviations to support an inference of intentional discrimination).  Ignoring the Ninth Circuit's

20  guidance in *Gay*, Plaintiff asserts that the Supreme Court has not set a minimum threshold for a

21  prima facie case of discrimination.  Opp. at 9:8-11 (citing *Watson v. Fort Worth Bank & Tr.*, 487

22  U.S. 977, 998 n.3 (1988)).  But *Watson* involved a disparate impact claim, not a claim for intentional

23  discrimination, and while *Watson* did not adopt a specific quantitative test, it explained that the

24  Supreme Court has "consistently stressed" that statistical disparities must be "sufficiently

25  substantial that they raise such an inference of causation."  *Id.* at 995.  And, after *Watson*, the Ninth

26  Circuit has twice reaffirmed its holding in *Gay*.  *Paige v. California*, 233 F. App'x 646, 648 (9th

27  Cir. 2007) (affirming *Gay* for the holding that a "higher threshold" than 1.96 standard deviations is

28

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

5

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

"require[ed]" for a claim of "**intentional** discrimination" (emphasis in original)); *Rudebusch v. Hughes*, 313 F.3d 506, 515 (9th Cir. 2012) (affirming *Gay*'s holding that "rejected the proposition that standard deviations of 1.3 and 2.46 were sufficiently representative, at least on their own, to make an inference of discrimination").[5]

Diverting attention away from controlling Ninth Circuit precedent, Plaintiff directs the Court to a single district court case in New York in which an alleged standard deviation of 1.054 survived a motion to dismiss. Opp. at 9:19-10:2 (citing *Alfaro-Flecha v. Orc Int'l, Inc.*, 2016 WL 67722, at *4-5 (S.D.N.Y. Jan. 5, 2016)). What Plaintiff fails to mention, however, is that *Alfaro-Flecha* applies the Second Circuit's pleading standard for Title VII cases that the Ninth Circuit has expressly rejected. *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136-37 (2019) ("declin[ing] to embrace" the Second Circuit's conclusion that a "Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent," because that conclusion is "contrary to Supreme Court precedent"). Moreover, the plaintiff in *Alfaro-Flecha* alleged statistics in combination with anecdotes that included a pre-RIF "warn[ing]" by the head of human resources that "[i]f we do not get the number of employees we are hoping would agree to the early retirement plan, then they could face possible termination" *Alfaro-Flecha*, 2016 WL 67722, at *5-6. As explained below, Plaintiff here alleges nothing comparable.

### 2.    Plaintiff's Single Anecdote About Musk's Comment on Human Longevity Does Not Bolster the Weak Statistics.

Plaintiff's only anecdote is a comment that Musk made during an interview, when he was 51 years old and months away from acquiring Twitter, about how society should not "try to have people live for a really long time" because then "society wouldn't advance." Compl. ¶ 23; ECF No. 20 (RJN), Ex. 3 at p. 1. That comment is wholly disconnected from operations at Twitter, the RIF and its decisionmakers, or even employment practices generally. Such "[i]solated remarks,

---

[5] Plaintiff attempts to explain away these Ninth Circuit precedents by noting that the cases were decided after discovery. Opp. at 9:12-18. Plaintiff's observation does not help him. He must plead a plausible claim for relief, which courts analyze with reference to the elements of that claim. Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. at 662, 678-79 (2009).

MORGAN, LEWIS & BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

6

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

1   unrelated to the discriminatory employment decision, are generally insufficient to establish

2   discriminatory intent." *Strifling* Order at 10:14-15; *see also Austin*, 925 F.3d at 1138 (affirming

3   dismissal of disparate treatment claim because alleged university speech and protests did not "make

4   any plausible link connecting these events and the University's disciplinary actions to the fact that

5   the student athletes are male"); Mot. at 9:14-10:28 (collecting authorities).

6        Plaintiff asserts that three cases—*Usher*, *Merrick*, and *Travers*—support drawing an

7   inference of intentional age discrimination from Musk's comment. *See* Opp. at 7:19-22, 10:7-20.

