UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ZEMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TWITTER, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-01786-SI<br><br>**ORDER RE MOTION TO DISMISS AND TO STRIKE CLAIMS**<br><br>Re: Dkt. No. 19 |

Before the Court is defendant's motion to dismiss the complaint and to strike class allegations, argued on August 18, 2023. Dkt. No. 19. For the reasons described below, defendant's motion is **GRANTED IN PART** and **DENIED IN PART.**[1]

## BACKGROUND

Plaintiff is a former employee of defendant Twitter, Inc., who alleges Twitter unlawfully discriminated against him and other employees based on age.[2] Complaint, Dkt. No. 1. The facts alleged by plaintiff are taken as true for the purposes of this motion to dismiss.

In late October 2022, Elon Musk purchased Twitter, Inc., a social media company. Complaint, Dkt. No. 1, ¶¶ 16–18. Soon after Musk purchased Twitter, he began a "mass layoff" or Reduction in Force (RIF) of over half of Twitter's employees. *Id.* ¶ 18. Most employees were

---

[1] Defendant asks the Court to take judicial notice of several documents. Dkt. No. 20. The Court takes judicial notice of the documents attached to Dkt. No. 20. Defendant also asks the Court to take judicial notice of the underlying complaint in *Winters v. Fellowes, Inc.*, 2005 WL 8177351, at *2 (N.D. Ill. Oct. 11, 2005), a case cited by plaintiff. Dkt. No. 31. Because the Court does not rely on *Winters*, that request for judicial notice is denied as moot.

[2] Plaintiff also brings claims against defendant X Corp., which merged with Twitter, Inc. in March 2023. Dkt. No. 1 ¶¶ 10–11.

1  notified that they had been laid off on November 4, 2022, although there were layoffs both before
2  and after that date.  *Id.* ¶ 20.  Of the 4,964 employees working at Twitter on November 4,
3  approximately 2,686 were laid off that day.  *Id.* ¶ 25.  Plaintiff alleges the decisions about which
4  employees to lay off were made "under extremely hurried circumstances, with little if any regard
5  given to employees' job performance, qualifications, experience, and abilities."  *Id.* ¶ 19.  Plaintiff
6  also alleges that the majority of these decisions were made by a small group of managers, some of
7  whom were brought in from other companies owned by Musk.  *Id.* ¶ 21.  Musk closely supervised
8  the RIF.  *Id.*

9  The November 4 RIF disproportionately affected older workers.  *Id.* ¶¶ 26–31.  On that day,
10 Twitter laid off approximately 149 out of 248 (60%) employees aged 50 or older and 2,537 out of
11 4,716 (54%) employees under the age of 50.  *Id.* ¶ 26, 27.   A chi-squared test showed this
12 distribution in layoffs by age is 1.936 standard deviations from a normal distribution.  *Id.* ¶ 28.

13 The discrepancy is higher when considering employees aged 60 or older to those under 60.
14 *Id.* ¶ 29.  On November 4, Twitter laid off approximately 24 out of 33 (73%) employees aged 60 or
15 older and 2,662 out of 4,913 (54%) employees under 60.  *Id.* ¶ 30,  31.  A chi-squared test showed
16 this distribution of layoffs by age is 2.154 standard deviations from a normal distribution.  *Id.* ¶ 32.

17 Plaintiff alleges that this discrimination was willful.  *Id.* ¶ 33.  Plaintiff alleges that Twitter's
18 owner, Elon Musk, "has a history of bias and making ageist comments."  *Id.* ¶ 22.  Specifically,
19 plaintiff cites a statement Musk made in a 2022 interview:

20  I don't think we should try to have people live for a really long time. That it would
    cause asphyxiation of society because the truth is, most people don't change their
21  mind, …they just die. So, if they don't die, we will be stuck with old ideas and society
    wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if
22  you are many generations older than them.

23 *Id.* ¶ 23.

