UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ZEMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TWITTER, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-01786-SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 54 |

Before the Court is defendants' motion to dismiss plaintiff's first amended complaint. Dkt. No. 54. Plaintiff opposes. Dkt. No. 59. In accordance with the provisions of Local Rule , the Court finds that the matter may adequately be determined on the papers and accordingly VACATES the hearing set for April 19, 2024. For the reasons set forth below, the Court DENIES defendants' motion.[1]

**BACKGROUND**[2]

Plaintiff John Zeman is a former employee of defendant Twitter, Inc. ("Twitter"). Dkt. No. 50 ("FAC") ¶ 6. Plaintiff alleges that Twitter unlawfully discriminated against him and other employees aged fifty or older based on age, and that defendant X Corp. ("X") has "successor liability for Twitter's unlawful acts." *Id*. ¶¶ 1-2, 11.[3]

---

[1] The Court GRANTS defendants' request to take judicial notice of the documents attached to Dkt. No. 55.

[2] Factual allegations are taken from the First Amended Complaint and are assumed true for the purposes of a Motion to Dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

[3] Twitter and X merged "[i]n or about March 2023" and are therefore "a single entity." FAC ¶ 11. Defendants will hereafter be referred to collectively as "Twitter."

On April 13, 2023, plaintiff filed a collective and class action complaint against Twitter alleging age discrimination under the Age Discrimination and Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). Dkt. No. 1 ("Complaint"). On August 29, 2023, the Court granted in part and denied in part Twitter's motion to dismiss the Complaint. Dkt. No. 41. In relevant part, the Court dismissed plaintiff's disparate treatment claim with leave to amend "to allege facts that would support causation." *Id*. at 5. Specifically, the Court noted that plaintiff had "not pled that his performance was satisfactory or that the younger employees who were retained were similarly situated to the older employees who were laid off." *Id.* at 4.

The FAC alleges largely the same facts as the Complaint. The FAC adds that plaintiff was "employed by Twitter as Senior Manager, Communications" and was notified of his layoff in November 2022, although he officially separated from Twitter in February 2023. FAC ¶ 6. It also adds that "[t]hroughout his employment, [p]laintiff's performance met the company's expectations," and that "[he] (as well as, on information and belief, other employees over the age of 50 who were laid off) performed as well as if not better in their jobs than employees under the age of 50 who were not laid off." *Id*. ¶¶ 6, 20. The remaining facts were previously alleged in the Complaint.

In April 2022, it was announced that Elon Musk would be purchasing Twitter, a social media company. *Id*. ¶¶ 16-17. Following the purchase in late October 2022, "Musk immediately began a mass layoff" or Reduction in Force ("RIF") that affected over half of Twitter's employees. *Id*. ¶ 18. Most laid off employees were notified on November 4, 2022, although layoffs occurred both before and after that date. *Id*. ¶ 21. Of the 4,964 employees working at Twitter on November 4, 2022, approximately 2,686 were laid off that day. *Id*. ¶ 26. Plaintiff alleges that the decisions regarding which employees to lay off were made "under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities." *Id*. ¶ 19. Plaintiff further alleges that the majority of the initial layoff decisions were made by "a small group of managers, under close supervision by Musk." *Id*. ¶ 22. Some of these managers were allegedly brought in from other companies owned by Musk, and "did not have much, if any, knowledge about Twitter's operations." *Id*.

Plaintiff alleges that the November 4, 2022 RIF disproportionately affected older workers.

*See id*. ¶¶ 27-32. On that day, Twitter laid off approximately 149 out of 248 (60%) employees aged 50 or older and 2,537 out of 4,716 (54%) employees under the age of 50. *Id*. ¶¶ 27-28. A chi-square statistical analysis showed that this distribution of layoffs by age is 1.936 standard deviations from a normal distribution. *Id*. ¶ 29. The discrepancy is higher when considering employees aged 60 or older to those under 60. *Id*. ¶ 30. On November 4, 2022, Twitter laid off approximately 24 out of 33 (73%) employees aged 60 or older and 2,662 out of 4,913 (54%) employees under 60. *Id*. ¶¶ 31, 32. A chi-square statistical analysis showed that this distribution of layoffs by age is 2.154 standard deviations from a normal distribution. *Id*. ¶ 33.

