SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff John Zeman, on behalf of himself*
*and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOHN ZEMAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>TWITTER, INC. and X CORP.,<br><br>    Defendants. | Case No. 3:23-cv-01786-SI<br><br>**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**<br><br>Judge:   Hon. Susan Illston |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND......................................... 2

III.    ARGUMENT ........................................................................................................... 4

        A.      Legal standard for conditional certification under the ADEA .............................. 4

        B.      Zeman has made the requisite showing that a collective of similarly
                situated employees exists. ....................................................................................... 5

        C.      Zeman has raised substantial allegations that all members of the collective
                suffered unlawful discrimination in violation of the ADEA. ................................ 7

        D.      The proposed notice to potential opt-in plaintiffs is appropriate. ........................ 8

IV.     CONCLUSION ...................................................................................................... 10

PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Abrams v. Gen. Elec. Co*,
    1996 WL 663889 (N.D.N.Y. Nov. 4, 1996) ................................................... 6

*Adams v. Inter–Con Sec. Sys., Inc.*,
    242 F.R.D. 530 (N.D. Cal. 2007) ........................................................... 10

*Basham v. Tailored Living Choices, LLC*,
    2024 WL 665189 (N.D. Cal. Feb. 16, 2024) ........................................... 9

*Behr v. AADG, Inc.*,
    136 F. Supp. 3d 1012 (N.D. Iowa 2015) ................................................ 6

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ........................................................... 4, 5

*Coates v. Farmers Grp., Inc.*,
    2015 WL 8477918 (N.D. Cal. Dec. 9, 2015) ......................................... 10

*Donofrio v. IKEA US Retail, LLC*,
    2019 WL 9698597 (E.D. Pa. May 15, 2019) ......................................... 6

*Forsyth v. HP Inc.*,
    2021 WL 1391501 (N.D. Cal. Apr. 13, 2021) ....................................... 8

*Gee v. Suntrust Mortg., Inc.*,
    2011 WL 722111 (N.D. Cal. Feb. 18, 2011) ......................................... 10

*Greene v. Omni Limousine, Inc.*,
    2019 WL 2503950 (D. Nev. June 15, 2019) ......................................... 9

*Harris v. Vector Mktg. Corp.*,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ................................................ 10

*Heath v. Google Inc.*,
    215 F. Supp. 3d 844 (N.D. Cal. 2016) ................................................ 6, 7

*Heath v. Google LLC*,
    345 F. Supp. 3d 1152 (N.D. Cal. 2018) .............................................. 1, 4

*Herrera v. EOS IT Mgmt. Sols., Inc.*,
    2020 WL 7342709 (N.D. Cal. Dec. 14, 2020) ..................................... 9

*Hoffman-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989) ........................................................................... 2, 8

*Kincheloe v. Am. Airlines, Inc.*,
   2021 WL 2322322 (N.D. Cal. June 7, 2021) .............................................. 1, 5, 7, 9

*Leuthold v. Destination America*,
   224 F.R.D. 462 (N.D. Cal. 2004) ............................................................... 4, 5

*Lewis v. Wells Fargo & Co.*,
   669 F. Supp. 2d 1124 (N.D. Cal. 2009) ........................................................ 4

*Litvinova v. City & Cnty. of San Francisco*,
   2019 WL 1975438 (N.D. Cal. Jan. 3, 2019) ................................................... 9

*Morton v. Valley Farm Transp., Inc.*,
   2007 WL 1113999 (N.D. Cal. Apr. 13, 2007) ................................................. 5

*Otey v. CrowdFlower, Inc.*,
   2013 WL 4552493 (N.D. Cal. Aug. 27, 2013) ............................................... 10

*Rabin v. PricewaterhouseCoopers LLP*,
   2019 WL 9078785 (N.D. Cal. Apr. 5, 2019) ................................................ 4, 5

*Rodolico v. Unisys Corp.*,
   199 F.R.D. 468 (E.D.N.Y. 2001) .................................................................. 6

*Russell v. Wells Fargo & Co.*,
   2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) ................................................ 5, 7

*Santiago v. Amdocs, Inc.*,
   2012 WL 2343626 (N.D. Cal. June 20, 2012) .................................................. 9

