MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Roshni C. Kapoor, Bar No. 310612
roshni.kapoor@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Jonathan D. Lotsoff, (*pro hac vice* forthcoming)
jonathan.lotsoff@morganlewis.com
110 North Wacker Drive, 29th Floor
Chicago, IL 60606-1511
Tel:    +1.312.324.1000
Fax:    +1.312.324.1001

MORGAN, LEWIS & BOCKIUS LLP
Carolyn M. Corcoran, (*pro hac vice*)
carolyn.corcoran@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Tel:    +1.212.309.6000
Fax:    +1.212.309.6001

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN ZEMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.<br><br>Defendants. | Case No. 3:23-cv-01786-SI<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**<br><br>Hearing Date: August 16, 2024<br>Courtroom: Courtroom 1 – 17th Floor<br>Judge:  Hon. Susan Illston |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | PROCEDURAL BACKGROUND AND DISCOVERY STATUS | | 2 |
| III. | FACTUAL BACKGROUND | | 2 |
| | A. | The November 4 RIF | 2 |
| | B. | The Twitter 2.0 Opt-Outs | 3 |
| | C. | The Subsequent RIFs, Terminations, and Resignations | 4 |
| | D. | Individual Employee Agreements. | 4 |
| | | 1. Severance and Release Agreements | 4 |
| | | 2. Arbitration Agreements | 4 |
| IV. | LEGAL STANDARD | | 4 |
| V. | ARGUMENT | | 6 |
| | A. | Plaintiff Has Not Shown A Single Unlawful Decision, Policy, or Plan. | 6 |
| | B. | Plaintiff Lacks Any Substantial Allegations That Meet His Burden. | 9 |
| | | 1. The FAC's Conclusory and Contradictory Claims Refute Centralized Decisions | 10 |
| | | 2. Plaintiff's Allegations Regarding Dr. Killingsworth and Musk Also Fall Short. | 12 |
| | | a. Plaintiff's Statistics Simply Assume, Not Prove, Similarly Situated Status. | 12 |
| | | b. Musk's One-Word "Approval" Email Is Not Centralized Decision-Making. | 14 |
| | | c. Musk's Interview Regarding "Human Longevity" is Irrelevant and Unbiased. | 15 |
| | | d. Musk's Testimony About "Disparate Impact" Studies Also Is Irrelevant. | 16 |
| | | e. Plaintiff's Declaration and the FAC's Allegations About Him Are Insufficient. | 17 |
| | C. | Should the Court Be Inclined To Grant Plaintiff's Motion (It Should Not), Any Certification Should Be Narrow and the Notice Revised. | 19 |
| | | 1. If the Court Grants Conditional Certification, It Should Narrow the Collective. | 19 |
| | | 2. The Court Should Not Require Production of Contact Information to Plaintiff. | 22 |
| | | 3. The Notice is Defective and Must Be Modified After the Parties Meet and Confer. | 22 |
| VI. | CONCLUSION | | 25 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. General Electric Co.*,
   1996 WL 663889 (N.D.N.Y. Nov. 4, 1996) ................................................................. 8

*Aguilo v. Vails Gate Cleaners Inc.*,
   2020 WL 3545558 (S.D.N.Y. June 30, 2020)............................................................. 24

*Bakhtiar v. Info. Res., Inc.*,
   2018 WL 3585057 (N.D. Cal. July 26, 2018) ............................................................. 23

*Barber v. Human Contract, LLC*,
   2009 WL 10673170 (C.D. Cal. Dec. 11, 2009) .......................................................... 24

*Basham v. Tailored Living Choices, LLC*,
   2024 WL 665189 (N.D. Cal. Feb. 16, 2024)............................................................... 23

*Behr v. AADG, Inc.*,
   136 F. Supp. 3d 1012 (N.D. Iowa 2015) ...................................................................... 8

*Bigger v. Facebook, Inc.*,
   947 F.3d 1043 (7th Cir. 2020)................................................................................... 21

*Campbell v. City of L.A.*,
   903 F.3d 1090 (9th Cir. 2018)............................................................................. 4, 18

*Carlstrom v. DecisionOne Corp.*,
   217 F.R.D. 514 (D. Mont. 2003)................................................................................ 22

*Clark v. A&L Homecare & Training Ctr., LLC*,
   68 F.4th 1003 (6th Cir. 2023)...................................................................................... 5

*Desio v. Russell Rd. Food & Beverage, LLC*,
   2017 WL 4349220 (D. Nev. Sept. 29, 2017) ........................................................ 24, 25

*Droesch v. Wells Fargo Bank, N.A.*,
   2021 WL 2805604 (N.D. Cal. July 6, 2021).............................................................. 21

*EEOC v. Bloomberg L.P.*,
   778 F. Supp. 2d 458 (S.D.N.Y. 2011)........................................................................ 15

*Estorga v. Santa Clara Valley Transp. Auth.*,
   2017 WL 2604665 (N.D. Cal. June 15, 2017) ........................................................... 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Flores v. Velocity Exp., Inc.*,
    2013 WL 2468362 (N.D. Cal. June 7, 2013) ........................................................ 24

*Forsyth v. HP Inc.*,
    2021 WL 1391501 (N.D. Cal. Apr. 13, 2021) ........................................................ 23

*Francisco v. Emeritus Corp.*,
    2017 WL 11036693 (C.D. Cal. Sept. 5, 2017) ....................................................... 23

*Geiger v. Charter Commc'ns*,
    2019 WL 8105374 (C.D. Cal. Sept. 9, 2019) ........................................................ 21

*Greene v. Omni Limousine, Inc.*,
    2019 WL 2503950 (D. Nev. June 15, 2019) ........................................... 23, 24, 25

*Heath v. Google, Inc.*,
    215 F. Supp. 3d 844 (N.D. Cal. Oct. 5, 2016) ............................................. *passim*

*Herrera v. EOS IT Mgmt. Sols., Inc.*,
    2020 WL 7342709 (N.D. Cal. Dec. 14, 2020) ....................................................... 23

*Hoffman-La Roche v. Sperling*,
    493 U.S. 165 (1989) ............................................................................................... 4

*Jones v. Nat'l Council of YMCA*,
    34 F. Supp. 3d 896 (N.D. Ill. 2014) .................................................................... 14

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) ................................................................................ 21

*Karl v. Zimmer Biomet Holdings, Inc.*,
    2019 WL 2775567 (N.D. Cal. July 2, 2019) ................................................... 22, 24

*Kincheloe v. Am. Airlines, Inc.*,
    2021 WL 2322322 (N.D. Cal. June 7, 2021) ........................................................ 23

*Labrie v. UPS Supply Chain Sol., Inc.*,
    2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ................................................... 24, 25

*Magana-Munoz v. W. Coast Berry Farms, LLC*,
    2020 WL 3869188 (N.D. Cal. July 9, 2020) ........................................................ 25

*Martinez v. Money Source, Inc.*,
    2020 WL 5289851 (C.D. Cal. June 9, 2020) ........................................... 11, 13, 18

*Ortiz v. Amazon.com LLC*,
    2018 WL 8222344 (N.D. Cal. Jan. 12, 2018) ......................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

*Paige v. California*,
    233 F. App'x 646 (9th Cir. 2007) ........................................................................ 13

*Parks v. Eastwood Ins. Servs., Inc.*,
    2002 WL 34370244 (C.D. Cal. July 29, 2002) ............................................... 22, 24

*Phillips v. Cty. of Riverside*,
    2020 WL 11595874 (C.D. Cal. Mar. 2, 2020) ....................................................... 22

*Rabin v. PricewaterhouseCoopers LLP*,
    2018 WL 3585143 (N.D. Cal. July 26, 2018) ......................................... 10, 18, 19

*Rabin v. PricewaterhouseCoopers LLP*,
    2019 WL 9078785 (N.D. Cal. Apr. 5, 2019) ......................................................... 18

*Rawat v. Navistar Int'l Corp.*,
    2011 WL 222131 (N.D. Ill. Jan. 20, 2011) .......................................................... 22

*Ribota v. Cnty. of San Bernardino*,
    2021 WL 9696288 (C.D. Cal. Nov. 18, 2021) .............................................. *passim*

*Rode v. Creative Env'ts Design & Landscape Inc.*,
    2022 WL 1567918 (D. Ariz. Jan. 25, 2022) ........................................ 5, 11, 14, 18

*Rodolico v. Unisys Corp.*,
    199 F.R.D. 468 (E.D.N.Y. 2001) .......................................................................... 8

*Romero v. Flaum Appetizing Corp.*,
    2011 WL 812157 (S.D.N.Y. Mar. 1, 2011) .......................................................... 22

*Rusis v. Int'l Bus. Mach. Corp.*,
    2020 WL 1151322 (S.D.N.Y. Mar. 10, 2020 .............................................. *passim*

