UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ZEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>TWITTER, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-01786-SI<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**<br><br>Re: Dkt. No. 68, 69, 79 |

Before the Court is plaintiff's motion for conditional certification of a collective action. Dkt. No. 68-3. Defendants oppose. Dkt. No. 78. For the forgoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiff's motion.

**BACKGROUND**

Plaintiff is a former employee of defendant Twitter, Inc. Dkt. No. 50 ("FAC") ¶ 1. In or about March 2023, Twitter merged with X Corp., and X Corp. "has successor liability for Twitter's unlawful acts." *Id.* ¶ 11. Plaintiff filed suit on his own behalf and on behalf of other Twitter employees age 50 or older across the country who were laid off after Elon Musk purchased Twitter in late October 2022. *Id.* ¶¶ 1, 3, 18. Plaintiff alleges that this "mass layoff . . . affected well more than half of Twitter's workforce" and "[m]ost laid off employees were notified on November 4, 2022, although some were laid off earlier and many were laid off after that date." *Id.* ¶¶ 18, 21. Plaintiff alleges that "decisions regarding which employees would be laid off during the initial layoffs were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities." *Id.* ¶ 19. Plaintiff further alleges that "the majority of initial layoff decisions were made quickly by a small group of managers,

under close supervision of Musk," some of whom were brought in from other companies owned by Musk "who did not have much, if any, knowledge about Twitter's operations." *Id.* ¶ 22. Plaintiff asserts claims of disparate impact and disparate treatment age discrimination pursuant to the federal Age Discrimination and Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). *Id.* ¶ 2.

Plaintiff initially sought conditional certification of a collective action under the ADEA to provide notice of this action to the following group of individuals: "All Twitter employees across the United States age fifty (50) or older who have lost their jobs since Elon Musk acquired the company." Dkt. No. 69 at 1. In his reply, plaintiff indicates that he has no objection to limiting the class to individuals age 50 and older who were "laid off" or "terminated" as "part of the November 4, 2022, RIF." Dkt. No. 80 at 1 n.1, 10. Plaintiff indicates that there are roughly 149 employees age 50 or older who were laid off on November 4, 2022. *Id.* at 1-2; FAC ¶ 27. Plaintiff also indicates that his counsel already represents approximately 2,000 employees laid off following Musk's acquisition of Twitter, and that plaintiff would exclude from the notice process any employees already represented by his counsel or by other counsel. Dkt. No. 69 at 10 n.1.

In support of his motion, plaintiff points to allegations in his FAC about a statistical analysis performed by a labor economist and "ageist comments made by Elon Musk around the time he purchased Twitter." Dkt. No. 69 at 7; FAC ¶¶ 23-24, 31-33. He also points to deposition testimony from Musk where Musk testified that he "discriminate[d] on the basis of merit and nothing else," he "would be surprised" if the layoffs had a disparate impact on any protected groups, and he did not have a disparate impact analysis done and "simply asked that we assess excellence and necessity." Dkt. No. 69, Ex. B at 195:14-196:4. Plaintiff further submits a one-word email from Musk in which Musk responded "[a]pprove" to an email from Twitter's Vice President of Corporate Finance asking Musk to review and reply "approve" or let them know if he had any questions regarding the "current proposal [] to terminate 3,789 employees on Friday, November 4, 2022 – which represents 51% of the 7,397 population." *Id.* Ex. C. Lastly, plaintiff submits a short declaration about his being laid off that does not reference the laying off of any other employees. *Id.* Ex. A.

