1  LICHTEN & LISS-RIORDAN, P.C.
   Shannon Liss-Riordan, Bar No. 310719
2  sliss@llrlaw.com
   Thomas Fowler (*pro hac vice*)
3  tfowler@llrlaw.com
   729 Boylston Street, Suite 2000
4  Boston, MA 02116
   Tel: +1.617.994.5800
5
   Attorneys for Plaintiff
6  JOHN ZEMAN

7

   MORGAN, LEWIS & BOCKIUS LLP
8  Eric Meckley, Bar No. 168181
   eric.meckley@morganlewis.com
9  Brian D. Berry, Bar No. 229893
   brian.berry@morganlewis.com
10 Roshni C. Kapoor, Bar No. 310612
   One Market, Spear Street Tower
11 San Francisco, CA 94105-1596
   Tel:   +1.415.442.1000
12

13 MORGAN, LEWIS & BOCKIUS LLP
   Carolyn M. Corcoran (pro hac vice)
14 carolyn.corcoran@morganlewis.com
   101 Park Avenue
15 New York, NY 10178-0060
   Tel:   +1.212.309.6000
16

   Attorneys for Defendant
17 X CORP., f/k/a TWITTER, INC.

18

19                    UNITED STATES DISTRICT COURT

20                   NORTHERN DISTRICT OF CALIFORNIA

21                       SAN FRANCISCO DIVISION

22

23 | JOHN ZEMAN,                         | Case No. 3:23-cv-01786-SI                |
   |--------------------------------------|------------------------------------------|
24 |               Plaintiff,             | **JOINT CASE MANAGEMENT STATEMENT**      |
25 |         vs.                          |                                          |
26 | TWITTER, INC. and X CORP.,           | Date:     April 18, 2025                 |
   |                                      | Time:     3:00 p.m.                      |
27 |               Defendants.            | Judge:    Hon. Susan Illston             |
   |                                      | Location: Videoconference                |

28

Pursuant to the Court's Order of February 10, 2025 (ECF No. 105), and Northern District Civil Local Rules 16-9, Plaintiff JOHN ZEMAN ("Plaintiff") and Defendant X CORP., on its own behalf and as successor in interest to TWITTER, INC. ("Defendant") (collectively, the "Parties") submit the following Joint Case Management Statement.

## 1. JURISDICTION AND SERVICE

This Court has jurisdiction under 29 U.S.C. §1331 over the claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"). Furthermore, this Court has supplemental jurisdiction under 28 U.S.C. §1367 over the remaining and related claims under the New York State Human Rights Law ("NYSHRL").

All parties in the matter have been served. The Parties do not intend to raise any issues regarding personal or subject matter jurisdiction or venue at this time.

## 2. FACTS

### a. *Plaintiff's Statement*:

In this case, Plaintiff asserts claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and under the New York State Human Rights Law ("NYSHRL"). Additionally, Claimant has filed a motion for leave to amend his complaint (Dkt. 112) in order to assert claims of breach of contract and promissory estoppel, as after Twitter laid him off on November 4, 2022, it did not pay him the severance that it had promised repeatedly throughout the spring and summer of 2022.

As Plaintiff alleged, Elon Musk recently purchased Twitter, which was completed in late October 2022, and immediately began laying off well more than half of its workforce, including Plaintiff. The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022. Plaintiff has alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not

have much, if any, knowledge about Twitter's operations. At the time he was laid off, Plaintiff was sixty-three (63) years old and was employed by Twitter as Senior Manager, Communications. Throughout his employment, Plaintiff's performance met the company's expectations.

Plaintiff alleges that Twitter's mass layoff impacted employees age fifty (50) and older more than employees younger than fifty (50). According to data that Twitter provided employees pursuant to the Older Workers Benefit Protection Act (OWBPA), Twitter laid off approximately 60% of its employees age fifty (50) and older, while only 54% of its employees younger than fifty (50). Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between employees age fifty (50) and older and younger employees being laid off was due only to chance is .0529. Plaintiff alleges that the disparity for employees age sixty (60) or over is even greater. Specifically, Twitter laid off approximately 73% of its employees age sixty (60) and older, while only 54% of its employees younger than sixty (60). According to Dr. Killingsworth, the odds this was due only to chance is .0313.