8   Plaintiff is wrong.  In *Usher*, the plaintiff alleged his direct supervisors and managers "repeatedly"

9   made disparaging age-related comments to him, that age harassment was an "everyday occurrence,"

10  and that a manager told him that leadership intentionally changed his job schedule "in hopes that

11  [he] would quit voluntarily due to his age." *Usher v. O'Reilly Auto., Inc.*, 2014 WL 12597587, at

12  *1 (C.D. Cal. May 27, 2014)*.  Similarly, in *Merrick*, the executive who decided promotions told

13  the plaintiff that he selected another candidate over plaintiff in part because the other candidate was

14  a "young man." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990).  Finally,

15  Plaintiff argues that Musk "set the tone and directive for his subordinates" and then cites *Travers*,

16  a case where the CEO made "express directives" to the plaintiff's supervisor to "get rid of

17  [plaintiff]" and "talk [plaintiff] into dropping the lawsuit." *Travers v. Flight Servs. & Sys., Inc.*,

18  737 F.3d 144, 145, 147 (1st Cir. 2013).  But this comparison to *Travers* is gratuitous argument

19  without any reference to the Complaint, which contains no non-conclusory allegation that suggests

20  Musk directed his subordinates or even "set the tone" for the RIF selections, let alone gave age-

21  discriminatory directives.

22       In short, Plaintiff's Complaint fails to plausibly allege that Twitter intentionally

23  discriminated against him or anyone else on the basis of age.

24      **B.**    **<u>Plaintiff Fails to State a Disparate Impact Claim.</u>**

25          **1.**    **The ADEA and NYSHRL Do Not Recognize Age Subgroup Claims.**

26       A disparate impact claim challenges a facially neutral employment practice that has a

27  disparate impact on certain employees "because of their membership in a protected group."

28

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

7

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

*E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 950 (8th Cir. 1999) (quoting *Watson*, 487 U.S. at 994).  The "protected group" in the ADEA "consists of 'individuals who are at least 40 years of age.'"  *Schechner v. KPIX-TV*, 2011 WL 109144, at *4 (N.D. Cal. Jan. 13, 2011).  The ADEA does not recognize a disparate impact claim like Plaintiff's, which alleges a disparity only among the subgroup of employees aged 50 and over, not among the entire protected group.  Courts have good reason to reject subgroup claims.  If subgroup claims were cognizable, an individual could assert a disparate impact claim "despite the fact that statistical evidence indicated the employer's RIF had a very favorable impact upon the entire protected group of employees aged 40 and older," a result that Congress could not have "intended." *McDonnell Douglas*, 191 F.3d at 951. That perverse result would require an employer to undertake the "impossible" task of achieving "statistical parity among the virtually infinite number of age groups," causing them to "take age into account in making layoff[s]" in violation of the ADEA.  *Id.*

The majority of Courts of Appeal, as well as district courts within the Ninth Circuit, agree that the ADEA does not recognize disparate impact liability predicated on a subgroup of the protected class.  Mot. at 12:7-13:11 (collecting authorities from the Eighth, Sixth, and Second Circuits, as well as the Northern District of California and District of Arizona).  Likewise, following the Second Circuit's ADEA analysis, New York courts agree that the NYSHRL, which protects workers aged 18 and older, does not recognize subgroup disparate impact claims.  Mot. at 13:12-17 (collecting authorities).