24 Plaintiff John Zeman was laid off from Twitter in the November 4 RIF.  *Id.* ¶ 34.  He was
25 63 years old.  *Id.*  Plaintiff brings a putative class action on behalf of himself and other former
26 employees aged 50 and over whose employment was terminated.  *Id.*  He brings claims for disparate
27 impact and disparate treatment pursuant to the federal Age Discrimination and Employment Act
28

("ADEA"), 29 U.S.C. § 621, and the New York State Human Rights Law ("NYSHRL"), NY Exec. § 296. *Id.*

Defendants move to dismiss, arguing that plaintiff fails to state a claim for either disparate impact or intentional discrimination. Motion to Dismiss, Dkt. No. 19. Defendants also move to strike plaintiff's class claims. *Id.* Plaintiff opposes. Opposition, Dkt. No. 28.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Dismissal can be granted with or without leave to amend. Leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))

**DISCUSSION**

**A.   Disparate Treatment Claim**

The ADEA and the NYSHRL both prohibit intentional age discrimination, also known as

3

1  "disparate treatment." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 n.1 (9th Cir. 2012)
2  (describing disparate treatment claims); 29 U.S.C. §§ 623(a)(1), 631(a) (ADEA); N.Y. Exec.
3  § 291(1)(a).  To prevail on a disparate treatment claim, a plaintiff must show that the defendant had
4  "a discriminatory intent or motive." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988).
5  "It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show
6  the employer was merely aware of the adverse consequences the policy would have on a protected
7  group." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of
8  State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir.1985)).  Both the ADEA
9  and the NYSHRL require the plaintiff to show that age was the "but-for" cause of the employer's
10 adverse action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Marcus v. Leviton Mfg. Co.,
11 Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016).

12  Defendants argue that plaintiff has failed to plead but-for causation because plaintiff does
13 not plead that he was performing his job satisfactorily or that he was similarly-situated to younger
14 employees who were not terminated.  Mtn. at 6; *see* Dkt. No. 1.  Plaintiff argues that this is not
15 necessary because he is not required to plead a prima facie case of discrimination.

16  To show a prima facie case for discrimination under the *McDonnell Douglas* framework, a
17 plaintiff must show "(1) membership in a protected group, (2) qualification for the job in question,
18 (3) an adverse employment action, and (4) circumstances supporting an inference of
19 discrimination." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 994, 152 L. Ed. 2d 1
20 (2002).  Plaintiff is correct that the *McDonnell Douglas* framework is an evidentiary standard, and
21 "[a] plaintiff in an ADEA case is not required to plead a prima facie case of discrimination in order
22 to survive a motion to dismiss." *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 n.2 (9th
23 Cir. 2012) (emphasis removed) (citing *Swierkiewicz*, 534 U.S. at 508–11).  However, a complaint
24 must still include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to
25 discrimination." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

26  Here, plaintiff has not pled that his performance was satisfactory or that the younger
27 employees who were retained were similarly situated to the older employees who were laid off. *See*
28 Dkt. No. 1.  In the Title IX context, the Ninth Circuit has found similar failings fatal to a claim. *See*

4

*Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (dismissing sex discrimination claim because there were no "nonconclusory allegations that the male students were treated any differently than similarly situated female students based on sex"). And in a recent sex-discrimination case arising out of the same Twitter RIF as this case, a court in this district dismissed the disparate treatment claim for failure to adequately plead causation. Order Granting Motion to Dismiss, Dkt. No. 38, *Strifling v. Twitter, Inc.*, Case No. 22-cv-07739-JST (N.D. Cal. 2023).

At this point, plaintiff has failed to include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination." *Austin,* at 1138. Plaintiff may amend his complaint to allege facts that would support causation.