Plaintiff alleges that this discrimination on the basis of age was willful. *Id*. ¶ 34. Plaintiff further alleges that Twitter's owner, Elon Musk, "has a history of bias and making ageist comments." *Id*. ¶ 23. Specifically, plaintiff cites a statement that Musk made in a 2022 interview with the CEO of the publishing company, Axel Springer:

> I don't think we should try to have people live for a really long time. That it would cause asphyxiation of society because the truth is, most people don't change their mind, . . . they just die. So, if they don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them.

*Id*. ¶ 24.

Plaintiff was informed of his layoff on November 4, 2022, when he was 63 years old. *Id*. ¶ 35. Plaintiff brings this putative collective and class action, on behalf of himself and other former employees ages 50 and over "who have lost their jobs since Elon Musk took control of [Twitter]," claiming disparate impact and disparate treatment pursuant to the ADEA, 29 U.S.C. § 621, and the NYSHRL, NY Exec. § 296. *Id*. ¶ 36.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires

3

the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in her favor. *See Usher*, 828 F.2d at 561. However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Dismissal can be granted with or without leave to amend. Leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**DISCUSSION**

The parties disagree on whether plaintiff has sufficiently stated a claim for intentional age discrimination, and whether plaintiff has standing to pursue his claims on behalf of other employees discharged after November 4, 2022.

**I.   Disparate Treatment**

Both the ADEA and NYSHRL prohibit intentional age discrimination, also known as "disparate treatment." *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (applying "the same analysis" to age-related disparate treatment claims brought under the ADEA and NYSHRL). To prevail on a disparate treatment claim, a plaintiff must show that the defendant had "a discriminatory intent or motive." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988). It is insufficient to allege that "the employer was merely aware of the adverse consequences the [adverse action] would have on a protected group." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d

1401, 1405 (9th Cir.1985)). Both the ADEA and NYSHRL require the plaintiff to show that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Marcus v. Leviton Mfg. Co., Inc.*, 661 Fed. Appx. 29, 33 (2d Cir. 2016). However, "[a] plaintiff in an ADEA case is not required to plead a prima facie case of discrimination in order to survive a motion to dismiss." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508–11 (2002)). A plaintiff claiming disparate treatment need only plead "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).[4]

Twitter contends that plaintiff's allegations do not support a plausible inference of intentional age discrimination because "the FAC lacks basic performance and comparative allegations." Dkt. No. 54 at 7. The FAC alleges that plaintiff "met [Twitter's] expectations" "[t]hroughout his employment" as "Senior Manager, Communications." FAC ¶ 6. It further alleges that plaintiff "performed as well as if not better . . . than employees under the age of 50 who were not laid off," and that the layoff decisions "were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities." *Id*. ¶¶ 19-20. Plaintiff argues that these allegations, read together, plausibly infer that his "layoff had nothing to do with any purported poor performance—instead, it was due to his age." Dkt. No. 59 at 6-7. Twitter argues that these additional allegations are too cursory and "do not move the needle on plausibility." Dkt. No. 54 at 7.

While plaintiff will need more to prove his case at summary judgement or trial, the Court finds that these additional allegations are sufficient at the pleadings stage. In *Sheppard*, the Ninth Circuit found a two-and-a-half-page complaint sufficient where the plaintiff alleged that "(1) she was at least forty years old; (2) 'her performance was satisfactory or better' and that 'she received consistently good performance reviews'; (3) she was discharged; and (4) her five younger

---

[4] For reference, a prima facie case for discrimination under the *McDonnell Douglas* framework requires a plaintiff to show "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz*, 534 U.S. at 510.