*Travers v. Flight Servs. & Sys., Inc.*,
   737 F.3d 144 (1st Cir. 2013) ...................................................................... 7

*Villa v. United Site Servs. of Cal.*,
   2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) ............................................... 1, 5

*Vondriska v. Premier Mortg. Funding, Inc.*,
   564 F. Supp. 2d 1330 (M.D. Fla. 2007) ......................................................... 7

*Wertheim v. State of Arizona*,
   1993 WL 603552 (D. Ariz. Sept. 30, 1993) ..................................................... 5

*Wilkerson v. Martin Marietta Corp.*,
   875 F. Supp. 1456 (D. Colo. 1995) ............................................................... 6

**Statutes**

Age Discrimination in Employment Act of 1967 ("ADEA"),
   29 U.S.C. § 621, *et seq.* ..................................................................... 1, 4, 5, 8

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 201, *et seq.*.................................................................................................. 4

New York State Human Rights Law ("NYSHRL"),
    NY Exec § 296 .............................................................................................................. 2

Older Workers Benefit Protection Act ("OWBPA"),
    29 U.S.C. § 626.............................................................................................................. 3

PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

1

# I.    INTRODUCTION

2

Plaintiff John Zeman brought this suit on behalf of himself and similarly situated older

3

employees at Twitter who were laid off as part of a massive reduction-in-force ("RIF") following

4

billionaire Elon Musk's purchase of the company in 2022. All individuals who comprise

5

Zeman's proposed collective (1) were employed by Twitter; (2) lost their jobs after Elon Musk

6

purchased the company as part of the RIF; and (3) were age fifty (50) or older at the time they

7

were separated from the company. Zeman alleges that he and all members of the collective

8

suffered from the same unlawful age discrimination, which permeated all aspects of the RIF

9

process and disproportionately affected older employees. Accordingly, Zeman seeks conditional

10

certification of a collective action under the Age Discrimination in Employment Act of 1967

11

("ADEA"), 29 U.S.C. § 621, to provide notice of this action to the following group of

12

individuals:

13

> All Twitter employees across the United States age fifty (50) or
> older who have lost their jobs since Elon Musk acquired the
> company.

14

15

As set out below, Zeman has satisfied the "lenient standard to determine whether the

16

ADEA proposed collective action should be conditionally certified and given notice." *Heath v.*

17

*Google LLC*, 345 F. Supp. 3d 1152, 1164 (N.D. Cal. 2018). Specifically, in his complaint and

18

supporting declarations, Zeman has met his burden of making [1] a showing that "'the putative

19

[collective] members were together the victims of a single decision, policy, or plan' and [2] a

20

showing that [he is] 'generally comparable to those [he] seek[s] to represent.'" *Kincheloe v. Am.*

21

*Airlines, Inc.*, 2021 WL 2322322, at *2 (N.D. Cal. June 7, 2021) (quoting *Villa v. United Site*

22

*Servs. of Cal.*, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012)). Moreover, while Zeman is

23

not required to prove the merits of his claims at this stage, conditional certification is further

24

warranted because he has presented compelling statistical and anecdotal evidence that all

25

members of the collective suffered the same unlawful age discrimination during the RIF process.

26

███████████████████████████████████████████

27

28

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████

5    This Court should grant Zeman's motion for conditional certification and allow putative

6 collective action members to receive notice of their right to opt in and pursue this claim.

7 Although discovery has only recently begun, courts allow early issuance of notice in order to

8 help the Court efficiently manage such cases by allowing it to "ascertain the contours of the

9 action at the outset." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989).

10 **II.    PROCEDURAL AND FACTUAL BACKGROUND**

11    Zeman filed this collective and class action lawsuit on April 13, 2023, asserting collective

12 claims for age discrimination in violation of the ADEA, and class claims under the New York

13 State Human Rights Law ("NYSHRL"), NY Exec § 296, for employees who worked in New

14 York. (Compl., Counts I-II, Dkt. 1.) On August 29, 2023, this Court granted in part and denied in

15 part Twitter's Motion to Dismiss the complaint. (Dkt. 41.) Subsequently, on January 31, 2024,

16 Zeman filed an Amended Collective and Class Action Complaint (the "FAC"). (FAC, Dkt. 50.).

17    As Zeman alleged, Elon Musk purchased Twitter in late October 2022 and immediately

18 began laying off well more than half of its workforce, including Zeman. (FAC ¶¶ 3-4, 17-18, Dkt.