*Russo v. Joamar, Inc.*,
    2021 WL 4773185 (C.D. Cal. Mar. 8, 2021) ................................................. 22, 23

*Sablowsky v. Auto-Chlor Sys., LLC*,
    2024 WL 1836505 (N.D. Cal. Apr. 26, 2024) ...................................................... 23

*Sandbergen v. Ace Am. Ins. Co.*,
    2019 WL 13203944 (N.D. Cal. June 17, 2019) .................................................... 21

*Santiago v. Amdocs, Inc.*,
    2012 WL 2343626 (N.D. Cal. June 20, 2012) ..................................................... 23

*Shaia v. Harvest Mgmt. Sub LLC*,
    306 F.R.D. 268 (N.D. Cal. Apr. 13, 2015) .......................................................... 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

*Swales v. KLLM Transp. Servs., L.L.C.*,
    985 F.3d 430 (5th Cir. 2021) ......................................................................... 5

*Syed v. M-I, LLC*,
    2014 WL 6685966 (E.D. Cal. Nov. 26, 2014) ....................................... 22

*Trinh v. JP Morgan Chase & Co.*,
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ................................. 5, 11

*Villarreal v. Caremark LLC*,
    66 F. Supp. 3d 1184 (D. Ariz. 2014) ........................................... 23, 25

*Walterscheid v. City of El Monte*,
    2018 WL 6321645 (C.D. Cal. Sept. 6, 2018) ............................... 23, 25

*Wilhoit v. AstraZeneca Pharm. LP*,
    2024 WL 2843169 (D. Del. June 5, 2024) ................................... *passim*

*Wilkerson v. Martin Marietta Corp.*,
    875 F. Supp. 1456 (D. Colo. 1995) ..................................................... 8

*Witteman v. Wisconsin Bell, Inc.*,
    2010 WL 446033 (W.D. Wis. Feb. 2, 2010) ....................................... 23

**Statutes**

29 U.S.C. § 216(b) .......................................................................................... 5

Age Discrimination in Employment Act of 1967 ("ADEA"),
    29 U.S.C. § 621 *et seq* ......................................................... *passim*

29 U.S.C. § 623(a) ....................................................................................... 20

New York State Human Rights Law ("NYSHRL"),
    N.Y. Exec § 296 ................................................................................ 2

**Other Authorities**

*Questions and Answers on EEOC Final Rule on Disparate Impact and
    "Reasonable Factors Other Than Age" Under the Age Discrimination in
    Employment Act of 1967* ........................................................... 17

v

## I.  INTRODUCTION

In his Motion to Certify a Collective Action ("Motion"), Plaintiff John Zeman asks the Court to conditionally certify a collective action of "[a]ll Twitter employees across the United States age fifty (50) or older who have lost their jobs since Elon Musk acquired the company" in late October 2022, except for individuals already represented by counsel.  Mot. at 1, 10 & n.1. This proposed collective sweeps up every employee terminated for any reason in the 20 months since Elon Musk's acquisition, including those impacted by the November 4, 2022 reduction in force ("November 4 RIF"), subsequent RIFs, performance terminations, and for-cause terminations.[1]  Plaintiff's Motion falls well short of the burden that he must meet to warrant conditional certification because his speculative allegations and scant evidence do not show that he and members of the proposed collective were together the victims of a single decision, policy, or plan that violates the law, and that he is similarly situated to those he seeks to represent.

Despite the fact that discovery is advanced, Plaintiff supports his Motion only with (i) a series of conclusory and even contradictory allegations in the FAC, (ii) his own threadbare declaration that says nothing about the experiences of any other older employees, any ageist comment or treatment, or any comparable younger employee who was treated more favorably, (iii) a one-word email from Elon Musk approving the gross financial impact of the November 4 RIF, along with irrelevant testimony from Musk about potential disparate impact studies; and (iv) allegations about a purported statistical analysis conducted by Dr. Killingsworth that assumes rather than proves that Plaintiff and everyone in the November 4 RIF are similarly situated.

Plaintiff's paltry showing misses its mark by a wide margin.  He offers no allegation or evidence that suggests he and other members of the proposed collective were subject to a common set of decision-makers or selection criteria.  In fact, the FAC itself acknowledges that scores of decision-makers were involved with the November 4 RIF and that engineers and non-engineers (like Plaintiff) were not subject to the same selection criteria.  What is more, Plaintiff's entire department (Communications) was eliminated during the November 4 RIF, so he obviously

---

[1] These involuntary terminations do not include employees who voluntarily chose to resign from their employment—employees whom Plaintiff concedes are not part of his putative collective and who should be excluded in any event, as discussed below.  *See infra* § V.C.1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1   has nothing in common with employees in other areas of the company who were subject to

2   various processes used by various other decision-makers for selecting who would and would not

3   be laid off in the November 4 RIF.  Nor does he have anything in common with employees who

4   were terminated or laid off in the 20 months after the November 4 RIF.

5          The Court should therefore deny the Motion in its entirety.  If the Court decides to

6   conditionally certify a collective, which on this record it certainly should not, the scope of the

7   collective should be substantially narrowed, and the Parties should be ordered to meet and confer

8   on a proper form of notice.

9   **II.     PROCEDURAL BACKGROUND AND DISCOVERY STATUS**

10         On April 13, 2023, Plaintiff filed a Class Action Complaint alleging age discrimination

11  under the ADEA, 29 U.S.C. § 621 and NYSHRL, N.Y. Exec § 296, on behalf of Plaintiff and a

12  putative class and collective of employees age 50 and over.  ECF No. 1 at pp. 7-8.

13         On August 29, 2023, this Court granted in part and denied in part X's motion to dismiss

14  the Complaint.  ECF No. 41.  Plaintiff filed his First Amended Complaint ("FAC") on January

15  31, 2024.  ECF No. 50.  X then filed a Motion to Dismiss the FAC, which the Court denied.  ECF

16  No. 62.  On May 2, 2024, X answered the FAC.  ECF No. 63.

17         The Parties have exchanged initial disclosures and agreed to permit the use of discovery

18  jointly across the many pending arbitrations and lawsuits.  *See* Mot. at 10 n.1 ("Plaintiff's counsel

19  already represents approximately 2,000 employees individually"); Declaration of Brian D. Berry

20  ("Berry Decl."), ¶ 2.  To date, Plaintiff's counsel has taken more than 10 depositions, and X has

21  produced over 12,000 documents.  Berry Decl., ¶ 2.

22  **III.    FACTUAL BACKGROUND**

23         **A.      The November 4 RIF**

24         At the time of the acquisition in late October 2022, Twitter faced financial peril and its

25  continued survival required drastic cost-saving measures, including large-scale layoffs.  Berry

26  Decl., Ex. 1 (E. Musk Dep. 22:6-26:6).  Even before the acquisition, Twitter had planned to layoff

27  approximately 16% of the workforce as a matter of financial necessity, but placed its layoff plans

28  on hold pending the acquisition.  *Id.*, Ex. 4 (Hayes Dep. 37:18-20, 53:17-57:14).  With the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1  acquisition completed on October 27, 2022, numerous managers and consultants quickly assessed

2  the company's essential operational needs and planned reductions accordingly.  *Id.*, Ex. 1 (E.

3  Musk 22:6-27:8).

4  On November 4, Twitter laid off over half of the U.S. workforce.  FAC ¶ 18.  A large

5  number of managers who were knowledgeable about their respective departments and employees,

6  and consultants who were knowledgeable about certain employee functions (e.g., software

7  engineering), were tasked with reviewing employees to make layoff selections, and did so without

8  any common decision-making process or criteria.  FAC ¶ 19; Berry Decl., Ex. 1 (E. Musk Dep.