In support of their positions, defendants submit, among other things, a declaration from Lauren Wegman, Senior Director, People at X Corp. Dkt. No. 78-1 ("Wegman Decl."). Wegman declares that as of November 4, 2022 there were 32 U.S. employees in the Communications job category and that records show that all 32 of these employees, including plaintiff, were laid off in the November 4 reduction in force ("RIF"). *Id.* ¶ 3. Plaintiff was the only employee in the Communications department over 50 years old. *Id.* Wegman further declares that following the acquisition, X offered severance packages with release agreements to many employees who "separated from the company" that include a "general release that covers any employment-related claim against the company." *Id.* ¶ 6. Defendants also submit deposition testimony from Musk and four other individuals as well as excerpts of Dr. Killingsworth's testimony from an arbitration. *See* Dkt. No. 78-2 ("Berry Decl.").[1]

## LEGAL STANDARD

The ADEA prohibits employers from "[discharging] any individual or otherwise [discriminating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA is "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 626(b); *Heath v. Google LLC*, 345 F. Supp. 3d 1152, 1164 (N.D. Cal. 2018). Section 216(b) of the FLSA provides that one or more employees may bring a collective action against any employer on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under this provision, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt into the joint litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). The FLSA does not define the term "similarly situated" and the Ninth Circuit has yet to interpret this phrase. *Heath*, F. Supp. 3d at 1164; 29 U.S.C. § 216(b); *Campbell*, 903 F.3d at 1100 ("Given . . . gaps [in the FLSA], much of collective action practice is a product of interstitial judicial lawmaking or ad hoc district court

---

[1] Dr. Killingsworth conducted the statistical analysis that is referenced in plaintiff's FAC. *See* FAC ¶¶ 29-33.

3

1    discretion."). However, the Ninth Circuit in *Campbell* did indicate that "what matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." 903 F.3d at 1115.

A majority of courts, including district courts in this circuit, follow a two-step process for determining whether a collective is "similarly situated." *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2018 WL 3585143, at *5 (N.D. Cal. July 26, 2018); *see also Campbell*, 903 F.3d at 1100; *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466-67 (N.D. Cal. 2004). The first step of this two-step approach "considers whether the proposed class should be given notice of the action" based on "the pleadings and affidavits submitted by the parties." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007). The "sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101 (internal quotation marks and citations omitted). "In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried." *Adams*, 242 F.R.D. at 536.

This case is at the first step, where the court must evaluate whether plaintiff has met his burden of showing that the "proposed lead plaintiffs and the proposed collective action group are 'similarly situated.'" *Leuthold*, 224 F.R.D. at 466. The standard for certification at step one is lenient and "typically results in certification." *Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *2 (N.D. Cal. Sept. 3, 2008); *see also Adams,* 242 F.R.D. at 536. At this stage, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or other limited evidence." *Campbell*, 903 F.3d at 1109. "The level of consideration is . . . sometimes articulated as requiring substantial allegations, sometimes as turning on a reasonable basis, but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* at 1109. District courts have required "little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent." *Kincheloe v. American Airlines, Inc.*, No.

4

5:21-cv-00515-BLF, 2021 WL 2322322, at *2 (N.D. Cal. June 7, 2021) (citations and internal quotation marks omitted); *see also Adams*, 242 F.R.D. at 536. Stated differently, plaintiffs must show that there is "'some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'" *Rabin*, 2018 WL 3585143, at *5 (quoting *Russell*, 2008 WL 4104212, at *3).

"The plaintiff need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." *Kincheloe*, 2021 WL 2322322, at *3. However, unsupported allegations of ADEA violations are not sufficient to meet plaintiff's burden. *Id.* (citation omitted). "Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold*, 224 F.R.D. at 466.