Plaintiff further alleges that Twitter's discriminatory conduct in the layoffs is unsurprising in light of Elon Musk's public comments against older people. For example, Musk has stated "if [older people] don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them."

In addition, Twitter is liable for breach of contract, and under the doctrine of promissory estoppel, because it did not pay Plaintiff the severance that Twitter had promised to pay its employees should there be a layoff in the year following the close of Mr. Musk's acquisition of Twitter. Following the announcement in April 2022 that Elon Musk would be purchasing Twitter, many employees raised concerns regarding the company's policies following this anticipated acquisition, as well as concerns about potential mass layoffs. In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

///

One of the promises was that continuing employees would retain the same wages and benefits for a year after Musk's acquisition of the company. Another of the promises was that employees who were terminated within one year of Mr. Musk's acquisition of the company would receive severance pay at least as favorable as the severance pay that Twitter previously provided to employees. Under Twitter's pre-acquisition severance policy, laid off employees received at least two months' pay (or more, depending on the employee's length of service and position at the company), bonus plan compensation at target, cash value of equity that would have vested within three months from the separation date (or more, for more senior level employees), and a cash contribution for health care continuation.

These promises were communicated to employees orally and in writing by Twitter's management, including its former CEO, human resources personnel, and others. The written promise that benefits and severance would stay the same for a year was distributed to employees throughout the company in a Frequently Asked Questions (FAQs) document. Plaintiff, like other employees, reasonably relied on these promises and maintained his employment at Twitter, rather than seeking job opportunities elsewhere. He did so to his detriment. However, following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on these promises. Following his layoff, Plaintiff did not receive the severance pay that he (along with other Twitter employees) had been promised to be paid if he were terminated within a year of Musk's acquisition of the company.

    **b.**  ***Defendant's Statement:***

Plaintiff was employed with the Company as a Senior Communications Manager in the Communications department. On November 4, 2022, Plaintiff and all other employees in the Communications department (32 in total) were notified that they were being laid off in a reduction in force ("RIF"). Three of these employees, in addition to Plaintiff, were age 40 or older. The remaining 28 laid off employees were under age 40. Plaintiff's First Amended Complaint ("FAC") alleged disparate impact and disparate treatment claims under the ADEA and NYSHRL on behalf of employees age 50 or older nationwide and/or who worked in New York, respectively, "who have lost their jobs since Elon Musk acquired the company". ECF No. 50 ¶¶ 7-8. As discussed below,

1  Plaintiff subsequently abandoned his claims seeking to represent a putative ADEA collective or
2  NYSHRL class.
3      Plaintiff's allegations lack merit.  Defendant provides equal employment opportunities to
4  all its employees and did not discriminate on the basis of age (or any other category protected by
5  law).  Defendant expressly denies that it discriminated against Plaintiff and further denies that the
6  November 4, 2022, RIF (or any later RIFs) had a disparate impact on employees age 50 and older,
7  including Plaintiff.  Plaintiff's claims are particularly meritless because *all* employees in the
8  Communications department were notified of their layoff on November 4, 2022, the vast majority
9  of whom were under age 40.