Plaintiff ignores these authorities.  He does not discuss his claim under NYSHRL, apparently conceding that it fails as a matter of law.  *See* Opp. at 11:15-12:17.  For his ADEA claim, Plaintiff overlooks the majority of appellate courts and district courts in this Circuit and embraces the minority view of the Third and Seventh Circuits.  *Id.*  The Third Circuit's leading analysis on subgroups in ADEA disparate impact claims rests on the Supreme Court's holding in *O'Connor*, which recognized a ***disparate treatment*** claim by an individual who was disfavored over another within the protected class of age 40 and over.  Opp. at 11:24-12:3 (citing *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 71 (3d Cir. 2017), and *O'Connor v. Consol. Coin Caterers Corp.*, 517

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

8

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

U.S. 308 (1996)).  As the Eighth Circuit correctly recognized, however, *O'Connor*'s holding is limited to cases with discriminatory animus and does not "have any relevance to our analysis" for disparate impact.  *McDonnell Douglas*, 191 F.3d at 951; *see also*, *e.g.*, *Schechner*, 2011 WL 109144, at *5 (holding that discussion of *O'Connor* and the "non-dichotomous nature of age . . . skirt[s] a fundamental distinction between disparate impact and disparate treatment claims"); *Rudwall v. Blackrock, Inc.*, 2011 WL 767965, at *11 (N.D. Cal. Feb. 28, 2011) (recognizing that disparate impact "focus" on the entire "protected group" "[d]oes not leave older workers unprotected" because discrimination within the protected group can be redressed through disparate treatment claims).

To be sure, Plaintiff is not only silent about the Northern District of California cases that have rejected subgroup claims, but he also lacks any authority from within this Circuit that recognizes an ADEA subgroup disparate impact claim.  While Plaintiff cites *Fox,* an "unpublished disposition" from the Ninth Circuit in 2000, the case does not assist him even if it had precedential value, which it does not, because *Fox* did not address the subgroup issue.  Opp. at 12:14; *Fox v. Bonneville Admin.*, 243 F.3d 547 (9th Cir. 2000); Ninth Circuit Rule 36-3 (stating "[u]npublished dispositions and orders of this Court issued before January 1, 2007 **may not be cited**" except for limited circumstances not present here (emphasis added)).

### 2.    The Alleged Disparity Is Not Statistically Significant.

Even if Plaintiff's subgroup claim were legally cognizable, his claim would still fail because he pleads a disparity that is not statistically significant.  As a result, he has pled himself out of court.

A disparate impact claim requires "statistical evidence of a kind and degree sufficient to show" that the challenged employment practice caused the older employees' layoffs because of their membership in a protected group.  *Paige*, 233 F. App'x at 648 (quoting *Watson*, 487 U.S. at 994-95).  The Ninth Circuit has "relied upon the 1.96 standard deviation standard" when assessing statistical evidence.  *Id.* (recognizing 1.96 standard deviations as the level for "statistical significance" that "conforms with accepted conventions in the social science field and with federal

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

9

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

government's internal standards").[6]  Plaintiff, however, alleges that the layoffs of employees aged 50 and over caused a disparity measured at only 1.936 standard deviations from the normal distribution.  Compl. ¶ 28.  Since Plaintiff has alleged facts "which establish he cannot prevail on his claim," he has "plead[ed] himself out of court."  *E.D.C. Techs., Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1063 (N.D. Cal. 2016) (Illston, J.).

Plaintiff does not dispute that the Ninth Circuit recognizes 1.96 standard deviations as the relevant statistical threshold for a disparate impact claim.  Rather, he contends that he "is not required at the pleading stage to produce statistical evidence."  Opp. at 16:19-22; *see also* Opp. at 17:1-8 (arguing adequate disparity allegations).  Whether that is true or not, it misses the point.  Plaintiff **did** allege statistics, and he cannot disavow his allegations now.  On a motion to dismiss, "[w]hether the case can be dismissed on the pleadings depends on what the pleadings say."  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 & n.1 (9th Cir. 1997).  Plaintiff's allegation of a disparity that measures 1.936 standard deviations "establish[es] facts compelling a decision one way," and that is as "good as if depositions and other expensively obtained evidence on summary judgment establish[] the identical facts."  *Id.* at 783 n.1; *see also Twombly*, 550 U.S. at 556 (allegations are "taken as true" for purposes of Federal Rule of Procedure 12).