**B.   Disparate Impact**

Plaintiff also brings disparate impact claims. *See Smith v. City of Jackson, Miss*., 544 U.S. 228, 240 (2005) (recognizing disparate impact theory of liability under ADEA). Disparate impact claims address "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Id.* at 239 (quoting *Teamsters v. United States*, 431 U.S. 324, 335–336, n.15 (1977)). Defendant moves to dismiss the disparate impact claims, arguing that (1) subgroup claims for age discrimination are not cognizable under the ADEA or NYSHRL; (2) plaintiff fails to allege a facially neutral employment practice; and (3) plaintiff fails to allege a statistically significant disparity between the layoff rates for employees 50 and over and employees under 50.[3]

   **1.   Use of Subgroups in Disparate Impact Claims**
      **a.   ADEA Claim**

Twitter first argues that disparate impact claims cannot be based on subgroups of a protected

---

[3] In its Motion, Twitter separately argued that the disparate impact claim is a repackaging of the disparate treatment claim. Mtn. at 13–14. In its Reply, however, Twitter collapsed that argument into its argument that plaintiff fails to identify a facially neutral employment practice. Reply at 11. The parties agree that plaintiff "may pursue both a disparate treatment claim and a disparate impact claim in the alternative" so long as he adequately pleads each claim. *Id.*; *see* Opp. at 12.

5

class. The ADEA prohibits employers from discriminating against any individual "because of such individual's age," but the statute's protection is "limited to individuals who are at least 40 years of age." 29 U.S.C. §§ 623(a), 631(a). Twitter argues this means the ADEA prohibits *only* discrimination between individuals under 40 and individuals over 40 and does not prohibit discrimination against "subgroups" of individuals within the 40-and-over class. Mtn. at 19. Plaintiff argues that the ADEA protects anyone aged 40 and older from discrimination based on age. Opp. at 11.

The Supreme Court has held that the ADEA "prohibits discrimination on the basis of age and not class membership." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). In *O'Connor*, the Supreme Court held that it was "irrelevant" whether "one person in the protected class has lost out to another person in the protected class . . . so long as he has lost out because of his age." *Id.* This would seem to settle the issue. However, *O'Connor* was a disparate treatment case, not a disparate impact case, and some circuit courts have concluded that *O'Connor* does not apply to disparate impact cases. *E.g.*, *E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999) (holding that "[t]he Court in *O'Connor* did not address disparate-impact claims under the ADEA" and does not have "any relevance" to disparate impact claims).

In *E.E.O.C. v. McDonnell Douglas Corp.*, the Eighth Circuit held that disparate impact claims could only be cognizable under the ADEA for the entire class of persons aged 40 or over, because otherwise "a plaintiff could bring a disparate-impact claim despite the fact that the statistical evidence indicated that an employer's RIF criteria had a very favorable impact upon the entire protected group of employees aged 40 and older, compared to those employees outside the protected group." *Id.* at 951. The Second Circuit has also held, post-*O'Connor*, that disparate impact claims under the ADEA are not cognizable for subgroups. *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (rejecting disparate impact claims by pilots aged 55 and older).[4]

On the other hand, two circuits have applied *O'Connor*'s reasoning to disparate impact

---

[4] The Sixth Circuit has likewise held that disparate impact claims have to distinguish between workers under the age of forty and over the age of forty. *Smith v. Tennessee Valley Auth.*, 924 F.2d 1059 (6th Cir. 1991). However, it did so in 1991, several years before *O'Connor*, and has not reconsidered the issue in light of *O'Connor*.

claims.[5] In *Karlo v. Pittsburgh Glass Works, LLC*, the Third Circuit reasoned that the disparate impact provision of the ADEA uses the same operative language as the disparate treatment provision the Supreme Court interpreted in *O'Connor*. 849 F.3d 61, 71 (3d Cir. 2017). Because identical language used in different parts of the same law are intended to have the same meaning, the court "conclude[d] that the Supreme Court's analysis in *O'Connor* answers the question now before us." *Id.* at 71–72. The Seventh Circuit likewise found that the Supreme Court's reasoning in *O'Connor* "applies with equal force to disparate-impact claims." *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 930 (7th Cir. 2018).

The Court agrees with the reasoning of *Karlo* and *O'Brien*. The Supreme Court explained in *O'Connor* that:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.

*O'Connor*, 517 U.S. at 312 (1996). Like the disparate treatment provision, the disparate impact provision prohibits discrimination "because of such individual's age." *Compare* 29 U.S.C. § 623(a)(1) (disparate treatment) *with* 29 U.S.C. § 623(a)(2) (disparate impact). To read the disparate treatment provision to prohibit discrimination based on a class of individuals aged forty and over rather than based on age would contradict both the plain language of the statute and the Supreme Court's holding in *O'Connor*. Therefore, the Court holds that the ADEA disparate impact claim is cognizable for individuals aged fifty and older.