5

comparators kept their jobs." 694 F.3d at 1049-50. The Ninth Circuit explained that in a "straightforward" case of discrimination, even after *Iqbal* and *Twombly*, alleging that the plaintiff "was over forty and 'received consistently good performance reviews,' but was nevertheless terminated from employment while younger workers in the same position kept their jobs" amounts to an "entirely plausible scenario" of employment discrimination. *Id.* at 1050 (citation omitted).[5]

Courts in this District have followed *Sheppard* to find allegations comparable to plaintiff's sufficient at the pleadings stage. For example, in *Loza v. Intel Americas, Inc.*, a court in this District found an ADEA claim plausible where the plaintiff alleged that he was "'a hard-working employee who diligently performed and excelled' at 'his duties on a regular basis'" and the defendant "treated [him] in a disparate manner than other similarly situated employees in the events leading to [his] termination." No. C 20-06705 WHA, 2020 WL 7625480, at *3-4 (N.D. Cal. Dec. 22, 2020)[6]; *see also Haro v. Therm-X of California, Inc.*, No. 15-CV-02123-JCS, 2015 WL 5121251, at *4 (N.D. Cal. Aug. 28, 2015) (finding a plaintiff's "somewhat conclusory" allegation that he "performed his job satisfactorily" sufficient to allege adequate performance at the pleadings stage); *Hilbert v. Int'l Lining Tech.*, No. C 12-00003 LB, 2012 WL 3542421, at *5 (N.D. Cal. July 24, 2012) (finding sufficient to plead disparate treatment a plaintiff's allegations that "he was hired as a 'Journeyman Laborer,'" "he was not told of any problems with his job performance," and he was treated

---

[5] Twitter contends that plaintiff's reliance on *Sheppard* is misplaced because he does not allege facts suggesting that he received "consistently good performance reviews" or that his younger comparators kept their jobs. Dkt. No. 60 at 4. While he doesn't allege anything about performance reviews, plaintiff does allege that he performed satisfactorily "[t]hroughout his employment" and that employees aged 50 or older were laid off during the RIF "to a greater extent than employees under the age of [50]." FAC ¶¶ 4, 20. The Court finds these allegations comparable to allegations made by the plaintiff in *Sheppard*.

[6] The plaintiff in *Loza* also alleged that the defendant, "in the months leading up to terminating [the] [p]laintiff, began to displace older employees in leadership roles who were told to accept a demotion or be terminated," "demot[ed] and terminat[ed] older employees, then hir[ed] younger employees for managements positions that were once held by employees over the age of 40," and the defendant "'intentionally' and 'abruptly' terminated him because of his age without following 'its typical progressive discipline process.'" 2020 WL 7625480, at *3. While this is more detail than plaintiff alleges in this case, the Ninth Circuit has indicated in a case at the summary judgment stage that in a RIF context, a plaintiff need not show that they were "replaced by a substantially younger employee with equal or inferior qualifications" because "in most [RIF] cases no replacements will have been hired." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 n.2 (9th Cir. 2008).

6

differently from laborers outside his protected class).

The cases that Twitter cites to at the motion to dismiss stage are distinguishable. In *Fresquez v. County of Stanislaus*, the court dismissed a disparate treatment claim because "[w]ithout even a description of what [the] [p]laintiff's duties entailed" it was "impossible to determine whether it [was] plausible that [the] [p]laintiff was qualified for her position" and the plaintiff did "not allege[] that any similarly situated individuals outside of her protected classes were treated more favorably." 2014 WL 1922560, at *5 (E.D. Cal. May 14, 2014). Here, although plaintiff could provide more specifics about his duties and qualifications, he was terminated in a RIF and alleges that employees aged 50 or older were laid off "to a greater extent" than employees under the age of 50. FAC ¶ 4. In *Vizcaino v. Areas USA, Inc.*, the court dismissed a gender discrimination claim because the plaintiff "allege[d] in a conclusory fashion that he was performing his job competently" and "fail[ed] to plead facts demonstrating that he was terminated because of his gender." No. CV 15-417-JFW (PJWX), 2015 WL 13573816, at *4 (C.D. Cal. Apr. 17, 2015). Here, plaintiff includes statistical allegations that, although likely insufficient on their own, bolster the plausibility of his claims (as discussed in more detail below).