19 50.); *see also* Exhibit A (Declaration of John Zeman) at ¶ 7.  The decisions regarding which

20 employees would be laid off were made under extremely hurried circumstances, and for

21 thousands of employees, in a period just in a few days. (FAC ¶ 19, Dkt. 50.) In selecting

22 employees for layoff, little attention (if any) was given to employees' job performance,

23 qualifications, experience, and abilities. (FAC ¶¶ 19-20, Dkt. 50.) Most of the employees who

24 Twitter laid off were notified of their layoff on November 4, 2022, including Zeman (FAC ¶ 21,

25 Dkt. 50.) Zeman has alleged that the layoff decisions were made quickly by a small group of

26 managers under close supervision by Musk. (FAC ¶ 21, Dkt. 50.) Some of these managers were

27 brought in from other companies owned by Musk (such as Tesla), who did not have much, if any,

28

knowledge about Twitter's operations. (FAC ¶ 21, Dkt. 50.) Zeman was sixty-three (63) years old at the time he was laid off. (FAC ¶ 35, Dkt. 50.); *see also* Exhibit A at ¶ 8.

Zeman alleges that Twitter's mass layoff impacted employees age fifty (50) and older more than employees younger than fifty (50). (FAC ¶ 25, Dkt. 50.). According to data that Twitter provided employees pursuant to the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626, Twitter laid off approximately 60% of its employees age fifty (50) and older, while only 54% of its employees younger than fifty (50). (FAC ¶¶ 26-28, Dkt. 50.). Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between employees age fifty (50) and older and younger employees being laid off was due only to chance is .0529. (FAC ¶ 29, Dkt. 50.). The disparity for employees age sixty (60) and older is even greater. (FAC ¶ 30, Dkt. 50.). Specifically, Twitter laid off approximately 73% of its employees age sixty (60) and older, while only 54% of its employees younger than sixty (60). (FAC ¶¶ 31-33, Dkt. 50.) According to Dr. Killingsworth, the odds this was due only to chance is .0313. (FAC ¶ 33, Dkt. 50.)

Zeman further alleged that Twitter's discriminatory conduct in the layoffs is unsurprising in light of Elon Musk's public comments against older people. (FAC ¶¶ 23-24, Dkt. 50.). For example, Musk has stated "if [older people] don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them." (Compl. ¶ 24, Dkt. 50.)

On February 21, 2024, Twitter filed a Motion to Dismiss the First Amended Complaint. (Dkt. 54). The Court denied this motion on April 19, 2024, concluding that Zeman "has plausibly pled a claim of disparate treatment." (Dkt. 62 at 9.). Twitter subsequently filed an answer to Zeman's FAC (Dkt. 63).

1

2

## III.    ARGUMENT

### A.    Legal standard for conditional certification under the ADEA

3

The ADEA prohibits discrimination "against any individual with respect to his

4

compensation, terms, conditions, or privileges of employment because of such individual's age."

5

29 U.S.C. § 623(a)(1). The Act is to be enforced "in accordance with the powers, remedies and

6

procedures" of designated sections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

7

§ 626(b), including the FLSA provision providing that "[a]n action . . . may be maintained

8

against any employer . . . in any Federal or State court of competent jurisdiction by any one or

9

more employees for and [o]n behalf of himself or themselves and other employees similarly

10

situated," 29 U.S.C. § 216(b); *see also Rabin v. PricewaterhouseCoopers LLP*, 2019 WL

11

9078785, at *2 (N.D. Cal. Apr. 5, 2019) ("The ADEA incorporates the collective action

12

procedures of FLSA, set forth in 29 U.S.C. § 216(b).").

"[B]ecause [the] ADEA incorporates § [2]16(b) of the Fair Labor Standards Act into its

13

enforcement scheme, the same rules govern judicial management of collective actions under both

14

statutes." *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1126 n.1 (N.D. Cal. 2009). "[T]o

15

determine whether collective action members are 'similarly situated,' courts engage in a 'two-

16

step approach involving initial notice to prospective plaintiffs, followed by a final evaluation

17

whether such plaintiffs are similarly situated.'" *Heath v. Google LLC*, 345 F. Supp. 3d 1152,

18

1164 (N.D. Cal. 2018) (quoting *Leuthold v. Destination America*, 224 F.R.D. 462, 467 (N.D.