9  26:7-15, 28:24-31:7, 32:7-33:7), Ex. 2 (Conti Dep. 8:11-17, 108:11-109:3,), Ex. 3 (J. Musk,

10  152:2-15, 155:22-156:3), Ex. 4 (Hayes Dep. 37:18-20, 83:24-84:12), Ex. 5 (Perzyk Dep. 12:23-

11  24, 91:17-92:21).  For example, Plaintiff alleges that more than 50 people evaluated engineers

12  based on a software "code review" that did not apply to non-engineers (including Plaintiff).  FAC

13  ¶ 22 (citing article that Twitter assembled "more than 50" employees, mostly software engineers,

14  from Tesla and other companies to conduct code reviews of Twitter's software engineers).  By

15  contrast, Plaintiff's entire 32-person Communications department was eliminated on November

16  4—irrespective of age.  FAC 6; Declaration of Lauren Wegman ("Wegman Decl.") ¶ 3.  Plaintiff

17  was the only person in the department age 50 or over.  Wegman Decl. ¶ 3.  One employee was 45

18  years old; one employee was 41 years old; one employee was 40 years old; and the other 28

19  employees were under the age of 40.  *Id.*[2]

20  **B.    The Twitter 2.0 Opt-Outs**

21  On November 16, 2022, all Twitter employees received an email from Elon Musk with

22  the subject matter "Fork in the Road."  The email stated that to build a "breakthrough Twitter 2.0

23  and succeed in an increasingly competitive world," Twitter would need to become more

24  engineering-driven and its employees would need to deliver exceptional performance.  Berry

25  Decl., Ex. 1 (E. Musk Dep. 146:22-147:24).  Those who wanted to "be part of the new Twitter"

26  could so indicate by clicking "yes," and those who did not elect to remain with the company

27

28  [2] Plaintiff or his expert could have addressed these facts in his Motion because X produced this
data to Plaintiff seven months ago.  Berry Decl., ¶ 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

would receive three months of severance pay.  *Id.*  Hundreds of employees chose to opt-out, but the majority of employees chose to remain at the company.  Wegman Decl. ¶ 4.

### C.   The Subsequent RIFs, Terminations, and Resignations

Besides the November 4 RIF and the Twitter 2.0 Opt-Outs, in the 20 months since the acquisition, numerous employees have separated due to subsequent smaller RIFs, terminations for cause, performance terminations, and voluntary resignations.  Wegman Decl. ¶ 5.

### D.   Individual Employee Agreements.

#### 1.   Severance and Release Agreements

Following the acquisition, X offered some former employees severance packages in exchange for a release of claims.  Many employees, including some putative collective members, accepted the offer and voluntarily released their claims in exchange for payment.  Wegman Decl. ¶ 6.

#### 2.   Arbitration Agreements

Most employees whose employment terminated since October 2022 are bound by a dispute resolution agreement ("DRA") with X, pursuant to which they must arbitrate any employment-related dispute.  Wegman Decl. ¶ 7.  Some employees, like Plaintiff, can pursue claims in court because they were never offered the DRA or they opted-out of it.  *Id.*

## IV.   LEGAL STANDARD

The ADEA authorizes an employee to bring a collective action on behalf of himself and others who are "similarly situated."  29 U.S.C. § 621 *et seq*; *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 167 (1989).  A plaintiff is considered "similarly situated" to others only to the extent that they share "a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution."  *Campbell v. City of L.A.*, 903 F.3d 1090, 1115 (9th Cir. 2018).

At the conditional certification phase,[3] the plaintiff bears the burden of showing that (i) he "and potential plaintiffs were subject to a common policy or plan that violated the law," and

---

[3] There is a Circuit split regarding the proper standard for collective treatment under the FLSA and ADEA.  The Fifth and Sixth Circuits have recently rejected the two-step process adopted by the Ninth Circuit.  *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1    (ii) "there is some factual basis beyond the mere averments in [her] complaint" that she is

2    similarly situated to others in the proposed collective.  *Ribota v. Cnty. of San Bernardino*, 2021

3    WL 9696288, at *3 (C.D. Cal. Nov. 18, 2021); *Ortiz v. Amazon.com LLC*, 2018 WL 8222344, at

4    *2 (N.D. Cal. Jan. 12, 2018) (citation omitted).  A plaintiff does not meet her burden with

5    "unsupported assertions of widespread violations."  *Rode v. Creative Env'ts Design & Landscape*

6    *Inc*., 2022 WL 1567918, at *2 (D. Ariz. Jan. 25, 2022) (denying conditional certification); *see*

7    *Ribota*, 2021 WL 9696288, at *3 (while "conditional certification requires only minimal

8    evidence, a plaintiff must still submit *some* evidence demonstrating that they are similarly

9    situated to the class."); *Trinh v. JP Morgan Chase & Co*., 2008 WL 1860161, at *4 (S.D. Cal.

10   Apr. 22, 2008) (denying conditional certification where "Plaintiffs provide no real evidence,

11   beyond their own speculative beliefs"); *Heath v. Google, Inc*., 215 F. Supp. 3d 844, 851 (N.D.

12   Cal. Oct. 5, 2016) ("[u]nsupported allegations of [ADEA] violations are not sufficient to meet the

13   plaintiffs' burden.") (citation omitted).

14        Importantly, as another court in this District recognized in denying conditional

15   certification of a broad collective based on sweeping age-discrimination allegations, "[a]lthough

16   the standard for conditional certification at the notice-stage is lenient, there is a standard."  *Heath*,

17   215 F. Supp. 3d at 856.  Particularly in such circumstances, it is imperative that a plaintiff's

18   "substantial allegations" are sufficient to support the scope of the proposed collective, and courts

19   may use their common sense in determining that the substance of a plaintiff's allegations simply

20   cannot support the weight of the proposed collective:

21             Heath's vast class would include every individual applicant over the age of
               40 without regard to their qualifications, including, for example, a lawyer
22             applying for a software engineer position. *Common sense dictates* that
               Google would have rejected those individuals based on their lack of
23             qualifications, not their age.

24   _____

25   Cir. 2023); *Swales v. KLLM Transp. Servs., L.L.C*., 985 F.3d 430, 434 (5th Cir. 2021).  As
     detailed in *Swales* and *Clark*, the FLSA makes no mention of "conditional" certification or a
26   reduced burden, but rather mandates that plaintiff(s) may sue only "for and [o]n behalf of himself
     or themselves and other employees similarly situated," *i.e.*, actually "similarly situated."  *See* 29
27   U.S.C. § 216(b); *Swales*, 985 F.3d at 434; *Clark*, 68 F.4th at 1007.  While X addresses the Ninth
     Circuit's conditional certification standard in this brief, which Plaintiff plainly does not meet, X
28   respectfully reserves for appeal that the standard is erroneous and that the standard adopted by the
     Fifth and Sixth circuits is correct.

*Id.* at 857 (emphasis added).  Other cases involving broad proposed ADEA collectives encompassing companywide RIFs recognize the same principles.  *See Wilhoit v. AstraZeneca Pharm. LP*, 2024 WL 2843169, at *8 (D. Del. June 5, 2024) ("because Plaintiffs seek to certify a broad collective of nationwide employees or applicants," they must show "'that Defendant's discriminatory policies infected all its termination and hiring decisions, regardless of the circumstances of the termination or rejection.'"); *Rusis v. Int'l Bus. Mach. Corp.*, 2020 WL 1151322, at *2 (S.D.N.Y. Mar. 10, 2020) (where "Plaintiffs propose a nationwide collective encompassing all former employees over the age of forty who left IBM after July 2017," they must show "that a discriminatory nationwide policy or plan infected all of IBM's employment separation decisions, regardless of the context or circumstances of separation.").

## V.   ARGUMENT

### A.   Plaintiff Has Not Shown A Single Unlawful Decision, Policy, or Plan.

Plaintiff fails to meet his burden of showing that the November 4 RIF decisions—let alone all post-acquisition layoffs and terminations—were the product of a single decision, policy, or plan, much less one that is unlawful.  He does not even make a genuine effort to identify a common decision, policy, or plan.  Instead, he contends that a RIF constitutes a common decision, policy, or plan as a matter of law, and thus that he is "generally comparable" to all collective members simply because they all were "laid off by Twitter as part of the RIF."  Mot. at 5:22-24, 7:9-12;[4] *see also id.* at 5:21-6:12.  No authority supports this contention.

Plaintiff assumes that *every* RIF automatically constitutes a single decision, policy, or plan for purposes of conditional certification, but no law supports that assumption.  And Plaintiff's allegations of systemic age bias—whether within or across RIFs—are unsupported and even counterintuitive, particularly given he was a manager in the Communications department and ***the entire Communications department was eliminated on November 4*** while certain other departments had selective layoffs.  Wegman Decl. ¶ 3; *see Heath*, 215 F. Supp. 3d at 857 (in

---

[4] Notably, Plaintiff's proposed collective is not even limited to "the RIF" on November 4 to which he was subject.  Rather, Plaintiff includes all post-acquisition terminations in his proposed collective, whether they were part of the November 4 RIF or not.  *See supra* § I (citing Mot. at 1, 10 & n.1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

denying broad collective of applicants, explaining that "[c]ommon sense dictates that Google would have rejected those individuals based on their lack of qualifications.").

Consistent with these principles, the court in *Wilhoit* denied conditional certification of an ADEA collective in a RIF case, explaining:

> *Where a plaintiff makes 'no showing*, beyond conjecture and the individual affiants' beliefs, *that a unifying scheme [ ] links the potential members* of the collective to one another despite vast differences in their jobs, locations, and circumstances surrounding their departure from [the company],' this lenient standard is not satisfied. Thus, without a showing beyond Plaintiffs' belief that AstraZeneca may have adopted a company-wide policy or plan to lower the age of its employees, the Court, like Magistrate Judge Fallon, finds that '*the collective Plaintiffs seek to establish is ... incapable of meeting even the lenient evidentiary burden for issuing notice*' to the proposed collective.'