## DISCUSSION

### I. Whether Conditional Certification Should Be Granted

As an initial matter, the parties disagree about what weight should be given to the Wegman declaration. Defendants repeatedly highlight that plaintiff's entire department (Communications) was eliminated during the November 4, 2022 RIF, whereas employees in other areas of the company were subject to various processes to select who would be laid off. Dkt. No. 78 at 1-2; Wegman Decl. ¶ 3. "[F]ederal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants." *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012); *see also Heath*, 215 F. Supp. 3d at 854-55 (holding that "Google's argument regarding individualized inquiries would be more appropriately addressed in a motion to decertify"). Furthermore, the "fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010). Although the fact that the entire Communications department was laid off, if proven, may weaken plaintiff's individual case, the Court finds that this challenge is better addressed at the second certification step, when defendants will have the opportunity to

decertify the collection action after the parties have undertaken discovery in this case specifically. *See Kincheloe*, 2021 WL 2322322, at *3 (noting that it is at the second stage that courts make a "factual determination about whether plaintiffs are actually similarly situated by weighing various factors"). Furthermore, courts have held that the fact that discharged employees held a variety of positions or were members of different departments does not preclude a finding that they are similarly situated for purposes of conditional certification. *See, e.g.*, *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001) (rejecting the defendants' argument that conditional certification shouldn't be granted because the plaintiffs came from 49 different departments, reasoning that "in order to be 'similarly situated,' the plaintiffs do not have to perform the same job in the same location as long as there is a discriminatory policy common to all").

The parties dispute the application of numerous decisions from district courts around the country in support of their respective positions about whether conditional certification is appropriate here. The cases the parties cite involve a large variety of factual scenarios and varying specificity of allegations. Defendants extensively critique plaintiff's allegations and evidence. Although some of these critiques may be persuasive, these arguments go to the merits of plaintiff's claims and do not defeat conditional certification. This is not the stage to weigh the evidence, and plaintiff has shown beyond mere speculation that Twitter may have discriminated against older employees in the November 4, 2022 RIF, which constitutes a single decision that affected all members of the proposed class. Plaintiff has likewise shown beyond mere speculation that he is "generally comparable" to those he seeks to represent given that the RIF was imposed on all proposed collective action members. A collective action "may be certified [] if the named plaintiff can show that his position was or is *similar* to those of the absent class members"; the plaintiff need not show that their positions are or were *identical*. *Rabin*, 2018 WL 3585143, at *5 (quoting *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006)) (emphasis in original). The Court further finds that the extent to which members of the proposed action will rely on common evidence to prove the alleged discrimination weighs in favor of a collective action here. *See Rodolico*, 199 F.R.D. at 483. Plaintiff's allegations will be subject to more scrutiny at the second step, but the Court concludes that his showing satisfies the lenient standard for conditional certification for notice purposes.

### III. Whether the Scope of the Proposed Class is Appropriate

Defendants contend that any conditionally certified collective should be limited to the Communications Department in which plaintiff worked and should not include employees terminated for cause or performance, employees who signed dispute resolution agreements, or employees who signed severance agreements. Dkt. No 78 at 19-21. Plaintiff confirmed at the August 16, 2024 hearing that the collective will not include individuals terminated for cause or performance. In concluding that plaintiff has made a sufficient showing that he is similarly situated to the proposed collective, the Court has already determined that the scope of the proposed collective should extend to all employees involuntarily terminated as a result of the November 4, 2022 RIF, not just those in the Communications Department. The Court turns to the remaining arguments below.

The Ninth Circuit has not considered whether FLSA notice should be provided to individuals who signed arbitration agreements. *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2021 WL 2805604, at *2 (N.D. Cal. July 6, 2021). The Seventh Circuit, in addressing the "issue of first impression" of "whether a court may authorize notice to individuals who, according to the defendant, entered valid arbitration agreements waiving their right to join the action" has ruled that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action" and the court "must give the defendant an opportunity to make that showing." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049-50 (7th Cir. 2020). The Fifth Circuit has similarly held that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee form participating in the collective action." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019). Under this Fifth Circuit law, "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee" and the court "should permit submission of additional evidence, carefully limited to the disputed facts, at the conditional-certification stage." *Id.* at 502-503.