10     **3.    LEGAL ISSUES**
11         **a.    *Plaintiff's Statement*:**
12     The primary legal issues presented in this case are (1) whether Twitter the ADEA and the
13  NYSHRL by implementing mass layoff in a manner that disproportionately impacted employees
14  age (50) and older; (2) whether Twitter is liable for breach of contract for its failure to pay
15  Plaintiff thee severance package it had promised him throughout the spring and fall of 2022; and
16  (3) whether Twitter is liable under the doctrine of promissory estoppel for its failure to pay
17  Plaintiff thee severance package it had promised him throughout the spring and fall of 2022.
18         **b.    *Defendant's Statement*:**
19     At the present time, this case involves the following legal issues:
20     1.    Whether Defendant's affirmative defenses defeat or limit any purported liability;
21     2.    Whether Plaintiff is entitled to front- or back- pay, benefits, other economic or
22  compensatory damages, or other equitable or monetary relief;
23     3.    Whether Plaintiff can meet his burden of proving disparate impact;
24     4.    Whether Plaintiff can meet his burden of proving disparate treatment;
25     5.    Whether Plaintiff may amend his Complaint, nearly 14 months after this Court's
26  Rule 16 deadline for amendment of pleadings has passed, to add individual breach of contract and
27  promissory estoppel claims that he knowingly declined to timely assert in this Action in deference
28  to  the putative class claims covering Plaintiff in November 2022, which are pending in the District

of Delaware in *Emmanuel Cornet, et al. v. Twitter, Inc.* ("*Cornet*"), Case No. 1:23-cv-00441-TMH (D. Del.).

      6.     Whether Plaintiff is entitled to fees, costs, or other forms of relief.

**4.**    **MOTIONS**

1) Defendant filed a Rule 12 motion to dismiss and strike the class claims in response to the Complaint on May 12, 2023 (ECF No. 19). The Court issued an order on August 29, 2023, granting in part and denying in part the motion (ECF No. 41). Specifically, the Court dismissed Plaintiff's disparate treatment claim with leave to amend.

2) Plaintiff filed his First Amended Complaint on January 31, 2024 (ECF No. 50). Defendant filed its motion to dismiss on February 21, 2024 (ECF No. 54). The Court issued an order on April 18, 2024, denying the motion to dismiss (ECF No. 62) including as to Plaintiff's repleaded intentional discrimination claim.

3) The deadline for Plaintiff to file a motion to certify a Rule 23 class of New York employees pursuant to his NYSHRL claim was September 23, 2024. ECF No. 67. Plaintiff did not move to certify such a class claim, and informed Defendant on or about September 9, 2024, that Plaintiff had elected not to do so.

4) Plaintiff filed his motion for conditional certification of an ADEA collective action on June 7, 2024 (ECF No. 69). The Court granted Plaintiff's motion in part on September 3, 2024 (ECF No. 82).

5) The opt-in period for the ADEA collective ended on January 21, 2025. Four individuals filed timely opt-in consents by the deadline, all of which have since been withdrawn because each of the opt-in plaintiffs were covered by binding, individual arbitration agreements. ECF No. 103. Accordingly, Plaintiff's remaining claims are his individual ADEA and NYSHRL claims.

6) The parties filed a joint letter concerning Defendant's request for the Court to compel discovery responses from Plaintiff on December 9, 2024 (ECF No. 95). The Court granted Defendant's request in part on December 18, 2024 (ECF No. 98).

7) Plaintiff filed a Motion for Leave to File a Second Amended Complaint on March 26, 2025, seeking to add individual breach of contract and promissory estoppel claims. ECF No. 112.

1   Defendant filed its Opposition to Plaintiff's motion on April 8, 2025.  ECF No. 114.

2        **5.**     **AMENDMENT OF PLEADINGS**

3            **a.**     ***Plaintiff's Statement*:**

Plaintiff filed a Motion for leave to File a Second Amended Complaint on March 26, 2025 (Dkt. 112). On March 28, 2025, the Court issued an Order (Dkt. 113) saying in light of Rule 15(a)(2)'s instruction to courts to "freely give leave when justice so requires", the "Court is inclined to grant plaintiff's request and would like to resolve the matter quickly given plaintiff's upcoming deposition." Twitter submitted an opposition on April 7, 2025 (Dkt. 114). Plaintiff intends to promptly submit a reply in support of his motion. To briefly reiterate the argument set forth in Plaintiff's motion, this case was initially filed as a class and collective action advancing age discrimination claims. Now that the case is proceeding as a single-plaintiff case, he seeks to add his individual the breach of contract and promissory estoppel claims (Plaintiff was a putative class member in *Cornet v. Twitter*, originally filed as 3:22-cv-06857-JD (N.D. Cal.), transferred to 23-cv-441 (D. Del.), in which those claims were asserted). Plaintiff believes there is a chance that he may be precluded from recovering on those claims as a class member in *Cornet* now that this matter is proceeding on an individual basis. As such, he wishes to assert them here to avoid that risk. Further, *Cornet* will not be tried any time soon (Twitter's motion to dismiss is still pending in that class case), and Plaintiff anticipates that pursuing the claim in this matter will be much more expedient.