Finally, Plaintiff relies heavily on the EEOC's amicus brief in support of *Liu*, a disparate impact case brought by Plaintiff's counsel here that Judge Chhabria dismissed four times.  According to the amicus brief, a plaintiff only needs to allege facts that suggest a practice "**could** plausibly cause a disparate impact."  Opp. at 3:10-12, 11:10-14, 16:26-28; *Liu v. Uber Techs. Inc.*, 2022 WL 4494149, at *2 (N.D. Cal. Sept. 28, 2022).  This assertion fails because it plainly misstates

---

[6] *See also*, *e.g.*, *Stender v. Lucky Stores, Inc.*, 1991 WL 127073, at *3-4 (N.D. Cal. Apr. 4, 1991) (granting summary judgment on disparate impact claim with respect to job positions that did not reveal statistically significant disparity because "inference of discrimination is permissible only if the disparity is statistically significant"); *City of Sacramento v. Wells Fargo & Co.*, 2020 WL 6787134, at *3 (E.D. Cal. Oct. 9, 2020) ("To prove [disparate impact] claim, plaintiffs must show a statistically significant disparate impact."); *Smith v. Xerox Corp.*, 196 F.3d 358, 365-66 (2d Cir. 1999) (looking to "whether the plaintiff can show a statistically significant disparity of two standard deviations," which means "there is only about a 5% probability the variance is due to chance," the level "[c]ourts generally consider" to be "of significance sufficient to warrant an inference of discrimination" in disparate impact).

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

10

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-01786-SI

the applicable "plausibility" standard.  Indeed, it is little more than a veiled attempt to resurrect the *Conley* test that has not been the law for over 15 years.  Tellingly, Plaintiff cannot cite a single authority that reduces *Twombly*'s "plausibility" standard to what "could be" plausible rather than what is actually plausible based on the factual allegations in a complaint.  Lest there be any doubt, the EEOC's advocacy position in an amicus brief on an issue related to the federal pleading standard is not an authority.  *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) (agency position entitled to "no deference" where is it not the result of "any legally-binding regulation or in any official agency interpretation of the regulation"); *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position.").

### 3. Plaintiff Fails to Identify a Specific, Neutral Employment Practice and Instead Simply Re-Labels His Intentional Discrimination Claim.

The disparate impact claim also fails because the Complaint does not identify a *specific*, facially *neutral* employment practice.  *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002).

First, Plaintiff attempts to circumvent the pleading requirements of his disparate impact claim by re-labeling his intentional discrimination allegations as a "disparate impact" claim.  Indeed, the Complaint targets only intentional discrimination, not a facially neutral practice, because the Complaint's theory is that Musk somehow directed or influenced decisionmakers to intentionally select older employees for termination in the RIF.  Compl. ¶ 22; *see also* Mot. at 13:21-14:19.  In response, Plaintiff asserts that he may pursue both a disparate treatment claim and a disparate impact claim in the alternative.  Opp. at 12:20-21.  While this is correct in the abstract, the "right to plead alternatively . . . does not . . . loosen the requirement to plead 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Logan v. Meta Platforms, Inc.*, 2023 WL 3668520, at *5 (N.D. Cal. May 24, 2023).  A plaintiff cannot maintain a disparate impact claim that "amount[s] to a claim that certain employees are *intentionally* treated differently from others because of" their protected status, when the complaint "has not identified any particular facially neutral policy" to challenge.  *Hines v. Cal. Pub. Utils. Comm'n*, 2009 WL

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

11

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

250371, at *7 (N.D. Cal. Feb. 3, 2009) (dismissing disparate impact claim where "the gist" of the complaint was that the employer's "promotional policies give supervisors too much discretion to impose their personal preferences on the selection process, which results in the promotion of unqualified individuals and leads to under-representation of African–American employees"), *aff'd*, 467 F. App'x 639 (9th Cir. 2012); *see also Harrison v. Int'l Ass'n of Machinists & Aerospace Workers*, 1994 WL 123689, at *8 (D. Or. Mar. 30, 1994) (granting judgment on disparate impact claim where plaintiff relied upon practices that "if proven, may support her claim for disparate treatment, but do not form the basis for a claim for disparate impact"); Mot. at 13:21-14:19.