### b. NYSHRL Claim

Twitter also argues that the NYSHRL claim is not cognizable for subgroups of individuals over the age of 18. Mtn. at 12–13. The NYSHRL prohibits employment discrimination against "an

---

[5] Plaintiff argues that the Ninth Circuit has also considered disparate impact claims for a subgroup of individuals, but it did so only in an unpublished opinion prior to 2007 that did not directly address the issue of subgroup claims. *See Fox v. Bonneville Power Admin.*, 243 F.3d 547 (9th Cir. 2000). The Court does not consider that opinion here.

7

individual eighteen years of age or older . . . because of such individual's age." N.Y. Exec. Law § 2963(3-a)(a). Twitter argues that the NYSHRL does not recognize a "subgroup" disparate impact claim. Mtn. at 13.

Twitter's argument relies on two decisions by the Supreme Court of the State of New York, Appellate Division, Third Judicial Department.[6] *Id.* (first citing *Bohlke v. General Elec. Co.*, 742 N.Y.S.2d 131 (3d Dep't. 2002), then citing *Di Mascio v. Gen. Elec. Co.*, 739 N.Y.S.2d 854 (3d Dep't 2002)). In those cases, the state court considered the Second Circuit's rationale interpreting the ADEA and applied the same rationale to the NYSHRL. *Bohlke v. Gen. Elec. Co.*, 293 A.D.2d 198, 200, 742 N.Y.S.2d 131, 133 (2002) ("Applying the Second Circuit's rationale that a plaintiff must show a disparate impact on the entire protected class in order to recover, it is impossible for plaintiffs herein to assert an age discrimination claim based upon disparate impact under the Human Rights Law when all of defendant's employees are over the age of 18 and fall within the protected class.") (citing *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997)); *Di Mascio v. Gen. Elec. Co.*, 293 A.D.2d 842, 842, 739 N.Y.S.2d 854 (2002) (same).

Plaintiff does not specifically address this argument. Opp. at 11–12 (disagreeing with premise that NYSHRL and ADEA do not allow subgroups but only addressing ADEA). But contrary to Twitter's argument, New York state law is not settled on this issue. The First Judicial Department has "recognized that disparate impact claims alleging age discrimination are cognizable under the State Human Rights Law." *Bennett v. Time Warner Cable, Inc.*, 138 A.D.3d 598, 599, 28 N.Y.S.3d 859 (2016) (citing *Mete v. New York State Off. of Mental Retardation & Developmental Disabilities*,[7] 21 A.D.3d 288, 289, 800 N.Y.S.2d 161, 162 (2005)). In *Bennett v. Time Warner Cable*, the First Judicial Department denied a motion to dismiss by "general foremen in their 50's and 60's" who alleged that "defendant's decision to eliminate the general foreman position disproportionately affected them in comparison to younger workers." *Id.* at 598. The Court found

---

[6] The New York Supreme Court, Appellate Division is New York's second-highest state court.

[7] In 2010 the agency eliminated the controversial term from its title, becoming the New York State Office for People With Developmental Disabilities. "About Us," New York State Office for People With Developmental Disabilities, <https://perma.cc/3R3E-RDVR>.

1  that they had adequately pleaded age discrimination under the NYSHRL. *Id.* Plaintiff lives in New
2  York City, which is covered by the First Judicial Department.

3  By its own language, the NYSHRL permits disparate impact claims for "subgroups" based
4  on age. Like the ADEA, the NYSHRL prohibits discrimination "because of [an] individual's age"
5  but limits its protection to "individual[s] eighteen years of age or older." N.Y. Exec. Law § 2963(3-
6  a)(a). The plain language of the law bars discrimination due to age, not due to membership in a
7  protected group. The Court holds that the NYSHRL allows disparate impact claims due to age, not
8  due to membership in the group of individuals eighteen and older.