In its reply, Twitter also cites *Marziano v. Cnty. of Marin*, where the plaintiff alleged in relevant part discrimination on the basis that "similarly situated employees were treated more favorably." No. C-10-2740 EMC, 2010 WL 3895528, at *8 (N.D. Cal. Oct. 4, 2010); Dkt. No. 60 at 3.[7] The defendants argued that these allegations were too conclusory, but the court disagreed, finding that the plaintiff did "more than make a naked assertion that similarly situated persons were

---

[7] Twitter contends that "the decisions that the *Marziano* court cited approvingly illustrate the deficiency of [p]laintiff's allegations," specifically *Williams v. United Steel Workers of Am.*, No. 1:09-CV-743, 2010 WL 909883 (S.D. Ohio Mar. 10, 2010) and *Frank v. Potter*, No. 1:08-CV-00595, 2009 WL 2982876 (S.D. Ohio Sept. 15, 2009). Dkt. No. 60 at 3. In *Williams*, an Ohio court dismissed in relevant part an ADEA claim because the plaintiff plead "no facts" from which the Court could infer age-animus. 2010 WL 909883, *5. Specifically, he did not plead "any facts" to support his "conclusory allegation" that "younger workers were treated more favorably" or to "explain in what manner younger workers were treated more favorably." *Id.* In *Frank*, an Ohio court found the plaintiff had adequately pled race and gender disparate treatment claims where she "identifie[d] her supervisors whom she allege[d] engaged in discrimination [and the] specific actions they took" and "allege[d] that both men and women of a different race . . . were treated differently." 2009 WL 2982876, *7. Here, plaintiff alleges more than the plaintiff in *Williams* and a seemingly comparable amount to the plaintiff in *Frank*. Additionally, as discussed below, the failure to identify the decision-makers does not necessarily defeat plaintiff's claims.

1   treated more favorably" because she gave "some specificity by asserting that similarly situated
2   persons were given the opportunity to telecommute while she was not." 2010 WL 3895528, at *8.[8]
3   Plaintiff's allegations are similarly specific; he alleges that he and other former employees aged 50
4   and older were laid off during the RIF "to a greater extent than employees under the age of [50]."
5   FAC ¶ 4.

6         Twitter then argues that the FAC lacks other factual allegations supporting an inference of
7   intentional discrimination. Dkt. No. 54 at 7. Specifically, defendants contend that plaintiff provides
8   no information about the "'small group of managers' who made the RIF decisions that would
9   reasonably suggest they harbored discriminatory animus towards [p]laintiff," and that there are no
10  allegations plausibly suggesting that these decision-makers "possessed knowledge of the age of
11  [Twitter]'s employees when making RIF decisions." *Id*. at 8. Plaintiff contends that his statistical
12  allegations make clear that the age disparities were "very likely not random[,] thus the
13  decisionmakers must have known the employees' ages." Dkt. No. 59 at 8 n.2. Twitter cites a sex
14  discrimination case arising out of the instant November 4, 2022 RIF in support of its argument. Dkt.
15  No. 54 at 8; Order Granting Motion to Dismiss, Dkt. No. 38, *Strifling v. Twitter, Inc.*, Case No. 22-
16  cv-07739-JST (N.D. Cal. 2023) ("*Strifling* Order"). There, a court in this District dismissed a
17  disparate treatment claim with leave to amend because the complaint did not allege the "[p]laintiffs'
18  positions at Twitter, whether they were performing satisfactorily, the treatment of similarly situated
19  men, and the identity of the managers." *Strifling* Order at 10. Here, plaintiff alleges his position
20  and his satisfactory performance compared to younger employees who were retained during the RIF.
21  FAC ¶¶ 6, 20. It is not conclusive that plaintiff does not specify the identities of the alleged decision-
22  makers. *See Sheppard*, 694 F.3d at 1049-50 (finding the plaintiff plausibly pled an ADEA claim
23  without requiring her to identify the individuals at the company who decided on her termination);
24  *Marziano*, 2010 WL 3895528, at *9 ("[T]here is nothing about Federal Rule of Civil Procedure 8
25  which requires the naming of names").