19

Cal. 2004)). At the first step, "courts apply a lenient standard to determine whether the ADEA

20

proposed collective action should be conditionally certified and given notice." *Id.* "At this early

21

stage of the litigation, the district court's analysis is typically focused on a review of the

22

pleadings but may sometimes be supplemented by declarations or limited other evidence."

23

*Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). The plaintiff's burden is

24

"sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a

25

'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with

26

the stage of the proceedings." *Id.* This standard is lenient and "typically results in conditional

27

28

class certification," *Leuthold*, 224 F.R.D. at 467, which in turn "results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109.

> **B.** **Zeman has made the requisite showing that a collective of similarly situated employees exists.**

Zeman has amply satisfied his modest burden of making a plausible showing that a group of similarly situated former Twitter employees exists. Individuals are "similarly situated" as defined at the conditional certification stage if they "share similar issues of law and fact material to their ADEA claims." *Rabin*, 2019 WL 9078785 at *4. "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the [ADEA]." *Russell v. Wells Fargo & Co.*, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008) (quoting *Wertheim v. State of Arizona*, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993)). Specifically, at this preliminary stage, "courts require little more than substantial allegations, supported by declarations or discovery, that [1] 'the putative class members were together the victims of a single decision, policy, or plan' and [2] a showing that plaintiffs are 'generally comparable to those they seek to represent.'" *Kincheloe*, 2021 WL 2322322 at *2 (quoting *Villa*, 2012 WL 5503550 at *13). The plaintiff's burden is "not heavy," and he need only show "a 'reasonable basis' for the[] claim of class-wide discrimination." *Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007).

Here, Zeman has raised substantial allegations that all members of the proposed collective "were together the victim of a single decision, policy, or plan" – they were all discriminatorily laid off on the basis of their age as part of the massive RIF initiated in the aftermath of Elon Musk's purchase of Twitter in October 2022. *See* FAC ¶¶ 27-29. These kinds of allegations, supported by declaration, deposition testimony, and statistical evidence as here, have been deemed more than sufficient to support conditional certification of an ADEA

collective in numerous similar cases. *See, e.g.*, *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 855 (N.D. Cal. 2016) (conditionally certifying ADEA collective based on declarations and statistical evidence, even in absence of "direct evidence of discrimination in writing"); *Donofrio v. IKEA US Retail, LLC*, 2019 WL 9698597, at *4 (E.D. Pa. May 15, 2019) (conditionally certifying ADEA collective where "evidence shows beyond mere speculation that IKEA may have discriminated against older employees" and the plaintiff "has also shown beyond mere speculation that IKEA's allegedly discriminatory policies and procedures could have affected all putative class members similarly"). Moreover, courts have found that "a systematic reduction in force" constitutes a "single decision, policy, or plan" for ADEA conditional certification purposes, even where "different managers had the discretion to determine who was ultimately terminated." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001); *see also Abrams v. Gen. Elec. Co*, 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996) (conditionally certifying ADEA collective where "plaintiffs allege that the employee retention and elimination procedures developed by GE . . . to rank exempt employees for this downsizing[] were designed and implemented to have a discriminatory impact on employees over forty"); *Behr v. AADG, Inc.*, 136 F. Supp. 3d 1012, 1018–19 (N.D. Iowa 2015) (conditionally certifying ADEA collective where plaintiff "alleges a single discriminatory policy or plan—[the employer's] implementation of the RIF"). Where, as here, plaintiffs raise substantial allegations that age discrimination infected a company's RIF process, "the allegation of discrimination . . . transcends the differences existing among levels of management responsibility as well as differences stemming from employment in different divisions or operating units of the Defendant corporation," and "[t]he similarly situated requirement . . . is therefore met." *Wilkerson v. Martin Marietta Corp.*, 875 F. Supp. 1456, 1461 (D. Colo. 1995).