2024 WL 2843169, at *8 (citations omitted; emphasis added).

Likewise, the court in *Rusis* denied conditional certification of an ADEA collective of thousands of laid off "former employees over the age of forty who left IBM after July 2017." 2020 WL 1151322, at *2-3.  It found that the proposed collective "might contain within it one or even several groups of former employees who are similarly situated to each other, but Plaintiffs have not met their burden of tying all former employees who are in their proposed collective *to a common policy or plan.*"  *Id*. (emphasis added).  The court did so despite a robust record that included fifteen declarations each describing "a particular incident of alleged age discrimination at a different location, division, seniority level, and job function at IBM," as well as an executive's declaration that, while detailed, averred personal knowledge only as to "a tiny fraction of IBM's business; her affidavit simply does not support nationwide certification." *Id.* at *3-4.  The court further noted: "it would also appear that the actual decision makers behind the various alleged acts of discrimination are all different." *Id*.  Here, Plaintiff's proposed collective is at least as diverse, and his evidence and allegations are meager by comparison.

Plaintiff's own cases prove the same point.  In *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001), "all of the plaintiffs were **laid off on the same date** as a result of the **same RIF**.  In addition, the employees all come from the **same plant**, and all performed the **same basic job**, engineering."  (emphasis added).  The plaintiff also "put forth credible evidence" of actual bias, including comments by senior decisionmakers such as "My God, there are a lot of old

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1    people in this department," "younger people are easier to train," and "layoffs were a 'good way to

2    get rid of the older guys'." *Id.* at 475, 483.

3         Similarly, *Abrams v. General Electric Co*. involved a RIF where "division and department

4    managers utilized *a uniform GE human resources lay off procedure*" according to which

5    employees were assigned a numerical rank and the "employees with the lowest score were

6    selected for layoff."  1996 WL 663889, at *1-2 (N.D.N.Y. Nov. 4, 1996) (emphasis added).  And

7    *Behr v. AADG, Inc.* involved a layoff of 14 employees, 13 of whom were over 40 and replaced by

8    younger employees, and "all of [whom], despite having a variety of positions, were discharged

9    from the *same plant at the same time, as part of the same RIF plan*."  136 F. Supp. 3d 1012,

10   1019-20 (N.D. Iowa 2015) (emphasis added).[5]  Thus, Plaintiff's authorities show only that

11   conditional certification is proper when a RIF involves employees who are similarly situated with

12   respect to a single policy, plan or decision underling the RIF—not that all RIFs necessarily are

13   suited for conditional certification.

14        Nor does Plaintiff find support in the non-RIF cases he cites.  In *Heath*, a hiring case, the

15   court declined to conditionally certify one named plaintiff's proposed ADEA collective of all

16   older applicants who were rejected for engineering positions at any stage in the application

17   process, despite allegations that all applicants were similarly situated because they were all

18   subject to Google's allegedly discriminatory hiring process.  215 F. Supp. 3d at 855-56.  Instead,

19   based on a robust set of declarations and other evidence, the court certified a far narrower

20   collective proposed by the other named plaintiff, limited to applicants who passed a phone screen

21   but were rejected after in-person interviews.  *Id.* at 853-55; *id.* at 856 (collecting cases denying

22   conditional certification).  In *Donofrio v. IKEA US Retail, LLC*, a promotion case, the court

23   conditionally certified an ADEA collective because the plaintiff submitted "evidence that IKEA

24

25   [5] In *Wilkerson v. Martin Marietta Corp*., 875 F. Supp. 1456, 1461 (D. Colo. 1995), the sum total
     of the court's "similarly situated" analysis was: "Here the Plaintiffs have alleged they have been
26   victimized by a pattern or policy of age discrimination which motivated the series of layoffs
     (reduction in force).  Some courts have found this type of allegation alone sufficient."  This
27   cursory conclusion would not survive scrutiny under case law in the Ninth Circuit.  *See supra*
     § IV.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

used 'potential' ratings as a proxy for age-based assessments of promotability," and corporate representative testimony confirming "that IKEA's employment and promotion policies are applicable at IKEA's stores nationwide."  2019 WL 9698597, at *1, *3-4 (E.D. Pa. May 16, 2019).

At bottom, Plaintiff does not get a free pass at this stage simply by invoking the notion of a RIF—especially when he uses the term "RIF" vaguely to cover every employee terminated for any reason over the last 20 months, including for-cause and performance terminations.  Plaintiff must make *other* substantial allegations showing both a single unlawful decision, policy, or plan, and one that applied to him and all collective members, rendering them similarly situated.   As explained below, Plaintiff has not done so here.

### B.    Plaintiff Lacks Any Substantial Allegations That Meet His Burden.

Plaintiff's counsel has taken more than 10 depositions and received over 12,000 documents from X.  Berry Decl. ¶ 2.  Yet Plaintiff supports his Motion only with conclusory and self-contradictory allegations from the FAC, his own cursory declaration, a one-word email giving high-level financial approval of the November 4 RIF after the selections were made, and irrelevant deposition testimony from Elon Musk.  This paucity of support after substantial discovery is telling in itself.  *See Ribota*, 2021 WL 9696288, at *3 (finding that absence of substantial allegations despite discovery weighs against conditional certification).

Taken together, Plaintiff's allegations and evidence do not come close to satisfying his burden of establishing *both* a single unlawful decision, plan or policy, *and* a similarly situated cohort of other employees impacted thereby.  *See Ribota*, 2021 WL 9696288, at *3 ("Plaintiffs must do more than identify an allegedly illegal … scheme that EW workers were subject to — Plaintiffs must submit evidence demonstrating that other EW workers were subject to the same scheme."); *Rabin v. PricewaterhouseCoopers LLP*, 2018 WL 3585143, at *4-5 (N.D. Cal. July 26, 2018) (denying conditional certification, despite finding that "that Plaintiffs have adequately shown a uniform decision, policy, or plan," where they did not sufficiently "show at this stage that they are 'generally comparable to those they seek to represent.'") (citation omitted).

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1.      **The FAC's Conclusory and Contradictory Claims Refute Centralized Decisions.**

According to the FAC, shortly after Musk completed the acquisition in late October 2022, X notified employees of a "mass layoff" on November 4, 2022.  FAC ¶¶ 18, 21.  In an effort to provide some common denominator across employees subject to the November 4 RIF, the FAC alleges in conclusory fashion that a "small group of managers, under close supervision by Musk" made the November 4 RIF decisions.  FAC ¶ 22; Mot. at 2.  It also alleges, again as a pure conclusion, that decision-makers paid little if any regard to employees' job performance, qualifications, experience, and abilities."  FAC ¶¶ 19, 22; Mot. at 2.  Those allegations are insufficient.

As an initial matter, the FAC contradicts its own (conclusory) allegation about common decision-makers.  Although the FAC alleges that a "small group of managers" made the November 4 RIF selections, it cites an article stating that *over 50 people* from non-Twitter companies evaluated engineers—which does not even account for the numerous managers making decisions for non-engineers.  *See* FAC ¶ 22.[6]; *see also supra* § III.A (deposition testimony explaining diffuse decision-making).  Plaintiff cannot satisfy his burden with an allegation that he himself contradicts.  *See Rusis*, 2020 WL 1151322, at *4 (denying conditional certification where, *inter alia*, some declarations submitted by plaintiff "contradict Plaintiffs' position"); *Martinez v. Money Source, Inc.*, 2020 WL 5289851, at *1 (C.D. Cal. June 9, 2020) (denying conditional certification based in part on employer policies submitted by plaintiff, "all of which contradict the allegations of Plaintiff").

/ / /

---

[6] This allegation, as well as the article cited therein (which is thus incorporated by reference into the FAC), confirms the broad array of decisionmakers he alleges.  *See* Lora Kolodny, *Elon Musk has pulled more than 50 Tesla employees into his Twitter takeover*, CNBC (November 1, 2022), https://www.cnbc.com/2022/10/31/elon-musk-has-pulled-more-than-50-tesla-engineers-into-twitter.html (last accessed July 12, 2024) ("New Twitter owner Elon Musk has pulled more than 50 of his trusted Tesla employees, mostly software engineers from the Autopilot team, into his Twitter takeover, CNBC has learned," and reporting on those Tesla employees conducting "code review" of Twitter engineers).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1    In addition, the FAC contains only conclusory allegations of a common set of selection

2  criteria, and indeed asserts a *lack* of selection guidance or criteria.  FAC ¶ 19.  Furthermore, the

3  FAC claims that the selection process for engineers involved interviews and reviews of their

4  software code, *see* FAC ¶ 22,[7] while Plaintiff attests that he (a non-engineer) was not interviewed

5  as part of the November 4 selection process.  ECF No. 69-1 (Zeman Decl.).  Thus, the FAC's

6  allegations belie Plaintiff's assertion that he is similarly situated to all employees who were laid

7  off on November 4.