Defendants have cited no cases from this Circuit where courts have followed the approaches of the Seventh or Fifth Circuits. In *Droesch*, a court in this District gave the defendant "the opportunity to present evidence in support of its argument that 27,000 of the employees in the collective action signed valid and enforceable arbitration agreements" on a motion for reconsideration, but only after the Court had granted the defendant's motion to compel arbitration of the plaintiff and certain opt-in plaintiffs' claims and had ruled on the enforceability of the arbitration agreement. 2021 WL 2805604, at **1, 3. In *Sandbergen v. Ace American Insurance Co.*, the plaintiff did not dispute the enforceability of the arbitration agreements and the court "merely [held] that notice is not necessary or appropriate for a plaintiff who concedes both the validity of an arbitration agreement and the inability to litigate their claims in this collective action." No. 18-cv-04567-SK, 2019 WL 13203944, at **3-4 (N.D. Cal. June 17, 2019). The court specifically indicated that it need not decide whether it would be permissible for a court to evaluate the arbitration agreements as part of a determination of whether notice should be sent because that issue was not before the court. *Id.* Neither of these circumstances is present here.

In *Geiger v. Charter Communications*, the court, in a motion for reconsideration, held that the case's "uncommon nature necessitate[d] the redefinition of the collective action to . . . prohibit notice to, potential plaintiffs subject to an arbitration agreement." No. CV 18-158-DMG (GJSx), 2019 WL 8105374, at *4 (C.D. Cal. Sept. 9, 2019). The defendants had provided the arbitration agreements and "explained the uniform process by which dispatchers would have acknowledged and agreed to them" and plaintiffs "mounted no challenge to the agreements' language or the acceptance process" such that the court was "left to conclude that the agreements themselves are more likely than not enforceable." *Id.* The court further reasoned that it appeared that "even if the Court were to permit notice first and invite an omnibus motion to enforce the arbitration agreements after opt-in plaintiffs have chosen to participate, those plaintiffs potentially could be obligated to pay Defendants' fees and costs if the Court decided to enforce the arbitration agreements." *Id.* at *6. The plaintiffs had "not put forth any substantive challenge to the provision's validity and enforceability to this point," and the Court reasoned that "[s]ubjecting those potential plaintiffs to that level of risk would not be a wise exercise of the Court's discretion to effectively and fairly

8

1  manage a collective action." *Id.* at *6. Plaintiff's counsel asserted at the August 16, 2024 hearing
2  that these concerns about fees and costs are not present here.
3     Numerous courts in this District have rejected the arguments defendants raise here. For
4  example, in *Herrera v. EOS IT Management Solutions, Inc.*, the court held that "[a]lthough it may
5  be true that these individuals will ultimately be unable to participate in this case" it was "not
6  appropriate to exclude potential opt-in members from the conditionally certified collective action at
7  the notice stage" because the focus of the Court's inquiry is "whether there is a common policy or
8  plan that connects the claims of the putative collective action." No. 20-CV-01093-LHK, 2020 WL
9  7342709, at *9 (N.D. Cal. Dec. 14, 2020). The defendants had similarly pointed to the Fifth Circuit's
10 decision in *In re JPMorgan Chase & Co.*, and the court noted that the Ninth Circuit has not yet
11 followed this decision, and that "district courts in this circuit have continued to send notice of a
12 pending collective action to potential members who may ultimately be unable to join the action
13 because of a valid arbitration agreement." *Id.* at *10 (citing examples); *see also Conde v. Open
14 Door Mktg., LLC*, 223 F. Supp. 3d 949, 968 (N.D. Cal. 2017) (noting that these inquiries are reserved
15 for the second stage of the certification process and that the fact that there is an arbitration agreement
16 goes to defendants' defenses, not the common policy) (citing further examples); *Costa v. Apple,
17 Inc.*, No. 23-cv-01353-WHO, 2023 WL 8101980, at **5, 7 (N.D. Cal. Nov. 21, 2023) (declining to
18 follow *Bigger* and *In re JP Morgan Chase* when "courts in this circuit have consistently determined
19 that the mere possibility of mandatory arbitration should not prevent the conditional certification of
20 a collective action"). This Court similarly concludes that defendants' assertion that some members
21 of the putative collective action may ultimately be barred from joining this case by arbitration
22 agreements does not prevent the Court from conditionally certifying a collective action at this notice
23 stage. The Court further finds that these same principles should apply with respect to individuals
24 who may have signed severance agreements that contained releases, given the lack of authority cited
25 to the contrary.[2]