There will be no prejudice to Twitter, as discovery in this matter is ongoing, and Plaintiff has not yet been deposed. Plaintiff will not be reinventing the wheel here – Plaintiff's counsel are currently representing more than 2,000 former Twitter employees in individual arbitration, raising the same claims for breach of contract and promissory estoppel. As such Plaintiff's counsel have already conducted the vast majority of discovery that Plaintiff will need to pursue these claims, and there is an agreement in place with Twitter's counsel that this discovery can be used across all cases (including in court) raising similar claims. There will be no prejudice to Twitter or undue delay resulting from the amendment of the Complaint.

///

b. *Defendant's Statement*:

Defendant opposed Plaintiff's Motion for Leave to File a Second Amended Complaint on April 8, 2025. ECF No. 114. As set forth in Defendant's Opposition, Plaintiff's motion comes well after the January 31, 2024 deadline for amending the pleadings that this Court set more than one year ago pursuant to Rule 16, which governs Plaintiff's Motion to Amend rather than Rule 15. Plaintiff has not shown, and cannot show, the requisite good cause for his failure to adhere to the Court's long-passed deadline for amended pleadings, including because he and his counsel have been aware of the same class claims covering him in *Cornet* since November 2022, and purposefully chose not to timely amend his Complaint here to add those claims. His undue delay warrants denial of his Motion under Rule 16, without the need to consider Rule 15 standards. But even under Rule 15, the Court should still deny his Motion because beyond his impermissible delay and prior amendment, his Motion reflects bad faith tactical gamesmanship, forum shopping, and material prejudice to Defendant. *Id.* Knowing that Defendant's motion to dismiss is pending in *Cornet*, he seeks to avoid an adverse ruling in that case and instead have this Court decide his claims. He also seeks to prejudice Defendant by adding entirely new claims late in this litigation with an impending discovery cut-off of May 9, 2025 and Plaintiff's deposition – intended to cover his age discrimination claims – scheduled for April 23, 2025.

6. **EVIDENCE PRESERVATION**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have complied with their evidence preservation obligations.

7. **DISCLOSURES**

The Parties have exchanged their initial disclosures.

8. **DISCOVERY**

a. **Discovery Taken, Scope of Anticipated Discovery, and Discovery Plan.**

i. *Plaintiff's Statement:*

Discovery remains ongoing and will continue until May 9, 2025. Twitter's assertion below that it has not had the opportunity to conduct discovery and develop its defenses as to Plaintiff's breach of contract and promissory estoppel claims is disingenuous and untrue. These

claims are virtually identical for the 2,000 Twitter employees whom Plaintiff's counsel represent in individual arbitration, and the parties have already had full evidentiary arbitration hearings in 107 individual arbitrations. Twitter knows perfectly well what its defenses are and has taken broad discovery from Plaintiff already. It will also have the opportunity to depose him on April 23, 2025. There is no need for discovery to be extended.

ii.  ***Defendant's Statement:***

Plaintiff's deposition has been scheduled for April 23, 2025, based on Defendant's understanding that only Plaintiff's individual age discrimination claims were pending. To the extent Plaintiff's Motion for Leave to File a Second Amended Complaint is granted and his new contract and estoppel claims remain pending in this Court, Defendant would have the right to conduct discovery and develop its defenses as to Plaintiff's new claims. Plaintiff's late filing, however, leaves less than a month before discovery closes on May 9, 2025, and precludes Defendant from effectively conducting any discovery on his new claims, which would include investigating his specific allegations, searching for relevant ESI and documents (if any) in its own possession, and taking discovery from Plaintiff (including deposition). Discovery conducted in other cases involving other individuals does not obviate Defendant's need to conduct discovery on *Plaintiff's* claims, including without limitation his understanding of the "promises" allegedly made and whether he actually and reasonably relied upon them to his detriment.