In response to Twitter's authorities, Plaintiff observes that *Maresco* is a summary judgment case but he ignores its holding that a plaintiff cannot pursue a disparate impact claim when the complaint targets only intentional conduct.  *Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992).  Similarly, Plaintiff asserts that the holding in *Zawacki* was mere "dicta," Opp. at 13:15, when, in fact, the court expressly stated that the failure to identify a neutral practice was an independent ground for dismissal.  *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 281 (D. Conn. 2009) ("In addition, even assuming that the Plaintiff had brought disparate impact claims in her administrative charges, the Court believes that, based on the factual allegations in the second amended complaint, the disparate impact claims could not survive a motion to dismiss.").  Plaintiff's response to *Barrett* fares no better.  Plaintiff is correct that the court in *Barrett* permitted the plaintiff to proceed on one disparate impact theory where the complaint identified a neutral policy (in addition to a disparate treatment claim), Opp. at 13:9, but Plaintiff does not address *Barrett*'s conclusion that plaintiffs' other theories related to "manager-supplied performance assessments" could not proceed on a disparate impact basis because the complaint alleged those assessments were the product of intentional discrimination.  *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 439 (S.D.N.Y. 2014).[7]

---

[7] Plaintiff's own cases further demonstrate that he has not identified a neutral practice.  *See* Opp. 12:22-28.  In *Moussouris v. Microsoft Corp.*, 2018 WL 3584701, at *1 (W.D. Wash. July 11, 2018), the plaintiffs challenged the facially neutral "Calibration Process . . . where managers compare[d] and standardize[d] employees' performance ratings across a cohort of similarly-leveled colleagues" by assigning numerical "performance ratings" to employees based on "work results," "how the

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5

12

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

Second, Plaintiff fails to challenge a specific employment practice that caused the purported disparity. The Complaint vaguely alludes to multiple layoffs without providing any factual detail. Compl. ¶¶ 19, 21, 26 (referencing "initial layoffs," that "some were laid off earlier" than or "after" the November 4 RIF). Similarly, Plaintiff purports to represent all employees "who have lost their jobs" after Musk's acquisition, encompassing the period from "late October 2022" through an indefinite future date. Compl. ¶¶ 7, 8, 18, 35. Likewise, Plaintiff's Opposition references the "November 4, 2022 reduction-in-force *and other layoffs* that occurred shortly after" and tries to categorize an unidentified range of "actions in laying off employees since Musk acquired Twitter [as] part and parcel of the same layoff." Opp. at 9:1-2, 17:21-23 (emphasis added). But Plaintiff does not offer even the most basic details about any RIFs outside of November 4. And he does not allege the "other" RIFs caused a disparity, because his bottom-line statistics are limited to the November 4 layoffs, not "other" ones. Compl. ¶¶ 25-28. Thus, his attempt to treat an unidentified assemblage of RIFs as a unified "whole" is self-defeating because his alleged statistics do not map onto the various layoffs as a whole. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015) (requiring plaintiff to "point to a defendant's policy or policies causing that [statistical] disparity").