### 2. Whether Plaintiff's Disparate Impact Claim Alleges a Facially Neutral Employment Practice

Twitter next argues that that plaintiff's disparate impact claim does not identify a facially neutral employment practice. Dkt. No. 19 at 13–16. To state a claim for disparate impact, a plaintiff must allege a "facially neutral business practice." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2009). Here, the policy addressed by plaintiff is "Twitter's conduct in conducting" the RIF. Compl. at 7. Specifically, plaintiff alleges that "[t]he decisions regarding which employees would be laid off . . . were made under extremely hurried circumstances, with little regard to employees' job performance, qualifications, and abilities" and were made "quickly be a small group of managers," many of whom came from other companies and "did not have much, if any knowledge about Twitter's operations." *Id.* at 4. Twitter argues that plaintiff "fails to challenge a specific employment practice." Reply at 13. It argues that plaintiff's complaint fails because the allegations "address only what factors Twitter allegedly ***did not*** consider." Mtn. at 15.

Twitter's contention that plaintiff must identify the factors used by Twitter's managers is incorrect. Disparate impact claims can challenge "both objective and subjective employment practices or criteria." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990). The Ninth Circuit has held that a "policy of committing employment decisions in a RIF to the subjective discretion of its managers constituted a specific employment practice." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2009). Plaintiff has adequately alleged a facially neutral employment

1 practice by alleging that employment decisions were delegated to the subjective discretion of
2 supervisors. *See Rose*, 902 F.2d at 1420 (holding plaintiff sufficiently identified employment
3 practice where employment decisions were "essentially left to the discretion of the managers").

### 3. Statistical Significance of Plaintiff's Disparate Impact Claims

Twitter next argues that plaintiff has failed to allege a statistically significant disparity to support his disparate impact claim. Mtn. at 14. Plaintiff argues that this is an issue for summary judgment. Opp. at 16.

Plaintiff alleges a disparity of 1.936 deviations from the norm when comparing employees 50 and over to employees under 50, and he alleges a disparity of 2.154 standard deviations when comparing employees 60 and over to employees under 60. Compl. ¶¶ 28, 32. The Ninth Circuit has found 1.96 standard deviations to be the threshold for statistical significance in a disparate impact case "unless the factual circumstances of the case warranted departure." *Paige v. California*, 233 F. App'x 646, 648 (9th Cir. 2007).

This is a close call. On one hand, the disparity cited by plaintiff concerning the 50-and-older group is just shy of the Ninth Circuit's typical threshold for statistical significance. *See id.* But the disparity cited for the 60-and-older group is above the same threshold. *See id.* The Ninth Circuit has departed from the 1.96 standard deviations threshold where the facts support doing so. *See Paige*, 233 F. App'x at 648. Age is a scale, not a binary, and the increased disparity for the 60+ age group suggests that age may have been a factor for the 50+ age group as well. Plaintiff's allegations are enough to survive the at the pleadings stage.

### C. Class Claims

Plaintiff proposes a class consisting of "employees age fifty (50) and over who have lost their jobs since Elon Musk took control of" Twitter. Compl. at 7. Twitter moves to strike class claims for employees who were terminated from Twitter after November 4, 2022 or for reasons other than the RIF (for example, termination for cause or voluntary separation).

The Court denies the motion to strike as premature. "[T]he granting of motions to dismiss

class allegations before discovery has commenced is rare" because "the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *see also Thorpe v. Abbott Lab'ys, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle . . . ."). Here, the Complaint alleges that the RIF following Musk's acquisition of Twitter was a continuing event in which "some were laid of earlier and many were laid off after" November 4. Compl. ¶ 20. While the proposed class is broad and may be narrowed after discovery, to strike the class allegations now would be premature.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Plaintiff's claims for disparate treatment are **DISMISSED with leave to amend.** Plaintiff must amend his claims no later than September 29, 2023. With respect to plaintiff's other claims, the motion is **DENIED.**

The motion to strike class allegations is **DENIED** as premature.

**IT IS SO ORDERED**.

Dated: August 29, 2023

_____
SUSAN ILLSTON
United States District Judge