---

[8] The *Mariziano* court dismissed the complaint with leave to amend because it was unclear whether the basis of the plaintiff's discrimination claim was race, gender, or otherwise. 2010 WL 3895528, at *9.

8

Lastly, while "a prima facie case of disparate treatment based solely on statistical evidence" must show "a stark pattern of discrimination unexplainable on grounds other than age," that is not all plaintiff alleges here. *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 552-53 (9th Cir. 1982) (noting it would be "improper to posit a quantitative threshold above which statistical evidence of disparate . . . impact is sufficient as a matter of law to infer discriminatory intent"); *Schechner v. CBS Broad., Inc.*, 2010 WL 2794374, at *7 (N.D. Cal. July 15, 2010) (citations omitted). While plaintiff's statistical allegations alone may be insufficient to plead a disparate treatment claim, they are relevant and strengthen the plausibility of plaintiff's claim. *See Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362 (9th Cir. 1985) ("Statistical evidence is unquestionably relevant in a . . . disparate treatment case . . . because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices[,] [which] is probative of motive and can therefore create an inference of discriminatory intent").

For the foregoing reasons, the Court finds that plaintiff has plausibly pled a claim of disparate treatment. The Court need not address whether plaintiff's allegations are sufficient under a pattern or practice framework nor whether Musk's interview comment fails to support an inference of intentional age discrimination because the Court finds the other allegations, alone, sufficient.

## II.     Standing

"[A]t the pleading stage, the plaintiff[s] must 'clearly . . . allege facts demonstrating'" that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 338 n.6 (internal quotation marks omitted).

Twitter argues that plaintiff lacks standing to pursue his claims on behalf of employees who separated "subsequently from" or "for reasons other than" the November 4, 2022 RIF because plaintiff "could not have suffered the same injuries as [those] employees." Dkt. No. 54 at 12. Plaintiff contends that "all of [Twitter]'s actions in laying off employees since Musk acquired

Twitter were part and parcel of the same mass layoff," thus "the fact that [plaintiff] was laid off on November 4, 2022, does not prohibit him from alleging that the mass layoff as a whole . . . was discriminatory." Dkt. No. 59 at 15.

Twitter cites *Strifling* and *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749-50 (9th Cir. 2003), but neither case supports dismissal on the basis of standing here. In *Strifling*, the court did not decide Twitter's alternative motion to strike because it dismissed the claims in the complaint. *Strifling* Order at 15. The court also did not consider whether a "Post-RIF Policy" was an act of intentional discrimination because the plaintiffs were no longer working at Twitter when it was enacted. *Strifling* Order at 7 n.5. In *Pottenger*, the Ninth Circuit in relevant part affirmed summary judgment against plaintiff on a disparate impact claim because the plaintiff was not "formally or functionally subject to the RIF." 329 F.3d at 749-50. The company "targeted rank-and-file employees" and used an "objective, four-step evaluation process" "to identify employees to be terminated as part of the RIF," but the plaintiff was a high-level executive who was terminated outside of the four-step evaluation process and before the RIF officially began. *Id*.

Here, plaintiff challenges only the RIF itself, and alleges that the RIF was a continuing event in which employees were laid off "on," "earlier," and "after" November 4, 2022. FAC ¶ 21. Plaintiff also alleges that the RIF decisions were made "on the basis of age," "with little if any regard given to employees' job performance, qualifications, experience, and abilities." *Id*. ¶¶ 19, 34. As the Court previously stated in its August 29, 2023 order, "[w]hile the proposed class is broad and may be narrowed after discovery, striking the class allegations now would be premature." Dkt. No. 41 at 10. Dismissal on the basis of standing is premature as well. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare [because] the shape and form of a class action evolves only through the process of discovery").

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES in its entirety

10

Twitter's motion to dismiss.

**IT IS SO ORDERED**.

Dated: April 18, 2024

_____
SUSAN ILLSTON
United States District Judge