Zeman is also generally comparable to those he seeks to represent. To satisfy the "generally comparable" requirement, a plaintiff need only "present 'some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies

underlying the FLSA.'" *Kincheloe*, 2021 WL 2322322 at *2 (alterations in the original) (quoting *Russell*, 2008 WL 4104212 at *3). Courts have routinely concluded that ADEA plaintiffs who allegedly suffered discrimination during a broader employment process (such as hiring or a RIF) are "generally comparable" to other employees who allegedly experienced the same form of discrimination during that process. *Id.* at *4 (concluding that named plaintiff could represent collective of flight attendants who accepted employer's voluntary early retirement program offer); *Heath*, 215 F. Supp. 3d at 855 (named ADEA plaintiff who interviewed for position with Google but was not hired was "generally comparable" to others who interviewed for same positions). Here, Zeman satisfies the "generally comparable" requirement because, like all members of the proposed collective, (1) he was employed by Twitter; (2) he was laid off by Twitter as part of the RIF initiated after Elon Musk purchased the company; and (3) he was age 50 or over at the time he was laid off. Accordingly, conditional certification is warranted.

### C.    Zeman has raised substantial allegations that all members of the collective suffered unlawful discrimination in violation of the ADEA.

At this stage, Zeman is not required to prove the ultimate merits of his claim that Twitter unlawfully discriminated against older employees in executing the RIF. *See, e.g.*, *Heath*, 215 F. Supp. 3d at 854–55 (deferring consideration of "arguments [that] go to the merits and are better addressed at the second stage, after discovery has closed"). Still, some courts have recognized that "[t]he existence of a common policy or plan is relevant to whether judicial economy with be served by a collective action." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007). Here, Zeman has presented highly probative evidence regarding the disparate impact of the RIF on members of the proposed collective in the form of a statistical analysis performed by labor economist Dr. Mark Killingsworth (FAC ¶¶ 31-33, Dkt. 50.) In addition, Zeman has identified ageist comments made by Elon Musk around the time he purchased Twitter (FAC ¶ 24, Dkt. 50,) which may be imputed to the company he ran, *see, e.g.*, *Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144, 147 (1st Cir. 2013) (noting in context of retaliation claim that "strongly held and repeatedly voiced wishes of the king, so to speak, likely

became well known to those courtiers who might rid him of a bothersome underling"). Moreover, Defendants failed to conduct a disparate impact analysis in connection with the layoffs, ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████ The fact that all putative class members' ADEA claims will rise and fall on the strength of the same evidence further bolsters the conclusion that conditional certification and notice will facilitate an efficient resolution of this case, consistent with the purpose of the ADEA's collective action mechanism.

> **D.    The proposed notice to potential opt-in plaintiffs is appropriate.**

Congress' purpose in authorizing collective actions was to avoid multiple, duplicative lawsuits filed by numerous employees who all suffered a common violation of the ADEA. *See Hoffman-LaRoche*, 493 U.S. at 170. But "[t]hese benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. Court authorized notice facilitates "accurate and timely notice" and prevents "misleading communication[s]" regarding a collective action. *Id*. at 172.

Here, Zeman's proposal for court-approved notice to potential opt-in plaintiffs (attached as Exhibit D) meets the timeliness, accuracy and informational requirements discussed by the Supreme Court in *Hoffman-LaRoche*. *Id*. The proposed notice describes the lawsuit, informs all individuals age fifty (50) and older who were terminated by Twitter after Elon Musk's purchase of the company of their opportunity to "opt-in," instructs them how to "opt-in," and notifies them of the effect of their decision to "opt-in." *See* Exhibit D.

The proposed notice is also appropriate in its scope. Courts have frequently granted conditional certification of collective actions similar in scope to Zeman's proposed class. *See, e.g., Forsyth v. HP Inc.*, 2021 WL 1391501, at *3 (N.D. Cal. Apr. 13, 2021) (certifying nationwide ADEA classes of individuals over the age of 40 who were terminated by the same company). Additionally, Zeman proposes that the notices and opt-in consent forms be sent via