8    Plaintiff's allegations thus are pure speculation, unsubstantiated by facts, and cannot

9  support conditional certification because "unsupported assertions of widespread violations are not

10  sufficient to meet [a plaintiff's] burden."  *Rode*, 2022 WL 1567918, at *2 (denying conditional

11  certification where plaintiff "merely allege[d]" that he "is personally aware that other employees

12  were not paid the time worked in the yard or for the travel time to and from the job site, regular,

13  or overtime");  *Ribota*, 2021 WL 9696288, at *3 (same, where plaintiffs submitted no evidence as

14  to putative opt-ins and thus failed to "demonstrate[e] that other [] workers were subject to the

15  same scheme");  *Trinh*, 2008 WL 1860161, at *4 (same: "[a]t most, [p]laintiffs' affidavits

16  establish a few similarities in training and compensat[ion] ... Plaintiffs provide no real evidence,

17  beyond their own speculative beliefs[.]");  *Heath*, 215 F. Supp. 3d at 857 (same: "Heath offers no

18  evidence beyond his own speculative beliefs that the absent members of the collective action are

19  similarly situated. Heath does not even provide a single declaration beyond his own.").

20    In sum, the FAC's allegations fall well short of meeting Plaintiff's burden to show that he

21  and other employees who were laid off on November 4 were subject to a single decision, policy,

22  or plan, and the FAC does nothing at all to show that he is similarly situated to *all* employees

23  terminated in the subsequent 20 months.

24  / / /

25  / / /

26

27  ───────────────
[7] According to the Kolodny article that Plaintiff cites (link at FAC ¶ 22): "Musk has authorized
dozens of Autopilot software engineers, and other Tesla employees, to do code reviews and
28  more" and "Tesla employees now at Twitter have been involved in code review…".

### 2. Plaintiff's Allegations Regarding Dr. Killingsworth and Musk Also Fall Short.

Plaintiff makes a host of other allegations regarding Dr. Killingsworth's "analyses" and Elon Musk's purported statements in an effort to show centralized decisions or bias. None suffice.

### a. Plaintiff's Statistics Simply Assume, Not Prove, Similarly Situated Status.

Plaintiff claims he has "presented highly probative evidence" via a "statistical analysis performed by labor economist Dr. Killingsworth." Mot. at 7:20-23. Plaintiff is wrong. To start, discovery is advanced, yet Dr. Killingsworth has produced no report or declaration in this case. There is therefore no statistical "evidence" before the Court—only Plaintiff's allegations about the analysis Dr. Killingsworth allegedly conducted, and with no disclosure whatsoever about the methodological bases for his conclusions. *See Ribota*, 2021 WL 9696288, at *3 (finding the absence of substantial allegations despite discovery weighs against conditional certification).

More importantly, Plaintiff's statistical allegations are irrelevant to the current inquiry because Dr. Killingsworth simply *assumes* that the entire workforce is similarly situated, when that is what Plaintiff must *show* for conditional certification.[8]  In other words, even if the numbers in Dr. Killingsworth's analysis are accurate, they do nothing to meet Plaintiff's burden because they do not even purport to show that members of the proposed collective were subject to a common policy or plan. For example, they simply lump together teams that were eliminated in their entirety with other teams that conducted selective layoffs, without any explanation or analysis about why those groups are similarly situated. *See Martinez*, 2020 WL 5289851, at *2 (denying conditional certification where, "even accepted as true, the allegations do not provide a

---

[8] While not required for the Court's consideration at this stage, it is noteworthy that Dr. Killingsworth admitted under oath at the first arbitration hearing that he has no basis for the type of aggregation that drives his statistical results here, but rather followed counsel's instruction to do the analysis that way. Berry Decl., Ex. 6 (Niemack Day 3 Tr. at 898:3-899:1 (Q: Okay. Whether -- whether you looked at sort of the entire company or a smaller subset of the company, you did not make that decision based on your experience as a labor economist, correct? A: I made that decision because Ms. Liss-Riordan asked me to do that.")).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

non-speculative basis for the Court to infer a collective-wide FLSA violation"); *Wilhoit*, 2024 WL 2843169, at *8 (denying conditional certification where there was "'no showing, beyond conjecture and the individual affiants' beliefs, that a unifying scheme [ ] links the potential members of the collective to one another…"); *Rusis*, 2020 WL 1151322, at *2-3 (same where "Plaintiffs have not met their burden of tying all former employees who are in their proposed collective to a common policy or plan.").

The Court should not consider Plaintiff's alleged "statistics" at this stage because they go to the merits rather than conditional certification factors.  In any event, these aggregated "statistics" for the 50 and older group still measure only 1.936 standard deviations from the normal expected distribution, which is ***not*** statistically significant as a matter of Ninth Circuit law, as X explained in its Motion to Dismiss.  ECF No. 19 at p. 14; *Paige v. California*, 233 F. App'x 646, 648 (9th Cir. 2007) (explaining that "the 1.96 threshold conforms with accepted conventions in the social science field and with the federal government's internal standards," and concluding that the district court "committed clear error by not using the 1.96 mark").[9]  Although this Court credited Plaintiff's statistics under Rules 8 and 12 "at the pleadings stage," ECF No. 41, Plaintiff's burden at this stage is higher even if "lenient," and the lack of statistically significant results underscores that Plaintiff has only his own speculation to support an inference of discrimination.[10]  *See Rode*, 2022 WL 1567918, at *3 ("A standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic.") (citation omitted); *Heath*, 215 F. Supp. 3d at 851, 856 (even if "lenient, there is a standard," and

---

[9] This Court's order on X's Motion to Dismiss the original Complaint observed that the Ninth Circuit has departed from the 1.96 standard deviations threshold "where the facts support doing so."  ECF No. 41 at 10 (citing *Paige*, 233 F. App'x at 648).  X respectfully submits that, in *Paige*, the Ninth Circuit recognized circumstances when applying a "higher threshold" than 1.96 may be appropriate (e.g., to draw an inference of intentional discrimination or when a sample size is too small to draw an inference of statistical significance at the 1.96 level), but it did not recognize circumstances for applying a *lower* threshold, and certainly not in a case such as this in which the record is devoid of evidence of intentionally discriminatory decision-making by the individuals responsible for the layoffs.  *See Paige*, 233 F. App'x at 648.

[10] Plaintiff's allegation that Dr. Killingsworth found a statistically significant result as to 60-and-older employees cannot save his Motion either, both because it still involves unsupported aggregation and because it fails to match the broader 50-and-older collective he seeks to certify.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

"[u]nsupported allegations of [ADEA] violations are not sufficient to meet the plaintiffs' burden.") (citation omitted).

### b. Musk's One-Word "Approval" Email Is Not Centralized Decision-Making.

Contrary to Plaintiff's suggestion, Musk's one-word email response to "[a]pprove" the November 4 RIF does nothing to show centralized decision-making about who would be laid off and who would not. Mot. Ex. C. The entire "proposal" that he approved was "to terminate 3,789 employees on Friday, November 4, 2022 - which represents 51% of the 7,397 population," along with high-level summary cost figures. *Id.* The email contained no information regarding any specific employee or selection decision, much less information about employee ages. Far from showing "close supervision" or control, this email shows, at most, Musk's high-level consideration of the financial consequences of layoff selections already made by others.

Courts recognize that the approval or review of decisions by individual managers does not amount to centralized decision-making. In *Rollins v. Alabama Community College System*, for example, the court refused to conditionally certify a collective under the Equal Pay Act of women paid pursuant to certain salary schedules, despite evidence that the Chancellor played a "limited role" in placing employees on schedules.[11] 2010 WL 4269133, at *6, *11-12 (M.D. Ala. Oct. 25, 2010). Other courts recognize this principle in other contexts. *See, e.g., Jones v. Nat'l Council of YMCA*, 34 F. Supp. 3d 896, 908 (N.D. Ill. 2014) ("The evidence presented by the plaintiffs establishes, at most, that the Y's senior managers exercised some limited corporate oversight of the process or employee evaluations, compensation, and promotions, but that limited oversight did not change the dominant feature of the Y's system, namely reliance on the subjective, discretionary, assessments and recommendations of the direct supervisors and managers of the Y's employees.") (denying Rule 23 class certification); *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 480 (S.D.N.Y. 2011) ("[it is] hardly surprising" that "[i]n a company of over 10,000

---

[11] While the *Rollins* court discussed and rejected these centralized decision-making allegations in the Rule 23 certification portion of its opinion (which the court also denied), its denial of conditional certification of an Equal Pay Act collective later in the same opinion indicates that such limited oversight would not, and did not, bind a collective at that more "lenient" stage either.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

individual employees," "higher-level executives…approved decisions to manage business units with a view toward the company's financial performance") (granting summary judgment on Title VII pattern and practice claims)  Musk's email does nothing to suggest "centralized" decisions.