---

[2] The cases defendants cite with respect to the severance agreements involve claims waived through prior settlement agreements or a determination of whether the Rule 23 typicality requirement for class certification has been satisfied. The "limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule

**IV.     Whether the Proposed Notice Is Appropriate**

Once a collective class has been conditionally certified, potential collective members are entitled to "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions as to whether to participate." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court has discretionary authority to monitor the preparation and distribution of the notice to "ensure that it is timely, accurate, and informative." *Id.* at 172. In exercising this discretionary authority, "courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Plaintiffs submit a proposed notice. *See* Dkt. No. 69, Ex. D. Defendants object to the proposed notice for a host of reasons. The Court orders as follows:

1. Plaintiff asks the Court to order defendants to provide his counsel with the names, last known mailing and email addresses, and telephone numbers for all potential opt-in plaintiffs. Dkt. No. 69 at 10. Defendants argue that this contact information should issue only to a third-party administrator. Dkt. No. 78 at 22. Plaintiff responds that this would create unnecessary expense for both parties. Dkt. No. 80 at 12. District courts have reached different outcomes on this issue. *See Noemi Russo v. Joamar, Inc. et al.*, No. LA CV 20-3939 JAK (MRWx), 2021 WL 4773185, at *8 (C.D. Cal. Mar. 8, 2021). The Court finds appointment of an administrator an unnecessary expenditure at this stage, and defendants have not adequately articulated what "privacy concerns and solicitation risks" are present here. *See* Dkt. No. 78 at 22; *Bonner v. SFO Shuttle Bus Co.*, No. C13-1606 TEH, 2013 WL 6139758, at *4 (N.D. Cal. Nov. 21, 2013). Plaintiff's counsel will be responsible for disseminating notice.

2. Defendants argue that the Court should not authorize notice by text message nor permit reminder notices. Dkt. No. 78 at 22. The Court finds that both text message notice and reminder notices would not be overly intrusive and would enhance the chances of

---

23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Campbell*, 903 F.3d at 1112 (internal quotation marks and citations omitted).

reaching the necessary individuals. Courts commonly authorize both forms of communication. The parties are ordered to submit an appropriate protective order specifying that potential members' information is to be used and distributed only for effecting notice of this litigation. Plaintiffs are also ordered to provide draft language of both the text message and reminder notices for approval by the Court.

3. Defendants assert that the notice should inform potential plaintiffs of their right to choose their own counsel. "Suggesting that a plaintiff may opt in and bring her own lawyer along would lead to confusion, inefficiency, and cumbersome proceedings." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007). If a collective member wishes to have their own lawyer, they need not opt in; they can hire their own lawyer and proceed with their own action. The Court will not require that the notice include an option for potential opt-in plaintiffs to choose their own counsel.

4. Defendants contend that the proposed notice fails to describe the opt-ins' potential discovery and financial obligations. Dkt. No. 78 at 23. The notice currently states: "You may also be asked to be a witness or to provide evidence in the case, although not all individuals who submit a consent form will be required to do so." The Court orders plaintiff to modify this sentence to state: While this lawsuit is pending, you may be required to respond to written questions, appear for depositions under oath, produce documents, and/or testify.

5. Defendants contend that the proposed notice must explain that X "denies all plaintiff's allegations and any liability to him or any other person and denies that his claims may be maintained as a collective or class action." Dkt. No. 78 at 23-24. This is a reasonable request that the Court will grant.