If this Court is inclined to grant his Motion, the case schedule (including fact discovery deadline) should be vacated and extended so that Defendant may take discovery on and properly defend itself against Plaintiff's new claims.

b.  **Stipulated E-Discovery Order & FRCP Modifications**

The Parties have not entered into a stipulated e-discovery order. The Parties agree to enter a protective order consistent with the Northern District of California's Model Protective Order (with minor revisions including a 21-day period to make designations with respect to deposition transcripts received and provisions regarding Federal Rule of Evidence 502(d)), and which also incorporates the Parties' agreement that information and evidence produced in any lawsuit or arbitration hearing between individuals represented by Plaintiff's counsel and Defendant may be

used in any other matter between Defendant and an individual represented by Plaintiff's counsel.

The Parties do not believe it is necessary to modify any limitations imposed by the Federal Rules of Civil Procedure or the Local Rules at this time.

    **c.**    **Discovery Disputes**

The Parties have not yet identified any anticipated discovery disputes beyond that which the Court has already addressed (Order, ECF No. 98). The Parties will follow the Court's procedure for resolving discovery disputes should any disputes arise.

**9.**    **CLASS AND COLLECTIVE ACTIONS**

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements for the Northern District of California.

Plaintiff does not seek class certification pursuant to Fed. R. Civ. P. 23 in this matter, or collective action certification under the ADEA and 29 U.S.C. § 216(b).

**10.**    **RELATED CASES**

    **a.**    *Plaintiff's Statement*:

Plaintiff notes that he moved to have this case consolidated with other similar cases alleging sex discrimination, disability discrimination, and FMLA violations (*Strifling et al v. Twitter, Inc. et al*, C.A. No. 22-cv-07739-JST (N.D. Cal.), and *Borodaenko et al v. Twitter, Inc. et al*, C.A. No. 22-cv-07226-AMO (N.D. Cal.)), all stemming from Twitter's layoffs following Elon Musk's purchase of the company. This motion was denied.

    **b.**    *Defendant's Statement*:

Plaintiff's counsel previously moved to relate and/or consolidate this case with other cases against Defendant. On May 16, 2023, Plaintiff's counsel filed an administrative motion in *Borodaenko et al. v. Twitter, Inc. et al*, No. 22-cv-07226-AMO (N.D. Cal.) (alleging disability discrimination) to relate this Action and *Strifling, et al. v. Twitter, Inc., et al.*, No. 4:22-cv-07739-JST (N.D. Cal.) (alleging sex discrimination) with *Borodaenko*. *Borodaenko* ECF No. 38. Plaintiff's counsel represents the plaintiffs in all three cases (among others). On May 23, 2023, the Court in *Borodaenko* ruled that neither *Strifling* nor *Zeman* were related to *Borodaenko*, and denied their motion to relate all such cases. *Borodaenko* ECF No. 41.

On June 6, 2023, Plaintiff's counsel again moved the Court in *Borodaenko* to consolidate that case with *Zeman* and *Strifling*. *Borodaenko* ECF No. 46. On August 15, 2023, the Court in *Borodaenko* denied the motion to consolidate, stating that the plaintiff's motion appeared to be an "effort to engage in judge shopping" and that "[t]he Court does not countenance gamesmanship of this kind." *Borodaenko* ECF No. 58.