Even as to the November 4 RIF, the Complaint does nothing but assert that an unidentified "small group of managers" made "initial layoff decisions" under "extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and abilities." Compl. ¶¶ 19, 21. Setting aside the ambiguity about whether "initial layoffs" equates to those "laid off on November 4," these allegations only allege (in a conclusory way) the absence of several factors in the RIF selection; they do not allege what practice, criteria or process Twitter *did employ*—whether "subjective" or otherwise—that caused the alleged disparities. As a result, the

employee accomplished those results," and the employee's "proven capability." In *Wards Cove*, the plaintiffs targeted a "variety" of "hiring/promotion practices—e.g., nepotism, a rehire preference, a lack of objective hiring criteria, separate hiring channels, a practice of not promoting from within." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 674 (1989). In *Paine*, too, the plaintiff identified facially neutral policies (i.e., a "Potential Policy" and a "Relocation Policy") as pretext for intentional discrimination. *Paine v. IKEA Holding US, Inc.*, 2020 WL 374581, at *4 (E.D. Pa. Jan. 23, 2020).

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

DB2/ 45959296.5

1    Complaint's allegations are insufficient to state a disparate impact claim even if it were limited to

2    the November 4 RIF.  *See* Mot. at 15:6-16:11 (collecting authorities).

3          Plaintiff's authorities do not change the conclusion because his generic allegations of an

4    employment practice defined only by the absence of a few criteria pale in comparison to the cases

5    he cites.  *Compare* Compl. ¶¶ 19, 21, *with Tsur v. Intel Corp*., 2022 WL 17985573, at *13 (D. Or.

6    Dec. 29, 2022) (targeting RIF's "layoff criteria" that included employees' "SSL [Stock Share

7    Level] awards," which were "not performance-based and were directed more to junior grade

8    employees"); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (identifying

9    "outwardly neutral practice" of selecting employees for RIF through "subjective determination by

10   department heads," considering "performance and longevity" but "otherwise discretionary and

11   subjective"); *Pottenger v. Potlach Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (targeted an "objective,

12   four-step evaluation process used to identify employees to be terminated"); *Freyd v. Univ. of Or.*,

13   990 F.3d 1211, 1215, 1224 (9th Cir. 2021) (holding plaintiff "does not challenge the general

14   practice of awarding retention bonuses" but specifically the "practice of awarding retention raises"

15   for predominantly male professors who received competing offers "without also increasing the

16   salaries of other professors of comparable merit and seniority").

17   **C.     Plaintiff Lacks Standing to Assert Claims Based on "Other" Layoffs or
              Separations.**

18

19         Plaintiff lacks standing to assert an age-discrimination claim arising after the November 4

20   RIF because he was not subject to those decisions.  *Strifling* Order at 12, n.9 (declining to consider

21   disparate impact claim relating to policy that was effectuated after plaintiff was laid off); *Pottenger*,

22   329 F.3d at 749 (affirming summary judgment because plaintiff was not subject to the RIF he

23   challenged).  Plaintiff asserts that the Court should "look[] at the big picture" to view Twitter's

24   "actions in laying off employees since Musk acquired Twitter [as] part and parcel of the same

25   layoff." Opp. at 17:21-25.  But this is pure argument.  As explained above, the Complaint contains

26   no factual allegations to plausibly suggest that multiple unidentified layoffs were part and parcel of

27   "the same layoff," *see supra* pp. 4, 13, and the Complaint's factual allegations and alleged statistical

28   disparities relate exclusively to the November 4 RIF.  *See* Compl. ¶¶ 19, 21, 25-31.  Because the

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY BRIEF ISO
MOTION TO DISMISS
CASE NO. 3:23-CV-01786-SI

DB2/ 45959296.5

1   Complaint contains no facts that suggest the November 4 RIF is tied to any subsequent layoffs or

2   separations, Plaintiff lacks standing to state claims based on them.

3   **III.     CONCLUSION**

4          For the reasons discussed above, the Court should grant Twitter's Motion to Dismiss the

5   Complaint in its entirety.

6

7   Dated: June 16, 2023                          MORGAN, LEWIS & BOCKIUS LLP

8

9                                                 By  */s/ Brian Berry*
                                                  Eric Meckley
10                                                Brian D. Berry
                                                  Roshni C. Kapoor
11                                                Jonathan D. Lotsoff
                                                  Joseph A. Govea
12                                                Carolyn M. Corcoran

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45959296.5