First Class Mail, e-mail and text message to all members of the proposed collective. Courts routinely authorize the issuance of notice by e-mail in addition to First Class Mail when requested. *See, e.g.*, *Kincheloe*, 2021 WL 2322322 at *4 (authorizing issuance of notice to ADEA collective by mail and email). And a number of courts in the Ninth Circuit, including this Court, have in recent years recognized that notice by text message is an appropriate and effective way of informing putative plaintiffs of their right to opt-in to a FLSA collective, especially when potential opt-in plaintiffs are geographically dispersed. *See, e.g.*, *Basham v. Tailored Living Choices, LLC*, 2024 WL 665189, at *7 (N.D. Cal. Feb. 16, 2024) (authorizing the issuance of notice "via mail, email, text message, and a website"); *Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, at *12 (N.D. Cal. Dec. 14, 2020) ("Plaintiffs shall . . . send the Notice and opt-in form to all individuals on the collective action list via first-class mail, email, and text message within seven days of receipt by Plaintiffs of the contact information from Defendants.") *Greene v Omni Limousine, Inc.*, 2019 WL 2503950, at *6 (D. Nev. June 15, 2019) ("As the Court has done in other cases, Plaintiffs are permitted to distribute the Notices through US mail, email, and text message."). As this Court has previously observed, "[u]sing multiple media to notify potential opt-in members is not overly intrusive but enhances the chances of reaching those individuals." *Litvinova v. City & Cnty. of San Francisco*, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019).

To facilitate efficient and effective notice, Zeman requests that the Court order Twitter to produce the names, last known mailing and email addresses, and telephone numbers for all potential opt-in plaintiffs. Courts granting conditional certification routinely order defendants to produce this information to facilitate notice to potential collective action members. *See, e.g.*, *Santiago v. Amdocs, Inc.*, 2012 WL 2343626, at *3 (N.D. Cal. June 20, 2012) ("In order to effectuate notice, defendant is ordered to produce forthwith to plaintiffs' counsel the names, last known residential addresses, alternate addresses, e-mail addresses, and all telephone numbers of th[e] [putative] collective action members."). Once Twitter has produced these names and contact information, and notices have been mailed, the collective action members should have a 90-day window to return a signed consent form, which is common in collective actions. *See, e.g.*,

*Coates v. Farmers Grp., Inc.*, 2015 WL 8477918, at *13 (N.D. Cal. Dec. 9, 2015) ("The Court approves the requested 90 day opt-in period."); *Otey v. CrowdFlower, Inc.*, 2013 WL 4552493, at *5 (N.D. Cal. Aug. 27, 2013) ("The Court finds that the proposed notice and consent form provide putative class members with sufficient information about their rights and obligations, and that the 90–day opt-in period is reasonable given the size of the class."); *Adams v. Inter–Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007) (finding 90–day deadline to be appropriate in light of the number of potential plaintiffs). Finally, Zeman seeks leave to send a reminder notice to collective action members halfway through the opt-in period, as is customary in this context. *See, e.g.*, *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (authorizing reminder notice and noting that "[Defendant] contends that sending the postcard reminder notice after the class notice is harassing. The Court does not agree.").

**IV.    CONCLUSION**

For the foregoing reasons, the Court should conditionally certify and authorize the issuance of notice to the proposed collective in this case, which is defined as all employees across the United States age fifty (50) or older who lost their jobs at Twitter following Elon Musk's acquisition of the company.[1]

---

[1]    Plaintiff recognizes that claims have been filed by a number of employees against Twitter. Plaintiff's counsel already represents approximately 2,000 employees individually who were laid off from Twitter following Elon Musk's acquisition of the company. Plaintiff would exclude from the notice any employees his counsel already represents. Also, several other firms are also representing Twitter employees in connection with these layoffs. Plaintiff would also exclude from the notice those employees already represented by other counsel. However, Plaintiff's counsel understands that there are many employees who could be members of the collective who are not represented by counsel.

Dated: June 7, 2024                    Respectfully submitted,

                                       JOHN ZEMAN, on behalf of himself and all others
                                       similarly situated,

                                       By his attorneys,

                                        /s/ Shannon Liss-Riordan
                                       Shannon Liss-Riordan, SBN 310719
                                       Thomas Fowler (*pro hac vice forthcoming*)
                                       LICHTEN & LISS-RIORDAN, P.C.
                                       729 Boylston Street, Suite 2000
                                       Boston, MA 02116
                                       (617) 994-5800
                                       Email:  sliss@llrlaw.com; tfowler@llrlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, a true and accurate copy of the foregoing document was filed via this Court's CM/ECF system.

                                       /s/ Shannon Liss-Riordan
                                       Shannon Liss-Riordan