What is most telling is that, after receiving thousands of documents and taking numerous depositions, Plaintiff presents only this "approval" email—and nothing else—while conveniently ignoring the deposition testimony of numerous witnesses that Musk did *not* exercise centralized control over the RIF selections.  *See, e.g.,* Berry Decl., Ex. 1 (E. Musk Dep. 26:7-15, 28:24-31:7, 32:7-33:7), Ex. 2 (Conti Dep. 8:11-17, 108:11-109:3), Ex. 3 (J. Musk, 152:2-15, 155:22-156:3), Ex. 4 (Hayes Dep. 37:18-20, 83:24-84:12), Ex. 5 (Perzyk Dep. 12:23-24, 91:17-92:21).  It is also common sense that Musk could not have exercised centralized control over the RIF selections that were the product of a "chaotic" process that, in a matter of days, resulted in the selection of thousands of employees for layoff.  FAC ¶ 1, 19; *see also* Berry Decl., Ex. 1 (E. Musk Dep. 33:3-7); *Heath*, 215 F. Supp. 3d at 857 (in denying broad proposed collective of applicants, explaining that "[c]ommon sense dictates that Google would have rejected those individuals based on their lack of qualifications").

### c.  Musk's Interview Regarding "Human Longevity" is Irrelevant and Unbiased.

As the only other allegation of age animus, the Motion refers to the FAC's allegation that in March 2022, months before the October 2022 Twitter acquisition, then age-51 Musk had a media discussion about "declining birthrate" and human "longevity" as possible "threat[s] to the future of civilization."  Berry Decl. Ex. 7 at p. 2; FAC ¶ 24; Mot. at 3:16-20.  Musk allegedly stated that he himself is "not afraid of dying," rejected that "humans should live for longer," and stated that if people "don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them."  *Id.*

Because Plaintiff makes no substantial showing that Musk was a decision-maker, his comment is irrelevant.  *See Wilhoit*, 2024 WL 2843169, at *7 (alleged ageist comments irrelevant to conditional certification where "the FAC does not allege that either employee 'was directly

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

involved in the Wring and termination decisions.'"").  It also does not support an inference of

workplace age bias in any event.  Far more suggestive comments have been found insufficient.

*See Rusis*, 2020 WL 1151322, at *5 (noting in denying conditional certification that "a document

presented at a conference in 2014 titled 'Reinvention in the Age of the Millennial,' contains no

evidence of discrimination in its pronouncements that IBM should 'embrace the "Millennial

mindset."'); *id.* ("correct[ing the] seniority mix" insufficient and plausibly referenced "succession

planning").  Musk's comments also occurred over six months prior to the November 4 RIF and

were not made in the context of any employment decision, rendering them "too remote from the

relevant termination decisions to support Plaintiffs' claims of a discriminatory policy."  *See*

*Wilhoit*, 2024 WL 2843169, at *8 (alleged ageist comments occurring several months apart from

layoffs insufficient to support conditional certification).

### d.   Musk's Testimony About "Disparate Impact" Studies Also Is Irrelevant.

Musk's deposition testimony regarding his views on disparate impact analyses is equally

irrelevant, and Plaintiff offers no explanation for its relevance.[12]  As discussed, Plaintiff lacks

"substantial allegations," much less proof, that Musk made or controlled the challenged decisions.

As such, his testimony does nothing to demonstrate a single decision, policy, or plan.

Consideration of this testimony would also be premature because it relates, at most, to merits

issues involving X's defenses if, and only if, Plaintiff eventually proves a disparate impact down

the road.[13]

/ / /

---

[12] While Defendant also disagrees with Plaintiff's mischaracterization of Musk's testimony, it need not address that issue here because such testimony is entirely irrelevant and unsupportive of his Motion irrespective of its content.

[13] *See Questions and Answers on EEOC Final Rule on Disparate Impact and "Reasonable Factors Other Than Age" Under the Age Discrimination in Employment Act of 1967*, https://www.eeoc.gov/regulations/questions-and-answers-eeoc-final-rule-disparate-impact-and-reasonable-factors-other-age (last accessed July 12, 2024) ("6. When does an employer have to show that its practice was based on an RFOA? An employer would be required to prove the defense only after an employee has identified a specific employment policy or practice, and established that the practice harmed older workers substantially more than younger workers.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

e.     **Plaintiff's Declaration and the FAC's Allegations About Him Are Insufficient.**

Plaintiff's two-page boilerplate declaration and the FAC's allegations about him cannot cure these deficiencies.  ECF No. 69-1 (Zeman Decl.).  They too fail to provide "substantial allegations" either of a single unlawful decision, plan or policy, or of a collective "similarly situated" to him.

Plaintiff avers that he worked for Twitter in New York from April 2011 as a "Senior Manager, Communications," until he was "notified of his layoff" on November 4, 2022, when he was 63 years old.  *Id.* ¶¶ 3, 4, 7, 11.  Neither these allegations, nor his boilerplate assertion that "Twitter's discrimination against employees on the basis of age was willful" (FAC ¶ 34), plausibly shows discrimination against him or any other employee, especially given the elimination of Plaintiff's entire department irrespective of age.  *See Heath*, 215 F. Supp. 3d at 857 (invoking "common sense" in denying conditional certification despite "systemic" allegations); Wegman Decl. ¶ 3  (explaining that the entire 32-person Communications department was eliminated on November 4, including only one employee who was 50 or older (Plaintiff) and three employees who were 40 or older).  Nor does Plaintiffs' declaration or the FAC say anything about any other department or employee, much less say anything that might warrant an inference of "uniform" or "common" age bias across the November 4 RIF or any other terminations.

Plaintiff's boilerplate and conclusory allegations regarding other employees also cannot save his Motion.  *See* FAC ¶ 20 ("Plaintiff (*as well as, on information and belief, other employees over the age of 50 who were laid off*) performed as well as if not better in their jobs than employees under the age of 50 who were not laid off") (emphasis added); *id.* ¶ 36 ("Plaintiff and other employees age fifty (50) and over who have lost their jobs since Elon Musk took control of the company have been injured due to this discrimination."); Mot. Ex. A ¶ 12 ("I am aware of numerous other former Twitter employees who were fifty (50) years old or older and were laid off after Elon Musk purchased the company").

Those generic assertions do not show a single unlawful decision or plan, or a similarly situated cohort of other employees impacted by any putative decision or plan.  As discussed,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

extensive case law holds that unsupported claims cannot support conditional certification.  *See supra* §§ IV, V.A.  Consistent with that principle, courts inside and outside the Ninth Circuit have found similar allegations insufficient at this stage, both in establishing a single unlawful, plan or policy, and in showing that plaintiffs are similarly situated with respect thereto.  *See, e.g.*, *Rode*, 2022 WL 1567918, at *2-3 (allegation that "Plaintiff 'is personally aware that other employees were not paid the time worked in the yard or for the travel time to and from the job site, regular, or overtime'" insufficient); *Martinez*, 2020 WL 5289851, at *3 (generic allegations that plaintiff and the collective "were trained and instructed not to include" certain time on timecards too vague and conclusory "to plausibly infer an unlawful practice"); *Ribota*, 2021 WL 9696288, at *2-3 (conditionally certifying "ESS" employee collective where – unlike here – four plaintiffs submitted declarations providing evidence of overtime practices impacting them, but denying certification of "EW" positions where, like Plaintiff, plaintiffs failed to show how alleged overtime policy impacted EW employees); *Rabin*, 2018 WL 3585143, at *2, *5-6 (denying conditional certification of ADEA applicant collective that included unqualified and deterred applicants to which the plaintiff (a qualified applicant) was not similar);[14] *Wilhoit*, 2024 WL 2843169, at *8 (finding "'no showing, beyond conjecture and the individual affiants' beliefs, that a unifying scheme [ ] links the potential members of the collective to one another…[or] a showing beyond Plaintiffs' belief that AstraZeneca may have adopted a company-wide policy or plan to lower the age of its employees'").