6. Defendants contend that the proposed notice is "misleading" because it omits that opt-ins are bound by unfavorable results. Dkt. No. 78 at 24. The Court orders plaintiff to modify the fourth sentence in the fourth paragraph of the proposed notice to state: If you

11

do participate in the case, you will be bound by any ruling entered by the court, favorable or unfavorable, and by any settlement reached by the parties.

7. Defendants contend that the notice must inform individuals of the potential consequences of the arbitration and severance agreements they may have signed. Dkt. No. 78 at 24. The Court agrees that the notice should discuss potential issues concerning how arbitration agreements and releases may potentially affect opt-in plaintiffs. The Court orders the parties to agree to a provision about arbitration and releases in severance agreements that would assist potential opt-in plaintiffs to make an informed decision about joining the case.

8. Defendants contend the three bolded references to court authorization in the proposed should be deleted. Dkt. No. 78 at 24. Including the language that the notice is court-authorized is correct and appropriate, and the notice further indicates that there has not been a decision by the Court on the merits.

9. Defendants contend that the notice should "equally reference Defendant's contact information, as putative collective members have a right to communicate with Defendant or its counsel should they so choose." Dkt. No. 78 at 24. District courts have gone both ways on this issue. Here, the Court sees no reason to list defense counsel on the notice. Defense counsel do not play a role in managing the distribution of notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion.

10. Lastly, plaintiff seeks 90 days to distribute notice to putative class members, while defendants argue only 60 days is necessary. Defendants' objection offers no independent reason why the period should be reduced to 60 days, and courts in this Circuit have approved both 60 and 90-day opt-in periods. *See Williams v. U.S. Bank Nat. Ass'n*, 290 F.R.D. 600, 614 (E.D. Cal. 2013) (collecting cases). The Court will permit a 90-day opt-in period.

**V.     Associated Administrative Sealing Motions**

Plaintiff filed an administrative motion to consider whether another's party's material should be sealed with respect to two exhibits to his motion for conditional certification. Dkt. No. 68. Defendants submitted a response, indicating that they seek to seal the financial information in Exhibit C of plaintiff's motion because it "contains confidential financial information related to X's labor costs." *Id.* at 1-2. Defendants do not seek to seal Exhibit B or the portions of plaintiff's motion corresponding to Exhibits B or C. *Id.* at 1. Exhibit B contains excerpts from the deposition of Elon Musk in a related arbitration and Exhibit C is a copy of an email chain with Musk. *Id.* at 1. The Court finds that there is good cause to seal the financial information in Exhibit C and grants the administrative motion to seal as narrowed by defendants. Defendants are ordered to provide a narrowly redacted copy of Exhibit C and plaintiff is ordered to file a version of the motion with exhibits that contains only these narrowed redactions by **September 12, 2024**.

Plaintiff also filed an administrative motion to consider whether another's party's material should be sealed with respect to one exhibit to his reply to his motion for conditional certification. Dkt. No. 79. This exhibit, Exhibit A, is another excerpt from the deposition of Musk in the same related arbitration. Defendants did not submit a response to this motion. Given that defendants did not file a response and do not seek to seal excerpts of the same deposition testimony in Exhibit B to plaintiff's motion, the Court denies this administrative sealing motion.

///

///

**CONCLUSION**

The Court certifies the following collective for notice purposes: All Twitter employees across the United States age fifty (50) or older who were involuntarily terminated as a result of the November 4, 2022 layoffs that occurred after Elon Musk acquired the company. The parties are directed to meet and confer and submit a revised notice to the court **within 21 days** along with the protective order referenced in (2) of Section IV. Plaintiff's counsel is directed to concurrently submit draft text for the text message and reminder notices. After the Court approves the finalized notice, the 90-day notice period will run from the time the notice is sent.

**IT IS SO ORDERED**.

Dated: August 28, 2024

SUSAN ILLSTON
United States District Judge