11. **RELIEF SOUGHT**

   a. *Plaintiff's Statement*:

As set forth in Plaintiff's proposed Second Amended Complaint (Dkt. 112-1), Plaintiff seeks damages for violations of the ADEA and the NYSHRL, including back pay, front pay, lost benefits, bonuses and equity, liquidated damages, emotional distress damages, punitive damages, and any other recoverable damages. Plaintiff also seeks the severance that he was promised, as well as any damages he suffered as a result of his detrimental reliance on Twitter's promise of severance. Further, Plaintiff seeks interest, costs, attorneys' fees, and any and all other relief to which Plaintiff may be entitled.

   b. *Defendant's Statement*:

Defendant denies that Plaintiff is entitled to any relief.

12. **SETTLEMENT AND ADR**

The Parties have complied with ADR L.R. 3.5. The Parties engaged in mediation with a private mediator on December 1, 2023, which was not successful. The Parties were ordered to conduct an ADR settlement conference by May 23, 2025 and are working with Magistrate Judge Beeler to identify a date that works for the Court and the Parties, which may require tentatively scheduling for the week of May 12, 2025. ECF No. 105.

13. **OTHER REFERENCES**

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

14. **NARROWING OF ISSUES**

The parties do not believe any issues can be narrowed by agreement at this time.

///

1  **15.  EXPEDITED TRIAL PROCEDURE**

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64.

**16.  SCHEDULING**

   a.  ***Plaintiff's Statement:***

Regardless of whether the Court grants Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. 112), Plaintiff believes that the schedule set forth in the Pretrial Preparation Order (Dkt. 105) should remain in place.

   b.  ***Defendant's Statement:***

As set forth above, should the Court grant Plaintiff's Motion for Leave to File a Second Amended Complaint, Defendant proposes the case schedule should be vacated and extended so that Defendant may take discovery on and properly defend itself against Plaintiff's new claims to the extent they remain in this Court.

**17.  TRIAL**

Trial is currently scheduled for October 14, 2025 (four days).

   a.  ***Plaintiff's Statement:***

The trial should proceed on October 14, 2025, as scheduled. Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. 112) does not necessitate a different schedule.

   b.  ***Defendant's Statement:***

The October 14, 2025, trial date was set based on the Parties' and the Court's understanding that Plaintiff's FAC alleged only age discrimination claims. If this Court is inclined to grant Plaintiff's Motion for Leave to File a Second Amended Complaint, Defendant requests the case schedule (including trial date) should be vacated and extended so that Defendant may take discovery on and properly defend itself against Plaintiff's new claims to the extent they remain in this Court. Defendant would request trial be set no earlier than mid-2026, given the additional discovery that would need to be taken related to the belated claims.

/ / /

/ / /

**18.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

   a.   *Plaintiff's Statement*:

Plaintiff filed his Certificate of Interested Entities on June 10, 2024 (Dkt. 71).

   b.   *Defendant's Statement*:

Defendant filed its Certificate of Interested Parties on September 8, 2023. ECF No. No. 43.

**19.   PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER**

At this time, the Parties have not identified any other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

Dated: April 11, 2025                      LICHTEN & LISS-RIORDAN, P.C.


                                           By   */s/ Thomas Fowler*
                                                Shannon Liss-Riordan
                                                Thomas Fowler

                                                Attorneys for Plaintiff
                                                JOHN ZEMAN


Dated: April 11, 2025                      MORGAN, LEWIS & BOCKIUS LLP


                                           By   */s/ Brian D. Berry*
                                                Eric Meckley
                                                Brian D. Berry
                                                Roshni C. Kapoor
                                                Carolyn M. Corcoran

                                                Attorneys for Defendant
                                                X CORP., successor in interest to
                                                TWITTER, INC.

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(h)(3) regarding signatures, I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the document's content, and have authorized the filing.

Dated: April 11, 2025                     MORGAN, LEWIS & BOCKIUS LLP


By   */s/ Brian D. Berry*
    Eric Meckley
    Brian D. Berry
    Roshni C. Kapoor
    Carolyn M. Corcoran

Attorneys for Defendant
X CORP., successor in interest to
TWITTER, INC.