/ / /

---

[14] The plaintiff in *Rabin* subsequently renewed his motion for conditional certification after narrowing the collective to exclude unqualified and deterred applicants that the court had found dissimilar to him.  *Rabin v. PricewaterhouseCoopers LLP*, 2019 WL 9078785 (N.D. Cal. Apr. 5, 2019).  The court granted that motion, which as discussed involved allegations, evidence, and a targeted collective materially different from the one presented by Plaintiff here.  *Id.* at *4-5.  Notably, while the court observed that *Campbell* had "clarified the standards applicable to the 'similarly situated' requirement," it reaffirmed its pre-*Campbell* holding that plaintiff was not sufficiently "comparable" to other collective members whose adverse employment actions plausibly resulted from different considerations than his own.  *See id.* at *4 (finding that due to, *inter alia*, "*Plaintiffs' subsequent revisions to their collective definition to exclude unqualified and deterred applicants*, the Court concludes that the collective Plaintiffs *now* propose is comprised of members who are 'similarly situated' insofar as they share similar issues of law and fact material to their ADEA claims.") (emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1    Because Plaintiff failed to meet his burden on either prong of the conditional certification

2    standard, the Court should deny the Motion.

3        **C.    Should the Court Be Inclined To Grant Plaintiff's Motion (It Should Not), Any Certification Should Be Narrow and the Notice Revised.**

4

5        Because Plaintiff has not met his burden, this Court should deny his Motion and not *sua*

6    *sponte* conditionally certify a narrowed collective.  *See Rabin*, 2018 WL 3585143, at *7

7    ("Because Plaintiffs are not similarly situated to the class they seek to represent, the Court denies

8    the motion to certify the proposed collective.  The Court will not attempt to narrow the Plaintiffs'

9    proposed class to cure the defects the Court identifies in this order."); *Heath*, 215 F. Supp. 3d at

10   858 ("The Court declines to narrow the scope of the proposed class on its own motion.").  If,

11   however, the Court is inclined to grant Plaintiff's Motion to any extent (which it should not), it

12   should (1) only conditionally certify a far narrower collective, (2) limit contact information

13   provision to a third-party administrator and not Plaintiff's counsel, (3) deny notice by text, and (4)

14   modify the notice.

15       **1.    If the Court Grants Conditional Certification, It Should Narrow the Collective.**

16

17       Any conditionally certified collective should be limited to the Communications

18   Department in which Plaintiff worked, and in no event include employees beyond those laid off

19   on November 4.  Plaintiff lacks substantial allegations to include the following employees:

20       <u>**Employees who opted out of Twitter 2.0 or otherwise voluntarily resigned**</u>: Twitter

21   2.0 opt-outs and others who voluntarily resigned at any time should be excluded.  Indeed,

22   Plaintiff's Motion and proposed collective *already exclude* all such employees—Plaintiff makes

23   no mention of "resignations" or "quits," and expressly includes only involuntary terminations.

24   *See* Mot. at 1 (collective includes those who "lost their jobs" and "were separated from the

25   company"); *id.* at 5 (alleging all collective members "were all discriminatorily laid off on the

26   basis of their age"); *id.* at 8 (seeking notices to "all individuals age fifty (50) and older who were

27   terminated by Twitter…").  But the Court's order should make this exclusion clear.  Even if

28   Plaintiff sought to include those who quit or resigned, they should be excluded because voluntary

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1   resignations are not actionable under the ADEA.  *See* 29 U.S.C. § 623(a).  Plaintiff also makes no

2   claim, much less a substantial allegation, of widespread constructive discharges.  Even if he did,

3   the required inquiries into each person's individual motivations and circumstances would render

4   them even more dissimilar to Plaintiff than the involuntary terminations discussed above.  *See*

5   *Rusis*, 2020 WL 1151322, at *3 (rejecting collective involving a "variety of legal theories,

6   including constructive discharge, adverse employment actions, pretextual 'for-cause'

7   terminations, mass layoffs, and retaliation").

8   **Employees impacted in other layoffs**:  As detailed above, Twitter implemented several

9   other layoffs in the months following the November 4 RIF impacting many other employees

10   across the company.  *See supra* § III.B-C.  Plaintiff was not impacted by any other layoff, and he

11   provides no probative evidence or substantial allegations about any other layoff.  *See supra* §

12   V.A-B.

13   **Employees terminated for cause or performance**:  As also discussed, a number of

14   employees were terminated based on other individualized grounds, such as for performance or

15   cause.  *See supra* § III.C.  Plaintiff's own allegations show him to be dissimilar from all such

16   employees, with whom he cannot plausibly share a collective.  *See* ECF No. 69-1, ¶ 5

17   ("Throughout my career at Twitter, my performance consistently met or exceeded the company's

18   expectations for employees in the roles that I held."); *Rusis*, 2020 WL 1151322, at *3-4 (noting in

19   denying conditional certification of ADEA collective that "[t]he decisions referenced by

20   Plaintiffs' affiants alone implicate a variety of legal theories, including constructive discharge,

21   adverse employment actions, pretextual 'for-cause' terminations, mass layoffs, and retaliation,"

22   with "no evidence of a common plan or policy behind IBM's separation decisions"); *Wilhoit*,

23   2024 WL 2843169, at *8 (denying conditional certification of ADEA collective of employees

24   "who suffered adverse employment action—to include termination, were laid off, or applied for

25   an open position and were rejected—while age 40 or older ....") (citations omitted).

26   **Employees who signed DRAs**:  The collective should exclude individuals who signed

27   DRAs.  *See* Wegman Decl. ¶ 7.  They cannot sue and are not similarly situated.  Plaintiff does not

28   dispute the DRA's enforceability, as he already *excludes* from the collective the thousands of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

DRA signers who are represented by counsel in pending arbitrations. Mot. at 10 n.1 (Plaintiff "would exclude . . . from the notice" represented individuals). Unrepresented DRA signers also should be excluded, as notice to arbitration-bound individuals would be "frivolous," *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944, at \*3-4 (N.D. Cal. June 17, 2019), and simply "stir[] up litigation" by functioning as an improper recruitment tool for counsel's mass arbitration campaign against X. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019). The Ninth Circuit has not required notice to arbitration agreement signatories, and other Circuits agree they should be excluded. *See Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604, at \*2-3 (N.D. Cal. July 6, 2021) (recognizing "the Ninth Circuit has not" ruled "whether [] notice should be provided to individuals who signed arbitration agreements" and that "it would make little sense" to do so for people "whose claims appear barred from being prosecuted here"); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *JPMorgan*, 916 F.3d at 501; *cf. Sandbergen*, 2019 WL 13203944, at \*3-4 (denying conditional certification for signatories of enforceable arbitration agreements); *see Geiger v. Charter Commc'ns*, 2019 WL 8105374, at \*4 (C.D. Cal. Sept. 9, 2019) (limiting notice to those "who did not sign [an] arbitration agreement[]" because collective action was "implausible" as to them). Plaintiff also would lack standing to challenge the DRAs in any event, making him further dissimilar.

**Employees who signed severance agreements**: Unlike Plaintiff, some members of the proposed collective signed severance and release agreements. *See* Wegman Decl. ¶ 6. Those who released their claims should be excluded for the futility, efficiency and standing reasons applicable to DRA signatories. *See Estorga v. Santa Clara Valley Transp. Auth.*, 2017 WL 2604665, at \*6 (N.D. Cal. June 15, 2017) (excluding individuals who released claims in prior court-approved settlement). Cases recognizing these points under Rule 23 are instructive. *Cf. Romero v. Flaum Appetizing Corp.*, 2011 WL 812157, at \*6 (S.D.N.Y. Mar. 1, 2011) ("[T]he Court would need to perform a detailed, fact-specific inquiry regarding whether each release was entered into 'knowingly and voluntarily.'"); *Rawat v. Navistar Int'l Corp.*, 2011 WL 222131, at \*7 (N.D. Ill. Jan. 20, 2011) (plaintiff not typical of the many employees who signed releases); *Carlstrom v. DecisionOne Corp.*, 217 F.R.D. 514, 516 (D. Mont. 2003) (same).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

### 2.   The Court Should Not Require Production of Contact Information to Plaintiff.

Individual contact information should issue only to a third-party notice administrator, not Plaintiff's counsel.  Production to plaintiff's counsel is unnecessary, and raises privacy concerns and solicitation risks, particularly since counsel has advertised that they represent about 2,000 other former employees.  Mot. at 10 n. 1; *Russo v. Joamar, Inc.*, 2021 WL 4773185, at \*8 (C.D. Cal. Mar. 8, 2021) (limiting production to "a third-party administrator" as "common" practice); *Phillips v. Cty. of Riverside*, 2020 WL 11595874, at \*3 (C.D. Cal. Mar. 2, 2020) (same); *Syed v. M-I, LLC*, 2014 WL 6685966, at \*8 (E.D. Cal. Nov. 26, 2014) (same); *Parks v. Eastwood Ins. Servs., Inc.*, 2002 WL 34370244, at \*5 (C.D. Cal. July 29, 2002) (rejecting production of telephone numbers which "presents a greater risk of improper solicitation").

### 3.   The Notice is Defective and Must Be Modified After the Parties Meet and Confer.

The court should modify Plaintiff's notice (ECF No. 69-4) after ordering the parties to meet and confer on it.  *Karl v. Zimmer Biomet Holdings, Inc.*, 2019 WL 2775567, at \*9 (N.D. Cal. July 2, 2019) (requiring parties to meet and confer over "misleading" notice).

First, the Court should not authorize notice by text message.  Notice by text message is intrusive, and Plaintiff shows no need for it.  *See Bakhtiar v. Info. Res., Inc.*, 2018 WL 3585057, at \*4 (N.D. Cal. July 26, 2018) ("there has been no showing that [text] notice is necessary beyond mail and email"); *Sablowsky v. Auto-Chlor Sys., LLC*, 2024 WL 1836505, at \*2 (N.D. Cal. Apr. 26, 2024) ("not persuaded of the need for text message notice"); *Francisco v. Emeritus Corp.*, 2017 WL 11036693, at \*7 (C.D. Cal. Sept. 5, 2017) (same, noting "heightened privacy interest in [] telephone numbers").  Plaintiff's authorities do not support his request for text message notice because, in those cases, the defendant did not oppose text notice and/or the courts did not discuss the issue.[15]  The Court should also reject the reminder notice because Plaintiff has

---

[15] *See, e.g.*, *Forsyth v. HP Inc.*, 2021 WL 1391501, at \*7 (N.D. Cal. Apr. 13, 2021) ("Defendants do not oppose" request for contact information and requiring third-party administrator issue notice); *Kincheloe v. Am. Airlines, Inc.*, 2021 WL 2322322, at \*4 (N.D. Cal. June 7, 2021) ("Defendant filed a statement of non-opposition" to conditional certification motion); *Basham v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1    shown no need for it or proposed any language.  *Russo*, 2021 WL 4773185, at *10 (rejecting text

2    notice, in part because plaintiff "does not propose language"); *Villarreal v. Caremark LLC*, 66 F.

3    Supp. 3d 1184, 1195-96 (D. Ariz. 2014), *abrogated on other grounds by Campbell*, 903 F.3d

4    1090 (rejecting "reminder" postcard in 60-day opt-in window); *Witteman v. Wisconsin Bell, Inc.*,

5    2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (rejecting reminder because "[t]he purpose of

6    notice is simply to inform potential class members of their rights" and then it is "their

7    responsibility to act as they see fit").

8        Second, Plaintiff's proposed notice does not state that recipients may retain their own

9    counsel.  *Walterscheid v. City of El Monte*, 2018 WL 6321645, at *4 (C.D. Cal. Sept. 6, 2018)

10   (requiring notice advise members of their right to retain their own counsel); *Greene*, 2019 WL

11   2503950, at *5 (cited in Mot. at 9) (approving notice stating "they may seek independent

12   counsel").

13       Third, the proposed notice fails to describe the extent of opt-ins' potential discovery and

14   financial obligations.  *Parks*, 2002 WL 34370244, at *4 (adding to notice: "While this suit is

15   pending, you may be required to respond to written questions, sit for depositions, and/or testify in

16   court"); *Greene*, 2019 WL 2503950, at *5 (per approved notice, opt-ins "may be required to

17   participate in written discovery, appear for depositions under oath, produce documents, and/or

18   testify"); *Aguilo v. Vails Gate Cleaners Inc*., 2020 WL 3545558, at *8 (S.D.N.Y. June 30, 2020)

19   (requiring disclosure of potential need to "(1) appear for depositions; (2) respond to written

20   discovery; (3) testify at trial; and (4) pay litigation costs.").

21       Fourth, the proposed notice includes four scant words about Defendant's position

22   ("Twitter denies these allegations.").  It must also explain that X denies all Plaintiff's allegations

---

23

24   *Tailored Living Choices, LLC*, 2024 WL 665189, at *5 (N.D. Cal. Feb. 16, 2024) ("Defendants
     do not object to Plaintiffs' proposal" regarding administration of notice and contact information

25   request, only content of notice); *Greene v. Omni Limousine, Inc*., 2019 WL 2503950, at *6 (D.
     Nev. June 15, 2019) ("Defendant offers no opinion about these proposed methods of distribution"

26   of notice by email, mail and text); *Herrera v. EOS IT Mgmt. Sols., Inc*., 2020 WL 7342709, at
     *11 (N.D. Cal. Dec. 14, 2020) (the defendant objected to use of a third-party administrator and

27   court did not substantively discuss the proposed form notice); *Santiago v. Amdocs, Inc*., 2012 WL
     2343626, at *2 (N.D. Cal. June 20, 2012) (ruling on motion to strike and no substantive

28   discussion of notice that was "previously approved").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                          DEFENDANT'S OPPOSITION TO MOTION
                           FOR CONDITIONAL CERTIFICATION
                           Case No. 3:23-cv-01786-SI

and any liability to him or any other person and denies that his claims may be maintained as a collective or class action. *See Flores v. Velocity Exp., Inc*., 2013 WL 2468362, at *9 (N.D. Cal. June 7, 2013) (ordering denial of liability to appear on first page of notice); *Labrie v. UPS Supply Chain Sol., Inc*., 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009) (similar).

Fifth, the proposed notice is misleading because it implies that there likely will be a judgment that is favorable to Plaintiff or a settlement, and it omits that opt-ins are bound by unfavorable results. *Barber v. Human Contract, LLC*, 2009 WL 10673170, at *6 (C.D. Cal. Dec. 11, 2009) (finding plaintiff's proposed language "potentially misleading" and agreeing with defendant's language: "If you choose to join in this suit, you will be bound by the decision of the Court, whether it is favorable or unfavorable."); *Zimmer Biomet*, 2019 WL 2775567, at *9 (requiring meet and confer over "misleading" notice); *Desio v. Russell Rd. Food & Beverage, LLC*, 2017 WL 4349220, at *6 (D. Nev. Sept. 29, 2017) (rejecting "misleading" notice language).

Sixth, the notice must inform individuals of the potential consequences of the DRAs and releases that they may have signed. *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. Apr. 13, 2015) (notice must "advis[e]" of "dispute" as to "whether [individuals] who have settled their claims or entered into arbitration agreements will be eligible to opt into the collective action"); *Greene*, 2019 WL 2503950, at *6 (approving revision to address arbitration "concern").

Seventh, the notice should be modified "to avoid the appearance of judicial endorsement of this action" by deleting the three bolded references to court authorization (on the top of the first page, in the first paragraph, and below plaintiff's counsel's signature block). *Desio*, 2017 WL 4349220, at *6 (rejecting notice that had bolded "court-authorized" text in three places and instructing plaintiff "to omit all the references to the Court"); *See* Mot. Ex. D.

Eighth, the notice should equally reference Defendant's contact information, as putative collective members have a right to communicate with Defendant or its counsel should they so choose. *Magana-Munoz v. W. Coast Berry Farms, LLC*, 2020 WL 3869188, at *7 (N.D. Cal. July 9, 2020) (requiring notice add defendant's counsel's information with "clear language explaining" representation, and that notice not "solicit" individuals to contact plaintiff's counsel "for 'additional information'"); *Walterscheid*, 2018 WL 6321645, at *4 (agreeing defendant's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI

1   counsel's contact information should be listed because "potential members of the collective

2   action . . . may turn to any attorney (or non-attorney) they choose in seeking out information

3   relevant to their decision").

4         Ninth, the opt-in period should be 60 days, not 90 days.  *Villarreal*, 66 F. Supp. 3d at 1195

5   (ordering 60-day notice period "from the time the notice is sent," following argument that "60

6   days is 'increasingly the norm' for the opt-in period"); *Labrie*, 2009 WL 723599, at *8 ("60-day

7   time limit is sufficient").

8   **VI.     CONCLUSION**

9         For the foregoing reasons, X respectfully requests that the Court deny the Motion in its

10  entirety because Plaintiff has not met his burden.  If the Court is inclined to conditionally certify

11  some collective action, however, it should substantially limit the scope of the collective and order

12  the Parties to meet and confer on a proper form of notice.

13  Dated: July 12, 2024                         MORGAN, LEWIS & BOCKIUS LLP

14

15                                              By  */s/ Brian D. Berry*
                                                    _____
16                                                  Eric Meckley
                                                    Brian D. Berry
17                                                  Jonathan Lotsoff
                                                    Roshni C. Kapoor
18                                                  Carolyn M. Corcoran

19                                                  Attorneys for Defendant
                                                    X CORP., f/k/a TWITTER INC.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION
Case No. 3:23-cv-01786-SI